

1180 W. PEACHTREE STREET, NW
SUITE 2100
ATLANTA, GA 30309-7706
404-962-6100
FAX 404-962-6300

**STEPHEN E. KABAKOFF**
Direct Dial 404-962-6494
Direct Fax 404-962-6300
stephen.kabakoff@millermartin.com

May 23, 2024

**VIA FEDEX AND EMAIL**

Mr. Kirk Grundahl
President and Owner
Qualtim, Inc.
6300 Enterprise Lane
Madison, WI 53719

RE: **Paragon's Sole and Exclusive Ownership of Its Proprietary Truss Design Software and All Intellectual Property Rights Therein**

Dear Mr. Grundahl:

Our firm represents Paragon Component Systems, LLC ("Paragon"). We are in receipt of a memorandum dated March 22, 2024, entitled "Confidential Intellectual Property (IP) and/or Trade Secrets (TS)," that Paragon received from Qualtim (the "Memorandum"). This letter responds to the Memorandum on behalf of Paragon. We have carefully reviewed the Memorandum and its misplaced assertions of joint ownership relating to Paragon's proprietary truss-design software ("Paragon Truss Software"). In this response, we explain why, under governing intellectual property laws, Paragon is the sole and exclusive owner of all intellectual property rights in and to its Paragon Truss Software. We assume this letter fully resolves this issue so the parties may continue working productively together moving forward.

**Paragon Alone Developed Its Paragon Truss Software**

The Paragon Truss Software provides users with an easy-to-use interface for designing and modelling new truss designs. The software comes configured with the well-known mathematical equations that are necessary for designing a new truss and a set of default input parameters for configuring the equations. Users can selectively adjust one or more of the input parameters through the software's user interfaces. By allowing users to selectively change the set of truss-design parameters that are input to the mathematical equations, the Paragon Truss Software essentially operates as a truss-design calculator that enables users to more quickly and simply perform the complex set of mathematical truss-design calculations using different inputs corresponding to customized truss designs. The software also enables the users to render their customized truss designs in one or more engineering drawings.

It is undisputed that Paragon's software developers alone designed and wrote the code for the Paragon Truss Software without any input from Qualtim, DrJ, or any of their related companies (collectively "Qualtim"). For instance, the Memorandum admits Paragon was responsible for the

**EXHIBIT B**

Mr. Kirk Grundahl
May 23, 2024
Page 2

"proprietary mathematical code creation (i.e. software[7])," with the footnote referencing a standard dictionary definition of software. Memorandum at 5. It is also undisputed that Paragon, again without any input from Qualtim, further developed and refined the software code that it created. *Id.* (acknowledging Paragon was responsible for implementing "software code streamlining," "easy user input/out interfaces," and "mathematical refinements" to the Paragon Truss Software).

Further still, it is undisputed that the set of mathematical equations in the Paragon Truss Software are not proprietary, nor are the specific parameters that can be input to the equations. For example, Qualtim correctly states in its Memorandum:

> "Truss Pal [Paragon's software] is *truss design software that exclusively uses standard textbook engineering mechanics*, ANSI/NDS, ANSI/TPI 1, ASCE 7 and publically published design properties for lumber, truss plates and all related connections. *It does not use any proprietary engineering test data, engineering analysis, or engineering boundary condition evaluations*, since it has no knowledge of any proprietary intellectual property or trade secrets that cannot be found in public domain documents."

Memorandum at 1-2; *see also id.* at 1 (describing Paragon's "truss design software, which *uses public domain engineering principles…*"); 6 ("*Paragon Software – Public Domain Use* in Context of Professional Engineering Regulations"); 7 (referring to "*generic Paragon truss designs (developed by non-engineer software developers)*").

Paragon engaged Qualtim's engineering consulting services to verify the accuracy of Paragon's software by testing whether the software generated the correct truss-design outputs for a given set of inputs to the mathematical equations. Qualtim also proposed values of certain parameters for use in the set of mathematical equations in the Paragon Truss Software. Paragon paid Qualtim over $500,000 for these consulting services. However, neither Qualtim's services of proposing default input parameters to use with the software's mathematical equations or verifying that the equations, as implemented in the Paragon Truss Software, generated accurate outputs, constitutes any form of intellectual property in or to the software itself. That is, Qualtim's engineering consulting services did not create any copyright, trademark, trade secret, or patent rights in the proprietary software that Paragon alone designed, wrote, developed, and refined.

**Paragon Is the Sole and Exclusive Owner of All IP Rights in Its Software**

A standard dictionary definition of "intellectual property" defines it as a "property (such as a concept, idea, invention, or work) that derives from the effort of the mind or intellect[, including] a right or registration (such as a patent, trademark, trade secret, or copyright) relating to or protecting this property." Merriam-Webster Dictionary available at https://www.merriam-webster.com/dictionary. While other variations of this dictionary definition exist, they generally convey this same meaning. As reflected in this definition, intellectual property typically includes trade secrets. However, because the Memorandum segregates trade secrets (TS) from other forms of intellectual property (IP) (patent, trademark, etc.), we will do the same here.

First, Qualtim has no claim to any right, title, or interest in or to any copyright rights of the Paragon Truss Software. The copyright laws provide certain exclusive rights to an author of an original work fixed in a tangible medium of expression. *See, e.g.*, 17 U.S.C. §§ 101-102, 106. The copyright laws have been interpreted to protect computer programs, such as the Paragon Truss Software. *See, e.g., Sega Enters. v. Accolade, Inc.*, 977 F.2d 1510, 1518-20 (9th Cir. 1992); 17 U.S.C. §§ 101-102. Because only Paragon authored its proprietary Paragon Truss Software, it is the sole and exclusive owner of all the copyright rights in and to this software.

Second, Qualtim has no claim to any right, title, or interest in or to any trademark rights of the Paragon Truss Software. The trademark laws provide certain exclusive rights to any person that first uses in commerce a source-identifying mark, name, symbol, or other feature that distinguishes its goods or services from others. *See, e.g.*, 15 U.S.C. § 1127. In the context of software, trademark protection may attach to, among other things, the name of the software, any trade logos displayed within the software, or even the non-functional look and feel of the user interfaces, screen display, or distinctive colors or designs used by the software. *Id.*; *see also, e.g., Conference Archives, Inc. v. Sound Images, Inc.*, 2010 WL 1626072, at *15 (W.D. Penn. 2010). Because only Paragon is (or will be) using its proprietary Paragon Truss Software in commerce, it is the sole and exclusive owner of all the trademark rights in and to this software.

Third, Qualtim has no claim to any right, title, or interest in or to any patent rights of the Paragon Truss Software. The patent laws provide certain exclusive rights to any inventor that invents or discovers a new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof. *See, e.g.*, 35 U.S.C. § 101. For example, novel and non-obvious processes, such as inventive algorithms executed by a software program, can constitute inventions that may be patentable by the inventor. *See, e.g., California Inst. of Tech. v. Hughes Communications, Inc.*, 59 F. Supp. 3d 974, 985 (C.D. Cal. 2014) (noting "the Supreme Court has implicitly endorsed the patentability of software"); 35 U.S.C. §§ 102-103. The inventor is the person who conceived of the inventive concept. *See, e.g., Sewall v. Walters*, 21 F.3d 411, 415 (Fed. Cir. 1994). In the case of software, the software developer who creates a new patentable process in the software is the inventor of such invention whether claimed in the form of a system, method, or computer-readable medium. Because only Paragon designed and created the actual code for its proprietary Paragon Truss Software, it is the sole and exclusive owner of all the inventions and patent rights embodied in its software.

Finally, the Memorandum appears to acknowledge that Qualtim has no ownership interest in any of the IP or TS rights in or to the Paragon Truss Software. The Memorandum refers to a hypothetical situation where Paragon allegedly "violates any IP/TS and/or professional engineering laws" in which case the Memorandum states: "In this context Truss Pal [i.e., Paragon], under deposition, cannot say DrJ [i.e., Qualtim] has had anything to do with the engineering that Truss Pal uses." Memorandum at 8. Regardless of whether this self-serving statement actually could absolve Qualtim of liability and/or damages in such a hypothetical situation, which Paragon does not admit or concede, this statement nonetheless acknowledges that Qualtim (through DrJ) did not "have anything to do with the engineering" that Paragon uses in its Paragon Truss Software. This much of the hypothetical is agreed and undisputed.

### Paragon Is the Sole and Exclusive Owner of All TS Rights in Its Software

While there are separate federal and state trade secret laws, the Memorandum repeatedly refers to the federal Defend Trade Secrets Act ("DTSA"). *See, e.g.*, Memorandum at 2, 14. The DTSA defines a trade secret as information that (i) the owner has taken reasonable measures to keep secret and (ii) derives independent economic value from not being generally known to and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the trade-secret information. *See* 18 U.S.C. § 1839(3). The state law definitions of trade secrets are generally the same, for example, as set forth in the Uniform Trade Secret Act ("UTSA") adopted in almost every U.S. state.

None of Qualtim's engineering consulting services provided to Paragon in connection with the Paragon Truss Software constituted a trade secret under the DTSA or otherwise. For instance, Qualtim's testing of the software was not a trade secret since it was simply used to confirm the accuracy of the software's truss calculations. Paragon could have employed any number of qualified engineering-consulting service providers to analyze the accuracy of these known equations for designing trusses in its software. Thus, neither the well-known truss-design equations nor the outputs of those equations (i.e., for comparison with the software's generated outputs) constituted secret information owned by Qualtim, let alone DTSA trade secrets deriving economic value from not being readily ascertainable through proper means by other qualified consultants. Quite the opposite, Qualtim's testing of the Paragon Truss Software could have been replicated by other consultants and was therefore "readily ascertainable by proper means" and not a trade secret.

The Memorandum appears to incorrectly argue that Qualtim's "testing knowledge" constituted a trade secret and its "testing has been incorporated into the software…" because Qualtim proposed certain input parameters to use with the mathematical equations in the Paragon Truss Software. Memorandum at 5-6. However, any suggested values that Qualtim provided are not trade secrets at least because they are independently derivable using the standard mathematical equations, i.e., they are not "secret" values nor do they derive economic value from not being readily ascertainable through proper means by other qualified consultants as the DTSA requires. There is also no indication that Qualtim has or had any reasonable security measures to keep the specific parameters that it derived for Paragon secret, again as required by the DTSA. And, significantly, because Qualtim's proposed values are made available to users in the Paragon Truss Software, they are inherently not kept secret at all. For instance, users receive such default values in the Paragon Truss Software without any confidentiality restrictions and can override them in accordance with the users' specific truss designs that they want to model using the software. Paragon could simply remove these default values received from Qualtim without any loss of functionality or benefit to its users of the Paragon Truss Software.

The Memorandum also incorrectly refers to "combined decisions of CCI, DrJ and Paragon staff" in connection with the Paragon Truss Software. Memorandum at 6. While Qualtim's consulting services for Paragon comprised verification of the software's accuracy and proposed values of parameters for the equations in the software, it was solely Paragon's decision how, or even whether, to use the information it received from Qualtim. Indeed, Paragon paid Qualtim more than $500,000 for these consulting services and owned the information that it paid for. Thus,

contrary to the Memorandum's suggestion, were no "*combined* decisions" regarding what information Paragon alone chose to include in its proprietary Paragon Truss Software. *See also id.* at 5 (acknowledging that it was Paragon's responsibility to make "mathematical refinements" to match Qualtim's testing of the Paragon Truss Software). Regardless, as discussed above, none of the information that Qualtim provided to Paragon constituted a trade secret under the law.

In summary, Qualtim has no claim to any right, title, or interest in or to any trade-secret rights of the Paragon Truss Software. Indeed, Qualtim acknowledges that it (through DrJ) did not "have anything to do with the engineering" that Paragon uses in the software. Memorandum at 8. This acknowledgement alone belies any claim that Qualtim allegedly provided any trade secret information that could have been incorporated into the engineering of the Paragon Truss Software.

### Qualtim's Memorandum Misapprehends Legal Standards for IP Ownership

The Memorandum contains several incorrect statements about what constitutes ownership of intellectual property. For example, the Memorandum repeatedly mischaracterizes the legal requirements for determining ownership of intellectual property (IP) and trade secrets (TS). To illustrate, we consider several exemplary incorrect statements from the Memorandum.

First, the Memorandum wrongly states that "IP and TS of all companies are the: a. Items of differentiable value that can generate unique cash flows [and] b. Manner in which CCI/DrJ/Paragon need to generate cash to pay all of business expenses." Memorandum at 7. The legal standards for determining ownership of intellectual property (including trade secrets) do not involve determining whether a party can generate economic value from the property. *See, e.g., Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 879 n.4 (Fed. Cir. 1991) (finding it "elementary" that a patent owner is only granted a right to exclude others and not the right to make, use, or sell the invention, i.e., a right to make money is not part of the ownership rights). If the Memorandum were correct, then every non-exclusive (bare) licensee generating revenue from selling products licensed under a third-party licensor's intellectual property could argue they became an owner of the licensed intellectual property, which clearly is not the case. Further still, an owner of intellectual property has no obligation to monetize its intellectual property. *See, e.g., Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1363 (Fed. Cir. 2019) (noting "the patent statute does not restrict enforceable patent rights to those [owners] who practice the patent…"). In sum, though economic value may result from owning intellectual property, it is not the legal test.

Second, the Memorandum wrongly states that "IP and TS are defined by addressing the following question . . . Would an isolated individual or team of individuals be able to create truss and component design software equal to the Clearspan Components, Inc. (CCI)/DrJ/Paragon truss and component design software, without the expertise of CCI truss technician/manufacturing expertise, CBI's testing expertise and DrJ's engineering expertise?" Memorandum at 5 (Qualtim's point #1 regarding joint ownership). Again, this is not a legal test for ownership of intellectual property. As discussed above, an owner of intellectual property is a person who authored, created, or invented the intellectual property, or in the case of a trademark, first used it in commerce. Such an owner may assign their ownership rights to a third party, but the legal test for ownership has no

requirement regarding the use of a third party's testing or engineering expertise. Indeed, technicians are often employed to use their testing and engineering expertise to implement other peoples' inventions and reduce them to practice, but such technical expertise does not amount to inventorship or ownership of the inventions. *See, e.g.*, *Henkel Corp. v. Procter & Gamble Co.*, 485 F.3d 1370 (Fed. Cir. 2007) (distinguishing lab technician's test results from the invention); *Brown v. Regents of University of California*, 866 F. Supp. 439 (N.D. Cal. 1994) (finding the inventors' technician was not also a joint inventor). Further, Paragon paid hundreds of thousands of dollars for Qualtim's testing and engineering deliverables, which now constitute Paragon's purchased property in the same way that software developers conventionally purchase such services and deliverables from expert third parties in the process of software development.

Third, the Memorandum wrongly suggests that Qualtim's verification testing of Paragon Truss Software somehow created a joint ownership interest in the software that it tested. *See* Memorandum at 5-6 (Qualtim's points #2 to #6 regarding joint ownership). This is incorrect for the same reasons discussed above. *See, e.g.*, *Henkel Corp. v. Procter & Gamble Co.*, 485 F.3d 1370 (Fed. Cir. 2007) (distinguishing lab technician's test results from the invention).

### Inspired Pursuits Is an Unrelated Legal Entity

Unless otherwise stated, the discussion herein relates solely to Paragon's ownership of the Paragon Truss Software and does not relate to ownership of any other products or intellectual property of the parties. For example, a separate analysis would be required to consider ownership of intellectual property developed through Inspired Pursuits, LLC ("Inspired Pursuits"), which is a separate Wisconsin-based legal entity focused on developing physical (non-software) products that combine trusses and truss-mounting braces.

### Conclusion

While our client appreciates Qualtim's engineering consulting services to date and hopes to maintain its strong relationship with Qualtim, at the same time it is also disappointed in the ownership dispute raised in the Memorandum and the timing of these assertions. That Qualtim would bring this issue to bear while it knows Paragon is in the process of managing the recent loss of Mr. Holland is disconcerting. If ownership of the Paragon Truss Software were truly an issue during the time the software was being developed, Qualtim certainly would have raised it sooner than immediately following the passing of Mr. Holland. The Memorandum thus appears not to be an attempt to assert any deserved ownership rights in the Paragon Truss Software as much as an opportunistic attempt to acquire undue rights at a known difficult time for Paragon.

In addition, Paragon takes development, defense, and enforcement of its intellectual property rights very seriously. Paragon has invested significant amounts of money and resources in creating, designing, and developing its proprietary Paragon Truss Software. Our client also continues to invest heavily in its marketing and sales efforts to bring this software to market and establish a strong brand and goodwill associated with its proprietary software. Accordingly, to the extent necessary, Paragon will rigorously defend its ownership rights in and to the Paragon Truss Software to the fullest extent under the law.

Mr. Kirk Grundahl
May 23, 2024
Page 7

With this response, Paragon believes that this matter is fully resolved and no further action is required. If you disagree, please let us know. Any further communication on this or related matters should be directed to my attention.

Sincerely,

*[signature]*

Stephen E. Kabakoff