# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

PARAGON COMPONENT SYSTEMS, LLC,

    Plaintiff,

v.

QUALTIM, INC., et al.,

    Defendants.

)
)
)
)
)
)
)
)
)
)

JUDGE CHARLES E. ATCHLEY, JR.

CIVIL ACTION NO.:
1:24-CV-00246-CEA-CHS

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, IMPROPER VENUE, AND FAILURE TO JOIN NECESSARY PARTIES, OR ALTERNATIVELY, TO TRANSFER VENUE

### INTRODUCTION

Plaintiff Paragon Component Systems, LLC ("Paragon") has commenced suit against Defendants, seeking a declaratory judgment. The Complaint is baseless procedurally, factually, and legally. (Ironically, Plaintiff is the party that has wrongfully misappropriated trade secrets and restricted Defendants' access to software that was developed jointly with certain of Defendants and Paragon's now deceased founder and principal – which will be the focus of a future pleading against Plaintiff). But at the most fundamental level, and despite the improper filing of this action, this Court, respectfully, has no personal jurisdiction over Defendants. As a result, dismissal is required. Additionally, this action should be dismissed for improper venue, and alternatively, transferred to the Western District of Wisconsin, which does, in fact, have jurisdiction over Defendants.

This case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) because the Court lacks personal jurisdiction over Defendants. Qualtim, Inc. ("Qualtim"), Center for Building Innovation, LLC ("CBI"), DrJ Engineering, LLC ("DrJ"), and Inspired Pursuits, LLC ("IP-LLC") are business entities organized and domiciled in Wisconsin. In addition, Daniel Holland, founder and principal

of Paragon and IP-LLC member and manager, signed the IP-LLC operating agreement wherein it states that "[t]his Operating Agreement will be governed by, construed, and enforced in accordance with the laws of the State of Wisconsin." (*See* Exhibit 16.)

Even more significantly, Defendants have engaged in business activities in Wisconsin— and not Tennessee. Similarly, Kirk Grundahl and Suzanne Grundahl are individuals who are residents of Wisconsin. Further, the intellectual property and trade secrets at issue were developed in Wisconsin (*See* Exhibits 12, 16) and Defendants never traveled to Tennessee to perform any consulting or professional engineering work for Paragon. Further discussion below will emphasize the connection between the founder of Paragon, now deceased, and the Defendants. The only apparent connection that Tennessee has to this case is that Paragon is organized in and has its principal place of business in the state.

Separately, even if the court finds that jurisdiction and venue are somehow proper as to some or all Defendants, the Complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(7) because Paragon failed to join indispensable parties, namely, the Estate of Daniel Holland ("Estate") and Clearspan Components, Inc. ("Clearspan"). As a result, due to the host of legal deficiencies that Plaintiff's claims raise—lack of personal jurisdiction, improper venue, failure to join necessary parties—as an alternative to outright dismissal, Defendants request that the Court transfer this matter, pursuant to 28 U.S.C. § 1406(a), to the United States District Court for the Western District of Wisconsin, where all Defendants, including the absent necessary parties, are subject to personal jurisdiction with respect to this action.

# FACTUAL BACKGROUND

## I.   THE PARTIES

Paragon is a limited liability company organized and registered in Tennessee in 2016 with a single member. (*See* Tennessee Secretary of State Business Search Results attached as Exhibit 18.)[1] Upon information and belief, Daniel Holland ("Dan") was the sole (founding) member. (*Id.*) In 2018, the number of members changed from 1 to 3. (*Id.*)

Qualtim and CBI are companies domiciled in Wisconsin and are not licensed or registered to do business in Tennessee. (Compl. ¶¶ 10, 14; Declaration of Kirk Grundahl for Qualtim, CBI, DrJ ("Kirk Dec. I") ¶¶ 9, 11, 12, 14, 23, 24, 25, 26 attached as Exhibit 1,) DrJ is registered in Tennessee as is routine in the engineering profession. (Kirk Dec. I, ¶ 40 attached as Exhibit 1.) Kirk Grundahl ("Kirk") and Suzanne Grundahl ("Suzi") are individuals, residents of Wisconsin, who have ownership interests and manage the business entities listed as Defendants. (*See* Kirk Dec. I and Declaration of Suzanne Grundahl ("Suzi Dec.") attached as Exhibit 17.)

Defendant IP-LLC is a business entity domiciled in Wisconsin that, at the time of its formation, was owned by Kirk (25%), Suzi (25%), and Dan, (50%). (Compl ¶¶ 13, 38.) The current IP-LLC managers are Kirk and Suzi. (*See* Exhibit 16.)

## II.   THE INTELLECTUAL PROPERTY AT ISSUE.

As early as 1999, and more formally in 2009, and up to his untimely death on January 17, 2024, Dan, Kirk and Suzi collaborated continuously. The common bond was their passion for and deep knowledge of the structural building component and engineered framing industry, where their individual expertise was well known within the industry (Declaration of Kirk Grundahl for

---

[1] Such information is properly subject to judicial notice as it is "[c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See* Tenn. R. Evid. 201.

Inspired Pursuits, LLC, and Qualtim, Inc. ("Kirk Dec. II") ¶¶ 16, 17, 18 attached as Exhibit 15; Suzi Dec., ¶ 18, 19, 20 Attached as Exhibit 17.) One key attribute of this close and confidential collaboration was the development and protection of structural component engineering, manufacturing and software trade secrets. (*Id.*) This highly confidential collaboration was intended to create unique intellectual property, held by IP-LLC, which would then be used by DrJ to produce the copyrighted engineered design drawings for Clearspan manufactured structural building components and engineered framing. (Kirk Dec. II, ¶¶ 17, 18.) This was the basis for the creation of Inspired Pursuits, LLC. *Id.* IP-LLC was formed to serve as the holding company for all intellectual property that the Grundahls and Holland developed as memorialized in Exhibits 2, 4, 5, 6, 8, 9, 12, 13 and 14.

Paragon claims sole ownership of the software and the intellectual property (collectively "Developed IP") used to develop that software. Paragon also argues that there is no connection between Paragon and IP-LLC. (Compl. ¶ 5.) However, Paragon contradicts itself in the same paragraph because it also states that Dan, who founded Paragon, is also an owner of IP-LLC, a co-Defendant. Therefore, Paragon's claims are erroneous: a clear and strong connection between Paragon and Defendants exist. *Id.* Dan and Kirk's vision, knowledge, and experience together were the foundation upon which all the engineering, truss design techniques, mathematical implementation, engineering mechanics methodology, applied loading conditions and deployment of the software at issue was built upon. (Kirk Dec. II, ¶¶ 16, 17, 18.)

Paragon was created to be a math, data processing, and software company whose mission was to automate metal plated connected wood truss, wall panel and all related structural component manufacturing, and all structural component related engineering using the engineering, component and manufacturing trade secrets and intellectual property of IP-LLC. (Compl., ¶ 21; *see also*

Exhibits 12, 14). DrJ was the necessary professional engineering firm providing direct supervision of all engineering related decision making. Paragon and its DBA Truss Pal stipulate on their websites (*see* Exhibits 19, 20) that they are not engineering companies. Furthermore, Paragon had and has a paucity of truss industry knowledge on staff and no professional engineers with any metal plate connected wood truss testing and engineering expertise. (*See id.*)

Clearspan is primarily a metal plated connected wood truss and wall panel machinery and metal plated connected wood truss and wall panel manufacturing company, whose manufacturing expertise was to be extended to other product lines, including but not limited to new and innovative products such as sheathing stud, fast truss, finger joints, safety rail and software to improve manufacturing efficiency/quality control, to name a small number of IP-LLC's trade secret products developed or being developed. (*See* Comp. ¶ 2; *see also* Exhibit 14.) Clearspan is not an engineering company, yet it sold engineering products because the partnership between DrJ and Clearspan was well understood by Dan and Kirk to be essential to achieve the IP-LLC vision and mission. (Kirk Dec. II, ¶¶ 15, 16, 17, 18.)

To encapsulate the key facts about Kirk and Dan's unique partnership: Qualtim, CBI, and DrJ are under the leadership of Kirk, who is a professional engineer licensed in 47 states. (Kirk Dec. I, ¶¶ 3, 10, 27, 36.) Dan was a mechanical engineer and owned Clearspan, a manufacturing company, and Paragon, a software company. (Suzi Dec. ¶ 19; Kirk Dec. II, ¶¶ 15, 16, 17, 18; *see also* Exhibit 2; Compl., ¶ 21.) Thus, a trifecta of trade secret innovation, via the combination of professional engineering, engineered product manufacturing, and a math/data processing software, resulted in intellectual property creation held within IP-LLC for use by DrJ and Clearspan for structural component industry competitive advantage. (Kirk Dec. II ¶¶ 17, 18; *see also* Exhibits 4, 12, 14.) DrJ's engineering and Clearspan's manufacturing were the market implementation team

5

for IP-LLC-owned trade secrets and intellectual property, where Paragon was merely a data processing tool needed to streamline DrJ and CCI work to generate engineered product sales. (*See* Compl. ¶ 2; *see also* Exhibits 2, 4, 12, 13, 14, 21.)

## LAW AND ARGUMENT

### I.     MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

#### A.     Standard of review.

The Court should dismiss this action pursuant to Fed. R. Civ. P. 12(b)(2) because it lacks personal jurisdiction over each of the Defendants. Personal jurisdiction comes in two forms: (1) general (sometimes called "all-purpose") and (2) specific (sometimes called "case-linked"). *Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017).

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). "A court's exercise of personal jurisdiction over a nonresident defendant is appropriate only if it meets the state's long-arm statue and constitutional due process requirements." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). The Sixth Circuit has interpreted Tennessee's long-arm statute, Tenn. Code. Ann. § 20-2-214, to be "coterminous with the limits on personal jurisdiction imposed by the Due Process Clause of the United States Constitution[.]" *Id.*, 428 F.3d at 616 (quotation and citations omitted). As a result, for a Tennessee court, since the jurisdictional limits of Tennessee law and federal constitutional law of due process are identical, the Court need only concern itself with the due-process inquiry. *Id.*

The Sixth Circuit has explained that trial courts have three options for how to consider a motion to dismiss under Rule 12(b)(2): (1) rule on the motion on the basis of the briefing and declarations submitted by the parties; (2) permit discovery in aid of resolution of the motion; or

(3) conduct an evidentiary hearing on the merits of the motion. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1271-72 (6th Cir. 1998). When, as here, the motion is supported by declarations, a plaintiff may not stand on the complaint, but must, by declaration or otherwise, "show the specific facts demonstrating that the court has jurisdiction." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012).

If the court elects to rule on the motion without an evidentiary hearing, the plaintiff's affidavits must make only a *prima facie* showing of jurisdiction. *Id.* (citation omitted). If the Court determines the "'written submissions raise disputed issues of fact or seem to require determinations credibility,'" it can order an evidentiary hearing. *Dean*, 134 F.3d at 1272 (quoting *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). At that stage, the plaintiff must now establish that jurisdiction exists by an increased standard: the preponderance of evidence. *Id.* Defendants submit that Plaintiff has not and cannot make out a *prima facie* showing that any, let alone all of them, are subject to personal jurisdiction in Tennessee. As such, this case should be transferred to the Western District of Wisconsin.

### B.    The Court lacks General Jurisdiction over Defendants.

The Complaint does not appear to allege that Defendants are subject to general personal jurisdiction in Tennessee. (*See* Compl., ¶ 19.) But even if it did, such an argument fails.

"General jurisdiction depends on continuous and systematic contact with the forum state, so that courts may exercise jurisdiction over any claims a plaintiff may bring against the defendant." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012). Corporations are "essentially at home" and subject to general jurisdiction in the "state(s) where it is incorporated and where it has its principal place of business." *Servpro Intellectual Property, Inc. v. Zerorez Franchising Systems, Inc.*, No. 3:17-cv-00699, 2018 WL 3364372, at *4 (M.D. Tenn. July 9, 2018)

7

(citing *Diamler AG v. Bauman*, 134 S.Ct. 746, 761 (2014)). The Complaint alleges that all of the Defendants are either corporations or companies incorporated in Wisconsin with their principal places of business in Madison, Wisconsin—which is located in the Western District of Wisconsin—or individuals who are domiciled in and citizens of Wisconsin counties within that District. (Compl., ¶¶ 10-15; *see also Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 358-59 ("[A]n individual is subject to general jurisdiction in her place of domicile."). As a result, Defendants are not subject to general jurisdiction in Tennessee.

Paragon does allege that Qualtim, Kirk, and DrJ are licensed to perform engineering services and/or have performed such services in the state. (Compl., ¶ 19(c)-(e)).[2] This Court has rejected these facts as a basis for holding that a defendant is subject to general jurisdiction. *See Relyant Global, LLC v. Gibralter-Caddell*, No. 3:22-cv-183, 2023 WL 3267757, at *4 (E.D. Tenn. Mar. 31, 2023) (holding that the mere fact a defendant was licensed to do business in Tennessee and had a registered agent for service of process in Tennessee is not sufficient to demonstrate consent to the general jurisdiction of courts in Tennessee) (citations omitted) (Atchley, J.).

Paragon alleges that Defendants "transacted business" in Tennessee because they "contracted to provide and did in fact provide engineering-related consulting services to Paragon in Tennessee." (Compl., ¶ 19(a).) Significantly, Paragon failed to attach any such contract to its Complaint. Indeed, no contract exists, other than a non-disclosure agreement. Even if there was a contract between the parties, "merely 'doing business' in a forum state clearly is not alone sufficient to subject a nonresident corporation to general jurisdiction there." *First Cmty. Bank, N.A. v. First Tennessee Bank, N.A.*, 489 S.W.3d 369, 385 (Tenn. 2015) (citing *Daimler AG v. Bauman*,

---

[2] Qualtim is, in fact, not licensed to do business in Tennessee. (*See* Exhibit 22, TN Secretary of State search results).

571 U.S. 117, 139 n.19 (2014)). Instead, a company that does business in multiple states is subject to general jurisdiction in Tennessee only in the "exceptional case" where "a corporation's operations in a forum [state] other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in the state." *Id.* (quoting *Daimler AG*, 571 U.S. at 139 n.19). The Complaint contains no allegations showing that this is an "exceptional case" where Defendants are subject to general jurisdiction in Tennessee even though they are domiciled in and citizens of Wisconsin, or are incorporated in and have their principal place of business in Wisconsin. Finally, Defendants' supporting declarations demonstrate there is no factual support for finding general jurisdiction in Tennessee.

### C. The Court lacks Specific Jurisdiction over Defendants

Specific jurisdiction is also not present. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (internal quotation marks and citations omitted). A Court's exercise of personal jurisdiction is proper where the claims in the case arise from or are related to the defendant's contacts with the forum state. *Intera Corp. v. Henderson,* 428 F.3d 605, 616 (6th Cir. 2005).

The Sixth Circuit has promulgated a three-prong test that not only guides the determination of whether specific jurisdiction exists, but also protects the due process rights of a defendant. *Id.* (citing *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). This three-prong test provides:

> First, the defendant must **purposefully avail** himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must **arise from the defendant's activities there**. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection

9

with the forum state to make the exercise of jurisdiction over the
defendant **reasonable**.

*Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 680 (6th Cir. 2012) (quoting *S. Mach. Co.*, 401

F.2d at 381) (emphasis added)). "If any of the three requirements is not met, personal jurisdiction

may not be invoked." *Id.* (quoting *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1303 (6th Cir.

1989)). Further, "it is plaintiffs' burden to establish personal jurisdiction as to each defendant" and

as to each claim. *Taco Mamacita, LLC v. Wilco Holdings, LLC*, No. 1:21-cv-62, 2022 WL

16542580, at * (E.D. Tenn. Oct. 19, 2022) (Atchley, J.) (quoting *Beydoun v. Wataniya Restaurant

Holding, Q.S.C.*, 768 F.3d 499, 505 ((6th Cir. 2014)); *see also Hosp. Auth. of Metro. Gov't of

Nashville v. Momenta Pharms., Inc.*, 353 F. Supp. 3d 678, 690 (M.D. Tenn. 2018) ("The court

must have personal jurisdiction over each defendant and as to each claim.").

### 1. Defendants did not purposefully avail themselves of the privilege of doing business in Tennessee

The purposeful availment requirement is considered the most important. *S. Mach. Co.*, 401

F.2d at 381. This is a defendant-centric inquiry, as the "defendant's relationship with the forum

state must arise out of the contacts that the *defendant itself* created with the forum state." *Kent v.

Hennelly*, 328 F. Supp. 3d 791, 798 (E.D. Tenn. 2018) (emphasis in original) (citation omitted).

(citing *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "[U]nilateral activity of the plaintiff

or a third party cannot be the basis of exercising personal jurisdiction over the defendant." *Id.*

Requiring that the defendant take purposeful steps in the forum state ensures that a defendant's

"random, fortuitous, or attenuated" contacts with the forum state will not subject it to being hauled

into court there. *Burger King*, 471 U.S. at 475.

Given that Paragon has brought a declaratory judgment action that seeks a declaration as

to ownership of certain intellectual property, the specific jurisdiction inquiry is more nuanced. As

10

this court has recognized, and the Federal Circuit has explained, the "'relevant inquiry in [intellectual property] declaratory judgment actions is the extent to which the defendant . . . purposefully directed [enforcement activities] at residents of the forum, and the extent to which the declaratory judgment claim arises out of or relates to those activities.'" *Worldwide Interactive Network, Inc. v. Chmura Econ. & Analytics, L.L.C.*, No. 3:09-cv-121, 2010 WL 3489394, at *9 (E.D. Tenn. Sept. 1, 2020) (quoting *Avocent Hunstville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008)).

Paragon grounds its personal jurisdiction argument on three purported bases, namely that Defendants: (1) contracted to and did provide engineering-related consulting services to Paragon in Tennessee (Compl., ¶ 19(a)); (2) "wrongfully claimed to Paragon in this judicial district that they are joint owners of the intellectual property rights," including copyright rights, trademark rights, patent rights, trade secret rights, and other intellectual property rights in the Paragon Truss Software (*id.*, ¶¶ 55, 77, 93, 111, 132); and (3) that Paragon possesses the intellectual property and trade secrets at issue in Tennessee (*id.*, ¶ 19(b).) Each of these three alleged bases fail as a matter of law to establish that Defendants created sufficient contacts with Tennessee so as to subject them to personal jurisdiction.

First, the existence of a contract with a citizen of the forum state, standing alone, will not suffice to confer personal jurisdiction over a foreign defendant. *See Burger King*, 471 U.S. at 478. Rather, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id.*, at 479. Paragon has not pointed to any contract between it and any Defendant. Other than a non-disclosure agreement, none exists. Instead, as set forth in Defendants' supporting declarations, the business activities

between Paragon and the Defendants occurred in Wisconsin, and even included Paragon personnel traveling to Wisconsin. (*See* Exhibits 2, 3, 4, 5, 6, 7, 8, 9, 13.) *See Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722-24 (6th Cir. 2000) (holding that a contract was not sufficient to satisfy due process when none of the terms of the contract was to be performed in the forum state and the fact that a contract existed between the parties were merely "fortuitous").

Second, the fact that certain Defendants sent letters to Paragon in Tennessee claiming ownership of the intellectual property and trade secrets at issue does not suffice to establish personal jurisdiction in Tennessee, as courts have repeatedly held. *See, e.g., Avocent Huntsville Corp. v. Aten International Co.*, 552 F.3d 1324, 1333 (Fed. Cir. 2008) (cease and desist letters with respect to intellectual property purposely directed at the forum of the declaratory judgment action by themselves do not suffice to create personal jurisdiction); *Calphalon Corp.*, 228 F.3d at 723 (letter outlining possible claims against defendant is insufficient to establish personal jurisdiction); *Power Sys., Inc. v. Hygenic Corp.*, No. 3:13-cv-382, 2014 WL 2865811, at *6–8 (E.D. Tenn. June 24, 2014) (holding that a cease and desist letter alone is inconsistent with the principles of fairness underlying personal jurisdiction).[3]

Finally, the fact that Paragon possesses the intellectual property and trade secrets at issue in Tennessee does not subject Defendants to personal jurisdiction. To hold otherwise would improperly make Paragon's contact with Tennessee—rather than "the contacts that the defendant itself created with the forum state"—the focus of the inquiry. *Kent*, 328 F. Supp. 3d at 798.

---

[3] *See also, e.g., Coeus Creative Grp., LLC v. Gaffney*, No. 23-cv-10012, 2023 WL 5673950, at *12 (E.D. Mich. Sept. 1, 2023) ("courts have repeatedly held that 'a cease-and-desist letter, standing alone, is not sufficient to support the exercise of personal jurisdiction over the party who sent that letter'") (citing cases); *Indus Trade & Tech., LLC v. Stone Mart Corp.*, No. 2:11-cv-637, 2011 WL 6256937, at *4 (S.D. Ohio Dec. 14, 2011) (cease and desist letters satisfy neither the purposeful availment nor arising under prongs of the personal jurisdiction inquiry) (citing cases).

12

Moreover, in a declaratory judgment action over intellectual property rights, the physical location of the property at issue does not control, as the intangible rights of that property are at issue. *See Pearl Records, Inc. v. Conner*, No. 3:22-cv-00096, 2023 WL 351203, at *6 (M.D. Tenn. Jan. 20, 2023) (holding that the physical location of a photograph in Tennessee in a copyright declaratory judgment action had "no bearing on this Court's jurisdiction" over the defendant).

Notably, as to Defendant Suzanne Grundahl, the only allegation Paragon makes to substantiate her personal jurisdiction is that she, along with Kirk and Dan "formed Inspired Pursuits" and that she is a member of Inspired Pursuits. (Compl., ¶ 38.) This allegation plainly fails to demonstrate that Suzanne Grundahl purposefully availed herself of the privilege of doing business in Tennessee or the requirement that personal jurisdiction must be established separately as to each defendant. *Beydoun*, 768 F.3d at 505. Further, to the extent Paragon is claiming that Suzanne Grundahl should be subject to personal jurisdiction due to her role with IP-LLC, that argument likewise fails. See *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 356 (6th Cir. 2014) ("Jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation.").

Paragon has not and cannot satisfy the purposeful availment requirement in this declaratory judgment action so that Defendants are properly subject to personal jurisdiction in Tennessee.

## 2. The claims do not arise out of or relate to Defendants alleged forum-related activity.

Because Paragon cannot satisfy purposeful availment—the first element of the Sixth Circuit's test—the Court does not need to look any further before granting Defendants' motion to dismiss. *Miller*, 694 F.3d at 680.

Nevertheless, Paragon also cannot satisfy the second element. The "arising from" prong of the test is satisfied "when the operative facts of the controversy arise from the defendant's contacts

13

with the state." *Intera Corp.*, 428 F.3d at 617 (quotation and citation omitted). As is relevant here, Paragon alleges only that the intellectual property and trade secrets at issue are located in Tennessee and that certain Defendants sent them correspondence claiming ownership of that property and trade secrets. (*See* Compl., ¶¶ 43-53 (alleging that Defendants sent at least seven letters to Paragon in Tennessee relating to the intellectual property over a span of about four months.)) This assertion is based upon a Qualtim professional engineering related communication sent to Paragon. Paragon assumes the seven letters were related to the Developed IP at issue. However, all Qualtim communications were related to engineering; all IP-LLC communications were related to attempts to resolve all issues without litigation. As noted, *see supra* § I.C.1, these facts do not suffice to subject Defendants to personal jurisdiction.

Moreover, this case is about who owns the rights and trade secrets at issue, a dispute that is divorced from the physical location of the property. Further, as shown in the Defendants' declarations, the IP and trade secrets at issue were inspired and generated by Kirk and Dan over decades of collaboration. Strategic summits and meetings as to this collaboration took place in Wisconsin, not Tennessee. Defendants did not visit Tennessee for this purpose. Instead, Dan arranged so that he and other Paragon executives and staff traveled to Wisconsin, where the IP and trade secrets were developed. For these reasons, Paragon also cannot satisfy the "arising from" prong, as the dispute at issue arose in Wisconsin.

### 3.    Factors of Reasonableness

The third prong mandates that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Intera Corp.*, 428 F.3d at 618. Generally, when considering whether it is reasonable to exercise personal jurisdiction over a non-resident

14

defendant, a court must consider several factors, including: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Id.* (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996)). Applying these factors establish that it is not reasonable for Defendants to be subject to personal jurisdiction in Tennessee.

Initially, as Paragon readily admits, all Defendants are either incorporated in Wisconsin and have their principal place of business there, or they are otherwise residents of and domiciled in Wisconsin. (Compl., ¶¶ 10-15.) Therefore, Defendants would be substantially burdened if they were compelled to litigate this case in Tennessee given that none of them reside in the state.

Second, while Tennessee has an interest in the outcome of this case because Paragon is a resident of the state, the intangible property and trade secret rights at issue do not depend on any activities in this forum. Third, Paragon does have an interest in obtaining relief. However, these factors do not outweigh the compelling interest that Wisconsin has in adjudicating the property rights of its corporate and individual residents, particularly as to intellectual property and trade secrets developed within Wisconsin. *See Intera Corp.*, 428 F.3d at 618-19 (holding that it would not be reasonable for Tennessee to exercise personal jurisdiction over North Carolina residents in a suit brought by Tennessee corporations). For these reasons, Paragon cannot establish the "reasonableness" prong of the test for specific jurisdiction. Defendants' motion to dismiss should be granted for lack of personal jurisdiction.

## II.    MOTION TO DISMISS FOR PLAINTIFF'S FAILURE TO JOIN NECESSARY PARTIES.

Independently of the foregoing arguments, the Complaint should also be dismissed under Fed. R. Civ. P. 12(b)(7) due to Paragon's failure to join Clearspan and the Estate, both of which are necessary parties. Rule 19(a)(1) sets forth the circumstances under which a party is necessary.

15

Similarly, Tenn. Code Ann. § 29-14-107(a) (West) provides that "when declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings." In the context of a declaratory judgment action, such relief is "not available unless all the proper parties are before the court," and "[p]roper parties include all those who must be bound by the decree in order to make it effective and to avoid the recurrence of additional litigation on the same subject." *Adler v. Double Eagle Properties Holdings, LLC*, No. W2010-01412-COA-R3-CV, 2011 WL 862948, at *3 (Tenn. Ct. App. Mar. 14, 2011) (quotation and citation omitted).

The Sixth Circuit follows a three-part test in determining whether dismissal is appropriate under Rule 12(b)(7). "First, the Court must determine whether the [absent] person or entity is a necessary party under Rule 19(a)." *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 666 (6th Cir. 2004). If the party is a necessary party, the Court must then decide if joinder is feasible. *See id.* Finally, if the Court determines that the absent party cannot not be feasibly joined, "the court must analyze the Rule 19(b) factors to determine whether the court should 'in equity and good conscience' dismiss the case because the absentee is indispensable." *Id.* (quoting Fed. R. Civ. P. 19(b)). This Court has recognized that the application of Rule 19 "requires a pragmatic approach." *Univ. of Tennessee Rsch. Found. v. Caelum Biosciences, Inc.*, No. 3:19-cv-508, 2021 WL 10428708, at *6 (E.D. Tenn. Apr. 28, 2021) (Atchley, J.) (quotation and citation omitted). The Complaint recognizes that the Court cannot provide complete relief unless CCI and the Estate are also parties. Yet, as with the Defendants, these absent parties are likewise not subject to personal jurisdiction in Tennessee. As a result, the Court should dismiss the Complaint.

### A. Clearspan is a Necessary Party.

Dan and Defendants' partnership pre-dates the founding of Paragon in 2016. Dan and Kirk have always operated as partners. When Clearspan acquired software from CompuTrus, the vision of Paragon was already memorialized in the way Clearspan and Qualtim conducted business. Multiple invoices beginning in 2009 show that both Clearspan and Qualtim bore the costs surrounding work and collaboration in order to advance Clearspan's independence from the control of traditional industry suppliers. Clearspan was not in the business of engineering because it was a manufacturer of roof trusses. (Compl.¶ 2.) Therefore, Clearspan needed to partner with an engineering firm to accomplish its vision because it would be a violation of engineering laws to perform engineering services without being an engineering company substantially owned and operated by a licensed professional engineer, along with having professional engineers on staff. This is similar to Paragon, which is not an engineering firm but holds mathematical calculations that engineers use. Hence, it was critical that Clearspan and Qualtim/DrJ/CBI, under the leadership of Dan and Kirk respectively, team up together to create IP-LLC. As the Clearspan "engineering process" shown on the invoice progressed, it was inevitable that IP-LLC would be born.

As the Complaint recognizes, Defendants believe that Clearspan has an ownership interest in the intellectual property and trade secrets at issue. (Compl., ¶ 44.) As a result, regardless of the outcome of Paragon's declaratory judgment claims, Clearspan has an interest in the Developed IP at issue due to its participation in and downstream use pursuant to the planning and strategizing phases of Dan and Kirk's vision. That makes Clearspan a necessary party, both because the Court cannot afford complete relief among the existing parties and because doing so would "impair or impede [Clearspan's] ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(A), (B). Further, if

17

Defendants prevail without Clearspan being party to the case, Clearspan would have standing to sue them because its interest was not represented before the Court.

**B.    The Estate of Daniel Holland is a Necessary Party.**

The Estate is also a necessary party that Paragon failed to join. The Complaint confirms that Dan was a founder of both Paragon and Inspired Pursuits, and that both companies were established around the same time, in 2016 and 2017, respectively. (*See* Compl., ¶ 2.) The Estate is also a member of IP-LLC, along with co-Defendants Kirk and Suzanne. (*Id.*, ¶¶ 13, 18(e).) At its creation Dan owned 50% of IP-LLC, which is equal to the combined ownership interests of Kirk and Suzanne. (*Id.*, ¶ 38.) The interests of the Estate are thus impacted by the outcome of this action as to both Paragon and IP-LLC. The Court therefore cannot afford complete relief without the Estate as a party. Paragon's failure to join the Estate should result in dismissal of its claims.

**C.    Neither Clearspan Nor the Estate Can be Feasibly Joined.**

Neither Clearspan nor the Estate, however, can be feasibly joined in this action because they are not subject to personal jurisdiction in Tennessee. Clearspan is a Mississippi corporation with its principal place of business in Meridian, Mississippi. (*See* Exhibit 23, MS Secretary of State search results.) The Estate is likewise a resident of Mississippi. (Compl., ¶ 18(f).) They are thus both not subject to general jurisdiction in Tennessee. *See supra*, § I.B.

As with the other Defendants, Clearspan and the Estate are also not subject to specific personal jurisdiction in Tennessee given that, as noted, their involvement in the development of the intellectual property and trade secrets at issue occurred in Wisconsin. Since Clearspan and the Estate are necessary parties, and neither can feasibly be joined in this matter in Tennessee, dismissal is appropriate.

18

### III. MOTION TO DISMISS FOR IMPROPER VENUE OR, ALTERNATIVELY, TO TRANSFER THIS MATTER TO THE WESTERN DISTRICT OF WISCONSIN.

The Court may dismiss this action pursuant to Fed. R. Civ. P. 12(b)(3) because Paragon filed the Complaint in an improper venue. Alternatively, however, the Court should transfer this matter to United States District Court for the Western District of Wisconsin, where all Defendants and the unnamed necessary parties—Clearspan and the Estate—are subject to general and/or specific personal jurisdiction.

A motion to dismiss for improper venue and/or transfer venue implicates two federal statutes, 28 U.S.C. § 1406(a) and 28 U.S.C. § 1404(a). Section 1406(a) permits the Court to dismiss, or if it be in the interest of justice, transfer a case which is filed "in the wrong division or district . . . to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The U.S. Supreme Court has explained that the difference between the two statutes is that "[Section] 1406(a) provides for transfer from forums in which venue is wrongly or improperly laid, whereas, in contrast, [section] 1404(a) operates on the premises that the plaintiff has properly exercised his venue privilege." *Van Dusen v. Barrack*, 376 U.S.612, 634 (1964).

Given that Paragon has failed to establish that this Court is the correct venue as to any Defendant—much less all of them—a transfer under Section 1406(a) to the Western District of Wisconsin is appropriate. *See Branstetter v. Holland America Line N.V.*, 430 F. Supp. 3d 364, 376 (W.D. Tenn. 2019) ("Courts may transfer cases under § 1406(a) when they lack personal jurisdiction over a party in the transferor district.") (citation omitted).

In the event that the Court somehow finds that personal jurisdiction is appropriate as to one, but not all, of the Defendants, transfer to the Western District of Wisconsin is still appropriate. Notably, in *Flynn v. Greg Anthony Construction Co., Inc.,* 95 Fed. Appx. 726, 738-41 (6th Cir. 2003), the Sixth Circuit held that the district court abused its discretion by dismissing the claims against some defendants while transferring the remainder of the action. Instead, transfer of the entire case was appropriate, as the transferee forum had the most significant connections to the case and possessed personal jurisdiction over *all of the defendants*. *Id.*; *see also Jackson v. L & F Martin Landscape,* 421 Fed.Appx. 482, 483–84 (6th Cir. 2009) (holding that a district court abused its discretion by dismissing a case for lack of personal jurisdiction without first considering whether a transfer under § 1406(a) would be appropriate).

A plain reading of the Complaint shows that the Western District of Wisconsin, which includes Dane County and Jefferson County, would properly have general personal jurisdiction over all of the Defendants, as all are residents or domiciled in one of those two Wisconsin counties. (Compl., ¶¶ 10-15.) As noted above and in the accompanying declarations, the intellectual property and trade secrets at issue were developed in Wisconsin, including through Paragon's affirmative visits to Wisconsin, so that the Western District of Wisconsin would also have specific personal jurisdiction over all parties. The fact that all Defendants reside in Wisconsin and the facts giving rise to this dispute—including as to Clearspan and the Estate—make transfer to the Western District of Wisconsin abundantly appropriate. *See Concord Music Grp., Inc. v. Anthropic PBC*, -- F. Supp.3d --, 2024 WL 3101098, at *11 (M.D. Tenn. June 24, 2024) (transferring case to N.D. Cal. because there was no dispute that N.D. Cal. would have both personal jurisdiction over the defendant and venue would be proper because defendant's principal place of business was in that district).

## CONCLUSION

Defendants Qualtim, CBI, DrJ, IP-LLC, Kirk Grundahl, Suzanne Grundahl respectfully request that this Court enter an order granting its Motion, dismissing the Complaint against them on any of three independent grounds: (1) lack of personal jurisdiction; (2) improper venue; or (3) failure to join necessary parties. Alternatively, the Court should transfer this action to United States District Court for the Western District of Wisconsin, where all Defendants and the unnamed necessary parties, Clearspan and the Estate, are subject to general and/or specific personal jurisdiction.

Respectfully submitted,

*/s/ Shayne R. Clinton*
Shayne R. Clinton (BPR #26245)
Wesley S. Love (BPR #36860)
BASS, BERRY & SIMS PLC
900 S. Gay St., Suite 1700
Knoxville, Tennessee 37902
Tel: (865) 521-6200
Fax: (615) 742-6293
E-mail: sclinton@bassberry.com
         wesley.love@bassberry.com

*/s/ Thomas G. Pasternak*
Thomas G. Pasternak
Pro hac vice admission pending
*tpasternak@taftlaw.com*
Taft Stettinius & Hollister LLP
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
Telephone: 312.836.4134
Facsimile: 312.527.4011

*Attorneys for Defendants Qualtim, Inc.,*
*Center for Building Innovation, LLC, DrJ*
*Engineering, LLC, Inspired Pursuits, LLC,*
*Kirk Grundahl, and Suzanne Grundahl*

21

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing has been filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

*s/ Shayne R. Clinton*