# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| PARAGON COMPONENT | ) | |
| SYSTEMS, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 1:24-cv-00246-CEA-CHS |
| QUALTIM, INC., CENTER FOR | ) | |
| BUILDING INNOVATION, LLC, | ) | |
| DRJ ENGINEERING, LLC, | ) | |
| INSPIRED PURSUITS, LLC, | ) | |
| KIRK GRUNDAHL and | ) | |
| SUZANNE GRUNDAHL | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF PARAGON COMPONENT SYSTEMS, LLC'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS OR TRANSFER

Stephen Kabakoff, GA Bar No. 143164,
*pro hac vice*
MILLER & MARTIN PLLC
1180 W. Peachtree Street, NW,
Suite 2100
Atlanta, Georgia 30309
Telephone: (404) 962-6100
Stephen.Kabakoff@millermartin.com

James T. Williams, TN BPR 16341
Robert F. Parsley, TN BPR 23819
Erin E. Steelman, TN BPR 38463
MILLER & MARTIN PLLC
832 Georgia Avenue, Suite 1200
Chattanooga, TN 37402-2289
Telephone: (423) 756-6600
James.Williams@millermartin.com
Bob.Parsley@millermartin.com
Erin.Steelman@millermartin.com

*Counsel for Plaintiff Paragon Component Systems, LLC*

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................... iii

Introduction .................................................................................................................. 1

Statement of Facts ........................................................................................................ 1

    I.    John Holland and his dad, Dan Holland, co-founded Paragon, a Tennessee company, in 2016 to create software for use in the truss-building industry. ........................................... 1

    II.   Over eight years, Mr. Grundahl's Wisconsin companies provided thousands of hours of consulting services to Paragon and held business meetings in Tennessee. .................... 3

    III.  Immediately after Dan Holland died unexpectedly in 2024, Mr. Grundahl began claiming that he and his companies co-own Paragon's intellectual property. ..................... 5

    IV.  Paragon solely owns its computer code and other intellectual property, and Defendants did not author any of Paragon's software code. ................................................ 7

Argument ...................................................................................................................... 7

    I.    The Court Has Personal Jurisdiction over Defendants. ..................................................... 7

        A.   Standard for specific personal jurisdiction. ............................................................ 7

        B.   Defendants have purposefully acted and caused consequences in Tennessee. ........... 8

            1.   Kirk Grundahl sent numerous demand letters to Paragon in Tennessee on behalf of himself and Qualtim and Affiliates. ................................................... 8

            2.   For eight years, the Grundahls and Qualtim and Affiliates conducted business relationships with Paragon in Tennessee, which included receiving software services and providing over 3,000 hours of engineering-related consulting services. ...................................................................................................... 9

            3.   The Grundahls and Qualtim and Affiliates' General Manager personally visited Paragon's offices in Tennessee to solicit and develop their business relationships. .................................................................................................. 11

            4.   Defendants claim to co-own intellectual property that Paragon authored and owns, possesses, and controls in Tennessee. ............................................... 13

            5.   Mr. Grundahl and DrJ are licensed engineers in Tennessee, used Paragon's software to design hundreds of drawings for Tennessee-based construction projects, and agreed to litigate disputes arising from those services in Tennessee. ................................................................................................... 13

6.   Mr. Grundahl and Ms. Grundahl have individual contacts with Tennessee. ..... 17

7.   If Defendants obtained co-ownership of Paragon's intellectual property, Paragon would be injured in Tennessee. ........................................................... 17

C.   Paragon's declaratory-judgment claims arise out of and relate directly to Defendants' contacts with Tennessee. ......................................................... 17

D.   It is reasonable for this Court to assert personal jurisdiction over Defendants. ........ 18

II.   Clearspan and the Estate of Dan Holland Are Not Necessary Parties, and Adding Them Would Not Destroy Federal Jurisdiction. ............................................................... 20

A.   Standard for necessary and indispensable parties. ................................................. 20

B.   Clearspan and the Estate of Dan Holland are not necessary parties. ....................... 21

C.   Even if Clearspan and Dan Holland's Estate were necessary parties, they could be joined without defeating federal subject-matter jurisdiction. .............................. 22

III.   There Is No Basis to Dismiss or Transfer This Action. .................................................... 23

A.   There is no basis for dismissal or transfer to the Western District of Wisconsin. .... 23

B.   Were the Court to hold it lacks personal jurisdiction over a single Defendant, it should sever and transfer claims against that Defendant rather than transfer this entire action. .............................................................................................................. 23

Conclusion .............................................................................................................................. 25

Certificate of Service ............................................................................................................. 27

ii

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AMB Media, LLC v. OneMB, LLC*,
No. 23-5607, 2024 WL 2052151 (6th Cir. May 8, 2024) ...................................................... 15

*Apple Inc. v. Zipit Wireless, Inc.*,
30 F.4th 1368 (Fed. Cir. 2022) ............................................................................................... 12

*Barton v. Barton*,
696 S.W.3d 571 (Tenn. Ct. App. 2024) .................................................................................. 14

*Bird v. Parsons*,
289 F.3d 865 (6th Cir. 2002) ................................................................................................ 7, 8

*Coleman v. Lappin*,
6:10-CV-186, 2011 WL 4586922 (E.D. Ky. Sept. 29, 2011) ................................................ 24

*Conn v. Zakharov*,
667 F.3d 705 (6th Cir. 2012) .................................................................................................. 14

*Crea v. Stone Barn, Inc.*
1:18 CV 549, 2018 WL 11431489 (N.D. Ohio Aug. 17, 2018) .............................................. 13

*Cupp v. Alberto-Culver USA, Inc.*,
308 F. Supp. 2d 873 (W.D. Tenn. 2004) .................................................................................. 8

*dmarcian, Inc. v. dmarcian Europe BV*,
60 F.4th 119 (4th Cir. 2023) ............................................................................... 9, 10, 18, 19

*Dyersburg Mach. Works, Inc. v. Rentenbach Eng'g Co.*,
650 S.W.2d 378 (Tenn. 1983) ................................................................................................ 16

*Eat More Wings, LLC v. Home Mkt. Foods, Inc.*,
282 F. Supp. 3d 965 (E.D. Ky. 2017) .................................................................................... 10

*Firexo, Inc. v. Firexo Grp. Ltd.*,
99 F.4th 304 (6th Cir. 2024) ................................................................................................... 16

*Gen. Motors L.L.C. v. Autel. US Inc.*,
14-14864, 2016 WL 1223357 (E.D. Mich. Mar. 29, 2016) ................................................... 15

*Glancy v. Taubman Ctrs., Inc.*,
373 F.3d 656 (6th Cir. 2004) .................................................................................................. 20

iii

*Hyperquest, Inc. v. NuGen I.T., Inc.*,
627 F. Supp. 2d 884 (N.D. Ill. 2008) ................................................. 17

*In re Trade Partners, Inc., Inv'rs Litig.*,
627 F. Supp. 2d 772 (W.D. Mich. 2008) ............................................. 23

*Jenkins v. Marvel*,
683 F. Supp. 2d 626 (E.D. Tenn. 2010) .............................................. 16

*Johnson v. Griffin*,
85 F.4th 429 (6th Cir. 2023) ................................................................ 7

*Kent v. Hennelly*,
328 F. Supp. 3d 791 (E.D. Tenn. 2018) ............................................. 18

*Laethem Equip. Co. v. Deere & Co.*,
485 F. App'x 39 (6th Cir. 2012) ......................................................... 21

*Lalewicz v. WarnerMedia Direct, LLC*,
--- F.Supp.3d ---, 4:24-CV-44, 2024 WL 3640409 (E.D. Tenn. July 24, 2024) ..................... 16

*Lamb v. MegaFlight, Inc.*,
26 S.W.3d 627 (Tenn. Ct. App. 2000) ................................................ 16

*Lassiter v. City of E. Cleveland*,
1:21-CV-1228, 2021 WL 12260884 (N.D. Ohio Oct. 29, 2021) ........... 20

*Lea v. Vilsack*,
3:21-CV-00468, 2023 WL 1141833 (M.D. Tenn. Jan. 30, 2023) ........... 24

*Leighton v. Poltorak*,
1:16-CV-2898, 2017 WL 1399839 (N.D. Ohio Apr. 19, 2017) ............. 13

*MAG IAS Holdings, Inc. v. Schmuckle*,
854 F.3d 894 (6th Cir. 2017) .................................................. 8, 11, 15

*Malone v. Stanley Black & Decker, Inc.*,
965 F.3d 499 (6th Cir. 2020) .............................................................. 17

*Med Corp., Inc. v. City of Lima*,
296 F.3d 404 (6th Cir. 2002) ........................................................ 19, 22

*Mercedes Benz, USA, LLC v. Lewis*,
19-10948, 2019 WL 4302769 (E.D. Mich. Sept. 11, 2019) .................. 18

*Mueller Brass Co. v. Crompton*,
2:20-CV-02496, 2021 WL 3549127 (W.D. Tenn. May 12, 2021) ........... 13

iv

*Pearl Records, Inc. v. Conner*,
    3:22-CV-00096, 2023 WL 351203 n.5 (M.D. Tenn. Jan. 20, 2023)........................................ 15

*Power v. Connectweb Techs., Inc.*,
    648 F. Supp. 3d 302 (D. Mass. 2023) ................................. 19

*Reilly v. Meffe*,
    6 F. Supp. 3d 760 (S.D. Ohio 2014)........................................ 20

*School Dist. of Pontiac v. Secretary of U.S. Dep't of Educ.*,
    584 F.3d 253 (6th Cir. 2009)................................. 21

*Scott v. White*,
    539 F. Supp. 3d 831 (M.D. Tenn. 2021) ..................................... 9, 18, 19

*Severe Records, LLC v. Rich*,
    658 F.3d 571 (6th Cir. 2011)................................. 23

*Stanley v. Nissan N. Am., Inc.*,
    719 F. Supp. 3d 786 (M.D. Tenn. 2024) ........................... 8, 15, 17, 18

*State ex rel. Elvis Presley Int'l Mem'l Found. v. Crowell*,
    733 S.W.2d 89 (Tenn. Ct. App. 1987) ................................. 14

*Tallent v. Progressive Hawaii Ins. Corp.*,
    3:23-CV-93-TAV-JEM, 2023 WL 11760887 (E.D. Tenn. Oct. 31, 2023).................. 20, 21, 22

*Trimble Inc. v. PerDiemCo LLC*,
    997 F.3d 1147 (Fed. Cir. 2021)................................. 9

*Walker v. Concoby*,
    79 F. Supp. 2d 827 (N.D. Ohio 1999)................................. 12

*Williams v. Smyrna Residential, LLC*,
    685 S.W.3d 718 (Tenn. 2024)................................. 16

*Xilinx, Inc. v. Papst Licensing GmbH & Co.*,
    848 F.3d 1346 (Fed. Cir. 2017)................................. 12

**Statutes**

15 U.S.C. §§ 1051, et seq................................. 18

17 U.S.C. §§ 101, et seq................................. 17, 22

18 U.S.C. §§ 1836, et seq................................. 18

28 U.S.C. § 1391(b)(2) ................................................................................. 23

28 U.S.C. § 1404(a) ..................................................................................... 24

28 U.S.C. § 1406(a) ............................................................................... 23, 24

28 U.S.C. § 1655 .......................................................................................... 14

28 U.S.C. § 2201 .......................................................................................... 17

35 U.S.C. §§ 101, et seq. .............................................................................. 18

T.C.A. § 20-2-214(a)(1) ......................................................................... 10, 15

T.C.A. § 20-2-214(a)(3) .............................................................................. 15

T.C.A. § 20-2-214(a)(5) ................................................................................ 9

T.C.A. § 20-2-214(a)(6) ................................................................................ 7

T.C.A. § 20-2-225 ......................................................................................... 7

T.C.A. § 48-215-101(a) .............................................................................. 14

T.C.A. § 48-249-502(a) .............................................................................. 14

T.C.A. §§ 47-25-1701, et seq. .................................................................... 18

**Court Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................... 7, 23

Fed. R. Civ. P. 12(b)(3) .............................................................................. 23

Fed. R. Civ. P. 12(b)(6) .............................................................................. 20

Fed. R. Civ. P. 12(b)(7) ......................................................................... 20, 23

Fed. R. Civ. P. 19(a) .................................................................................. 20

Fed. R. Civ. P. 19(a)(1) .............................................................................. 20

Fed. R. Civ. P. 19(a)(1)(A) ........................................................................ 21

Fed. R. Civ. P. 19(a)(1)(B) ................................................................... 21, 22

Fed. R. Civ. P. 19(a)(1)(2) ........................................................................ 21

Fed. R. Civ. P. 19(b) ........................................................................................................ 21

Fed. R. Civ. P. 21 ............................................................................................................ 24

Fed. R. Evid. 201(b) ........................................................................................................ 24

**Other Authorities**

14D FED. PRAC. & PROC. *Juris*. § 3827 (4th ed. 2024) ................................................. 24

## INTRODUCTION

The Court should deny Defendants' motion to dismiss or transfer. The Grundahls and their companies conducted an eight-year business relationship with Paragon, a Tennessee company, which involved, among other contacts, providing over 3,000 hours of engineering-related consulting services to Paragon and participating in business meetings at Paragon's Chattanooga office. Paragon's declaratory-judgment claims arise directly from these and other contacts. In a blatant attempt at forum-shopping, after filing their motion, Defendants filed a duplicative lawsuit against Paragon in Wisconsin; but that can make no difference here, for Defendants have ample contacts with Tennessee. The Court should also deny Defendants' motion because any un-joined parties are not indispensable. Even if they were, they could be joined without defeating jurisdiction.

## STATEMENT OF FACTS

**I.      John Holland and his dad, Dan Holland, co-founded Paragon, a Tennessee company, in 2016 to create software for use in the truss-building industry.**

Paragon, which does business as Paragon, Paragon Truss, and Truss Pal, is a Tennessee limited-liability company with its principal office in Chattanooga, Tennessee. Compl., Doc. 1 ¶ 9; Holland Decl., Ex. 1 ¶ 2; Ex. 12; Ex. 13; Ex. 14.

Paragon was co-founded in 2016 by John Holland and his dad, Dan Holland. Doc. 1 ¶¶ 2, 21; Ex. 1 ¶ 2. Decades earlier, after getting his undergraduate engineering degree, Dan joined a construction business in the Meridian, Mississippi area, operated by his wife's family. Ex. 1 ¶ 3. Dan's career focused on building trusses—components that support overhead structures like roofs, as well as heavy flooring, which must be carefully designed using complex math and made with specified materials and components. Ex. 1 ¶ 3. By 2016, Dan was an industry leader, the majority owner and President of Clearspan Components, Inc., a Mississippi corporation near Meridian, and a successful builder of wall panels and trusses. Ex. 1 ¶ 4.

1

Growing up, John helped out around Clearspan's shop. Ex. 1 at ¶ 5. When he graduated from Covenant College, he wanted to go into computer programming and software design. But instead of accepting a job offer from Google, John went to work with his dad. *Id*. In 2014, he began helping Clearspan develop software applications for its internal use. This led to bigger goals: John and his dad wanted to create internet-based software for the truss industry. Ex. 1 ¶ 6; Ex. 13.

In co-founding Paragon, John and his dad shared a vision of creating internet-based software for designing and building trusses more effectively and economically. Doc. 1 ¶¶ 2, 21; Ex. 1 ¶ 7. They planned to develop software that would help designers model different truss designs, redesign existing truss designs, and determine the appropriate materials and components for safe and effective trusses (the "Paragon Truss Software"). *Id*. This required embedding complex mathematical formulas within Paragon's software. They hoped to offer software that would jump-start the truss-design process and connect truss designers with engineers, component sellers, and truss builders. Paragon wanted to sell its software services to truss designers and builders around the country. Doc. 1 ¶¶ 2–3, 21, 24–25; Ex. 1 ¶ 7. But first it had to create the software.

In 2016, Paragon acquired software-related intellectual property from Clearspan. Doc. 1 ¶ 22; Ex. 1 ¶ 8. Paragon hired its own employees and independent contractors who, along with John, originally developed and authored new software code for the Paragon Truss Software. Doc. 1 ¶ 61; Ex. 1 ¶ 8. Paragon has protected its trade secrets, including by having its software developers execute work-for-hire and confidentiality contracts. Doc. 1 ¶¶ 62, 114–15. Paragon has employed numerous individual software developers and invested over $5 million in, among other things, originally authoring and developing the Paragon Truss Software. Doc. 1 ¶¶ 1, 3, 18(i); Ex. 1 ¶ 9.

By the end of 2023, after considerable work and testing, the Paragon Truss Software was offering useable and marketable software features, including proprietary software for editing and redesigning .pdf design drawings. Paragon would be ready, within months, to make the Paragon

2

Truss Software more fully available. Doc. 1 ¶ 23; Ex. 1 ¶ 10; Ex. 13. Paragon has also been work-ing on incorporating artificial intelligence features into the Paragon Truss Software. Ex. 1 ¶ 10.

## II.    Over eight years, Mr. Grundahl's Wisconsin companies provided thousands of hours of consulting services to Paragon and held business meetings in Tennessee.

Kirk Grundahl is a Wisconsin engineer who owns and operates affiliated companies in Wisconsin, including Qualtim, Inc. ("Qualtim"), DrJ Engineering, LLC ("DrJ"), and Center for Building Innovation, LLC ("CBI"). Doc. 50-3 ¶¶ 2–3, 8–10, 22–27, 36. He is President of Qualtim and its related entities, including DrJ, and is Managing Member of CBI. Doc. 50-1 ¶ 11; Doc. 50-3 ¶¶ 10, 27, 36; Ex. 7 at 3. Qualtim, DrJ, and CBI share a principal office and provide engineering, consulting, testing, and other services. Doc. 1 ¶¶ 10–15, 29–31; Doc. 50-1 ¶ 11; Doc. 50-3 ¶ 8–11, 24–25, 37. Qualtim, DrJ, and CBI do business together as the "Qualtim Family of Services." Ex. 1 ¶¶ 14–15; Parsley Decl., Ex. 2 ¶¶ 2–6; Ex. 3 – Ex. 6; Ex. 22 – Ex. 24; Ex. 8. Suzanne Grundahl, Mr. Grundahl's wife, is Vice-President of Qualtim and its related entities. Ex. 7 at 3.[1]

Dan Holland got to know the Grundahls through truss-industry organizations. Ex. 1 ¶ 11. For years, the Grundahls' companies provided engineering and engineering-related services to Clearspan in exchange for payment. *Id.*; Eason Decl., Ex. 20 ¶ 3. Paragon itself does not provide engineering services, just software applications. Paragon wanted to consult with engineers about engineering standards and to validate the accuracy of the equations in its software. Ex. 1 ¶ 12. In exchange for payment, it obtained engineering-related consulting services from Qualtim, DrJ, and CBI. *Id.* Paragon could have obtained these services from various engineering companies. It used the Grundahls' companies only because they had served Clearspan and Dan trusted them then. *Id.*

The Grundahls also pursued a business relationship with Paragon. Ex. 1 ¶ 13. On their own initiative, on October 15, 2016, Mr. Grundahl and Ms. Grundahl met in person with John Holland

---

[1] In this brief, "Qualtim and Affiliates" means Qualtim, DrJ, and CBI.

and other Paragon representatives at its offices in Chattanooga, Tennessee about developing a business relationship. *Id*. From 2016 to 2024, Mr. Grundahl and Qualtim and Affiliates' general manager, Keith Hershey, communicated dozens of times via phone, email, and videoconferencing with Paragon representatives located in Chattanooga, including John Holland. *Id*. On November 16, 2021, on his own initiative, Mr. Hershey met in person with John and Paragon employees at its Chattanooga offices to discuss Paragon's business relationship with Qualtim and Affiliates. *Id*.

From 2016 to 2024, representatives of Qualtim, DrJ, and CBI provided over 3,000 hours of engineering-related consulting services to Paragon. Ex. 1 ¶ 14. These services focused on answering questions about mathematical equations and the meaning of engineering standards. *Id*. They also evaluated some of the Paragon Truss Software outputs. *Id*. Employees and representatives of Qualtim and Affiliates—including Jim Vogt, Joe Michels, Ryan Dexter, Kevin Much, Daniel Lawless, Adam Heise, and Larry Wainwright—had thousands of communications via phone, email, text message, video-conference, and instant-messaging with John Holland and Paragon employees and contractors located in Tennessee. *Id*. Paragon received these services on an as-needed basis, and was invoiced by Ms. Grundahl. Ex. 1 ¶ 15; Ex. 8; Doc. 50-4 ¶ 19. For their services to Paragon, Qualtim and Affiliates were paid over $332,000. Ex. 1 ¶ 15.

Paragon has always maintained its principal office in Chattanooga. Ex. 1 ¶ 17. From 2016 to 2022, Paragon employed and contracted with software developers who frequently did their work at Paragon's principal office, where they received communications from Qualtim and Affiliates. *Id*. In 2022, Paragon's software developers transitioned to working mainly remotely; most of Paragon's software developers have since worked from homes in Tennessee. *Id*.

DrJ and Mr. Grundahl are licensed to practice engineering in Tennessee, and Qualtim was formerly licensed to practice engineering in Tennessee. Doc. 1 ¶¶ 19.c–e; Doc. 50-3 ¶¶ 3, 40; Ex. 2 ¶¶ 7–9; Ex. 9 – Ex. 11. From 2016 to 2024, DrJ used Paragon's .pdf-editing software to work on

4

and seal over 900 engineering drawings for Tennessee-based construction projects. Ex. 1 ¶ 18. To do this, several representatives of Qualtim and Affiliates, including Mr. Grundahl and Mr. Dexter, each maintained a customer account for using Paragon's online applications, and these accounts were used on behalf of DrJ and Qualtim and Affiliates. Because DrJ provided feedback that helped Paragon evaluate its software, Paragon charged only a small fee to DrJ per design. *Id*. This .pdf-editing software is part of the Paragon Truss Software that Mr. Grundahl claims he or his companies co-own. *Id*. During the time that Qualtim representatives used Paragon's software, Paragon's Terms of Use included a forum-selection clause that exclusively selects litigation in state or federal courts in Hamilton County, Tennessee for any "claims for injunctive or equitable relief or claims regarding intellectual property rights." Ex. 1 ¶ 19. To use Paragon's online software, Mr. Grundahl, DrJ, and Qualtim and Affiliates had to, and did, agree to these terms. *Id*.

### III. Immediately after Dan Holland died unexpectedly in 2024, Mr. Grundahl began claiming that he and his companies co-own Paragon's intellectual property.

In January 2024, at age 61, Dan Holland unexpectedly died. Doc. 1 ¶ 6; Ex. 1 ¶ 20. Almost immediately, the Grundahls pressed to meet with the Holland family to discuss the Grundahls' business dealings with Dan. Ex. 1 ¶ 21; Doc. 1-10 at 22. At the Grundahl's request, an initial meeting was held in Mississippi two days after Dan's funeral. Ex. 1 ¶ 21. The Grundahls asked to meet again in February, but John said that the family needed some time to grieve and work on their affairs. *Id*. Unwilling to wait, in March 2024, at the Grundahls' urging, Ms. Grundahl and Qualtim employees Keith Hershey and Ryan Dexter held a video call with employees of Paragon in Tennessee. Ex. 1 ¶ 22. During this call, Ms. Grundahl, Mr. Hershey, and Mr. Dexter informed Paragon that Qualtim and Affiliates claimed to own Paragon's intellectual property, including the Paragon Truss Software. *Id*. They emailed John and others a memo from the "Qualtim Family of Brands," dated March 22, 2024, claiming that Clearspan and DrJ co-own the Paragon Truss Software. Doc.

1 ¶¶ 44–46; Doc. 1-8. The memo suggests that "joint ownership" arose from the Grundahls' business dealings and "partnership" with Dan and their companies' provision of consulting services to Paragon. Doc. 1-8. On April 3, 2024, Qualtim posted an online "tribute" to Dan. Ex. 15. Mr. Grundahl then claimed that Inspired Pursuits, LLC, a company of which he, Ms. Grundahl, and Dan Holland's Estate are members, co-owns Paragon's intellectual Property. Doc. 1-14 – Doc. 1-16.

The Grundahls' claims were contrary to John's understanding. Doc. 1 ¶ 46; Ex. 1 ¶ 22. Paragon's counsel responded, explaining that Paragon solely owns the Paragon Truss Software and its other property. Doc. 1-9. From then through mid-June 2024, Mr. Grundahl sent Paragon's attorneys at least twelve emails, attaching seven letters claiming that he or his companies, or one of them, co-owns Paragon's intellectual property, including the Paragon Truss Software. Doc. 1 ¶¶ 43–53; Doc. 1-8 – Doc. 1-17; Ex. 1 ¶ 22. By June 2024, Mr. Grundahl was demanding that Paragon hand over its software code to him and stop publicly promoting Paragon's software. Doc. 1 ¶¶ 48–49; Doc. 1-10 at 21; Doc. 1-14 at 2; Doc. 1-16 at 5. If his demands were not met, he threatened, he would hire attorneys, and it would be a "very bad day" for Paragon and "Dan's family," as Mr. Grundahl would publicize every "negative action" by Paragon to "everyone ever associated with [Paragon,] now, and into the future." Doc. 1-15 at 5.

By the summer of 2024, Paragon was announcing new software features, which it expected would enable it to begin making a profit from customers' use of Paragon's Truss Software. Ex. 1 ¶ 23. It was a crucial time. Mr. Grundahl's claims were casting a cloud over Paragon. *Id.*; Doc. 1 ¶ 8. On June 13, 2024, Mr. Grundahl sent Paragon a letter insisting that, by June 17, 2024, Paragon must agree with him. Doc. 1-16 at 5. Paragon did not agree. But it heard nothing further. Ex. 1 ¶ 23. A month later, on July 23, 2024, Paragon filed this action. Doc. 1.

6

On October 24, 2024, three weeks after filing the motion to dismiss, Doc. 22, several of the Defendants filed a duplicative lawsuit against Paragon in Wisconsin styled *Inspired Pursuits, et al., v. Paragon Component Systems, LLC, et al.*, No. 3:24-cv-00745 (W.D. Wisc.); Ex. 18.

## IV. Paragon solely owns its computer code and other intellectual property, and Defendants did not author any of Paragon's software code.

John Holland is Paragon's sole member. Doc. 1 ¶ 9; Ex. 1 ¶ 24. Paragon alone—not its members—owns and controls all its intellectual property and trade secrets, including the Paragon Truss Software. Ex. 1 ¶ 24. Paragon has never transferred, assigned, or sold any of its intellectual property or trade secrets to any of the Defendants. *Id.*; Doc. 1 ¶¶ 68, 84, 102, 124, 145. None of the Defendants or their employees ever authored any of the Paragon Truss Software code. Ex. 1 ¶ 24; Doc. 1 ¶¶ 62–67. Clearspan does not claim any ownership interest in Paragon's intellectual property or trade secrets. Ex. 20 ¶¶ 4–5. Nor does Dan Holland's Estate. Speed Decl., Ex. 19 ¶ 4.[2]

**ARGUMENT**

## I. The Court Has Personal Jurisdiction over Defendants.

The Court should deny Defendants' motion to dismiss under Rule 12(b)(1) for lack of personal jurisdiction. Each Defendant had purposeful contacts with Tennessee throughout an eight-year business relationship. Paragon's declaratory-judgment claims arise from and relate directly to those contacts. It is entirely reasonable for this Court to exercise specific personal jurisdiction.

### A. *Standard for specific personal jurisdiction.*

Tennessee's long-arm statute has the same limits as due process. T.C.A. § 20-2-214(a)(6); T.C.A. § 20-2-225. The question is thus whether exercising specific personal jurisdiction over Defendants comports with due process. *Johnson v. Griffin*, 85 F.4th 429, 432 (6th Cir. 2023); *Bird*

---

[2] After this lawsuit was filed, Mr. Grundahl published disparaging internet posts and sent disparaging emails to Paragon's existing and prospective customers and to Paragon's employees in Tennessee. Ex. 1 ¶ 23. Paragon has separately moved to supplement or amend its complaint to add a claim against Mr. Grundahl and Qualtim and Affiliates arising from these communications.

*v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). Because Defendants' motion relies on the papers, Paragon need make only a *prima facie* showing—a "relatively slight" burden. *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017). The facts must be construed for Paragon, and any conflicting facts from Defendants must be disregarded. *Bird*, 289 F.3d at 871.

Establishing specific personal jurisdiction over Defendants, each a citizen of Wisconsin, requires showing such "minimum contacts" with Tennessee that it is fair for them to be sued in Tennessee. This involves three requirements: (1) the defendant has purposefully availed itself of the "privilege of acting in the forum state or causing a consequence in the forum state"; (2) the claims arise out of or relate to the defendant's contacts with the forum; and (3) the "acts or consequences caused by" the defendant have a substantial enough connection with Tennessee to make exercising personal jurisdiction reasonable. *Stanley v. Nissan N. Am., Inc.*, 719 F. Supp. 3d 786, 815 (M.D. Tenn. 2024) (citation omitted). Each Defendant's contacts must be analyzed separately. *Cupp v. Alberto-Culver USA, Inc.*, 308 F. Supp. 2d 873, 878 (W.D. Tenn. 2004).

B.     *Defendants have purposefully acted and caused consequences in Tennessee.*

Each defendant has purposeful contacts with Tennessee that warrant exercising personal jurisdiction. *MAG IAS*, 854 F.3d 894 at 901; *Stanley*, 719 F. Supp. 3d at 815.

1.     <u>Kirk Grundahl sent numerous demand letters to Paragon in Tennessee on behalf of himself and Qualtim and Affiliates.</u>

From March to June 2024, Mr. Grundahl sent a memo and at least a dozen emails, and seven letters, to Paragon in Tennessee. Doc. 1 ¶¶ 43–53; Doc. 1-8 – 1-17; Ex. 1 ¶ 22. These communications allege that one or more of the Defendants co-own the Paragon Truss Software and demand that Paragon stop promoting it and hand over its software code. Defendants contend that such demand letters can never, standing alone, suffice to show purposeful availment, even for a declaratory-judgment action concerning intellectual-property rights. Doc. 50 at 12–13 (citing

cases). But "there is no general rule that demand letters can never create specific personal juris-diction." *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1156 (Fed. Cir. 2021); *Scott v. White*, 539 F. Supp. 3d 831, 842 (M.D. Tenn. 2021) (distinguishing cases). Mr. Grundahl "repeatedly contacted [Paragon] in [Tennessee], accumulating an extensive number of contacts with the forum in a short period of time." *See Trimble*, 997 F.3d at 1155–57 (patent context). These communica-tions were also contacts by Qualtim and Affiliates and Inspired Pursuits because Mr. Grundahl was speaking on their behalf as President and Managing Member. Doc. 1-8 – Doc. 1-17.

2.  <u>For eight years, the Grundahls and Qualtim and Affiliates conducted business rela-tionships with Paragon in Tennessee, which included receiving software services and providing over 3,000 hours of engineering-related consulting services.</u>

Mr. Grundahl's demand letters, memo, and emails are hardly Defendants' only contacts with Tennessee. They ignore or misrepresent numerous facts showing that Mr. Grundahl's com-munications arose from Defendants' longstanding conduct of business in Tennessee. Doc. 50.

From 2016 to 2024, Qualtim and Affiliates' President Mr. Grundahl and Vice-President Ms. Grundahl solicited and conducted an eight-year relationship with Paragon in Tennessee. Qual-tim, DrJ, and CBI provided over 3,000 hours of engineering-related consulting services to Paragon. Ex. 1 ¶ 14. Representatives of Qualtim, DrJ, and CBI directed thousands of communications, via phone, email, text message, videoconference, and instant-messaging, to John Holland and Paragon employees in Tennessee. *Id*. For these services, Qualtim and Affiliates invoiced and were paid over $332,000—revenue derived from doing business in Tennessee. Ex. 1 ¶ 15; Ex. 8.

"Entering into a contract for services to be rendered … in this state," such as by invoicing for services provided, supports personal jurisdiction. T.C.A. § 20-2-214(a)(5). Using electronic media "makes no difference to the purposeful availment analysis, for jurisdiction can be estab-lished when a defendant purposefully, through electronic contacts, has conceptually 'entered' the State via the Internet for jurisdictional purposes." *dmarcian, Inc. v. dmarcian Europe BV*, 60 F.4th

9

119, 134 (4th Cir. 2023). Unlike selling a single product over the internet, and even without a governing contract apart from invoices, Qualtim, DrJ, and CBI "transact[ed] … business within this state" for eight years. T.C.A. § 20-2-214(a)(1); *see dmarcian*, 60 F.4th at 133–34 (business relationship based on remote contacts); *Eat More Wings, LLC v. Home Mkt. Foods, Inc*., 282 F. Supp. 3d 965, 969–70 (E.D. Ky. 2017) (transaction of business via emails).

Moreover, these thousands of communications *themselves* were the services Paragon paid for. Mr. Grundahl contends (wrongly[3]) that Qualtim, DrJ, and CBI's consulting services themselves effectively constituted co-authoring the Paragon Truss Software. Doc. 1 ¶¶ 44–47; Doc. 1-8; Doc. 1-10 at 18; Doc. 1-12. Because they "*form the bases* for th[is] action," Defendants' communications that included "[m]aking phone calls, … [and] sending e-mails, letters or other communications, standing alone, 'may be sufficient to confer jurisdiction" on Defendants. *Eat More Wings*, 282 F. Supp. 3d at 969–70 (emphasis added). Defendants themselves even suggest they have been doing business in Tennessee through the Paragon Truss Software. *See* Doc. 1-10 at 11 (The "Paragon/DrJ program … has been in use since 2016 by our customers.").

In dealing with Paragon, Qualtim, DrJ, and CBI operated as a single service-provider, sharing each other's contacts with Tennessee. They share a principal office. Doc. 50-3 ¶¶ 11, 24–25, 37. They do business together as the "Qualtim Family of Services." Ex. 3 – Ex. 6; Ex. 8, Ex. 22 – Ex. 24. Qualtim and DrJ's employee lists are identical. *Compare* Ex. 16 *with* Ex. 17. Employees who worked with Paragon used both Qualtim and DrJ email addresses, Ex. 1 ¶ 16. Consulting and validation services were provided under the umbrella of "Qualtim" or "DrJ Engineering" without specifying which entity employed the consultants. Paragon understood that it was receiving consulting and other engineering-related services generally from the Qualtim group of companies. *Id*.

---

[3] Only Paragon software developers ever wrote code for the Paragon Truss Software. Ex. 1 ¶ 24.

Defendants continued to operate as a single entity in claiming to co-own Paragon's property. In a demand letter to Paragon, Mr. Grundahl defines "Qualtim" as including "DrJ, CBI, Applied Building Technology Group (ABTG), and Pushing 7, which will be known as Qualtim, DrJ or CBI, depending on context." Doc. 1-10 at 5. The demand letters at various times suggest that Qualtim, DrJ, and CBI each own or have contributed to Paragon's intellectual property and have enforceable rights in it. *See, e.g.*, Doc. 1-8 at 1, 5–6; Doc. 1-12 at 1–2; Doc. 1-16 at 5; Doc. 1-17 at 1. And the letters state that Qualtim, DrJ, and CBI each provided services to Paragon and contributed to its creation of intellectual property. Doc. 1-8 at 5–6; 1-10 at 9; Doc. 1-12 at 1–2; Doc. 1-16 at 2. In their brief, Defendants do not differentiate among Qualtim, DrJ, and CBI's respective contacts and even conflate them. Doc. 50 at 6, 18. And the Grundahls' initial disclosures and declarations reinforce their operation of Qualtim, DrJ or CBI as a single business. Ex. 7 at 3 (identifying the Grundahls as executives of "Qualtim, Inc. and its related entities"); Doc. 50-3 ¶ 10 (broadly defining services of "Qualtim"); Ex. 3; Ex. 4; Ex. 22; Ex. 23.

3.    The Grundahls and Qualtim and Affiliates' General Manager personally visited Paragon's offices in Tennessee to solicit and develop their business relationships.

Mr. Grundahl, Ms. Grundahl, and Qualtim and Affiliates traveled to Tennessee at least twice to solicit and develop the business relationship with Paragon at the heart of this dispute. Although "physical presence in the forum state is not required," Defendants' physical entry into Tennessee "is certainly a relevant contact." *MAG IAS Holdings*, 854 F.3d at 900. In their declarations, the Grundahls engage in verbal gymnastics to avoid admitting coming to Tennessee:

- "I have no employees who have traveled to Tennessee *to perform any engineering or consulting related work* for Paragon." Doc. 50-3 ¶ 7 (emphasis added).

- "Qualtim and Qualtim's employees have never been *contracted* to travel to Tennessee to *perform consulting or professional engineering services* for Paragon Component Systems, LLC." Doc. 50-3 ¶ 15 (emphasis added).

- "None of CBI's shareholders, officers, and employees have ever been *contracted to travel to Tennessee to perform testing and/or calibration of testing services* for Paragon …." Doc. 50-3 ¶ 29 (emphasis added); *id.* ¶ 34.

- "DrJ did not *perform any professional engineering services* for Paragon, *while working within* any Paragon or Tennessee location." Doc. 50-3 ¶ 41 (emphasis added).

- "I have never been *contracted* to travel to Tennessee to *perform any engineering, manufacturing, financial, or information technology work* for Paragon Component Systems, LLC …." Doc. 50-4 ¶¶ 3, 21–22 (emphasis added).[4]

To the contrary, on their own initiative Mr. Grundahl and Ms. Grundahl each met in person on October 15, 2016, with John Holland and Paragon employees at Paragon's offices in Chattanooga to *solicit a business relationship* (successfully) between Qualtim and Affiliates and Paragon. Ex. 1 ¶ 13. The Grundahls "did not merely solicit a business deal over the phone or through distant methods of communication that were aimed at a general population." *Walker v. Concoby*, 79 F. Supp. 2d 827, 833 (N.D. Ohio 1999). Rather, "[t]heir actions were targeted at a specific transaction and [the Grundahls] personally visited the state of [Tennessee] in order to negotiate" a business relationship with Paragon. *Id.* "These negotiations gave rise" to continuing services "that created a 'realistic and foreseeable impact upon the commerce of [Tennessee].'" *Id.*; *see Apple Inc. v. Zipit Wireless, Inc.*, 30 F.4th 1368, 1376 (Fed. Cir. 2022) (demand letters plus one in-person meeting are purposeful availment for declaratory-judgment action about intellectual property); *Xilinx, Inc. v. Papst Licensing GmbH & Co.*, 848 F.3d 1346, 1353–54 (Fed. Cir. 2017) (similar).

Contrary to Defendants' position, Doc. 50 at 13, the fact that Mr. Grundahl is President of Qualtim and Affiliates, that Ms. Grundahl is Vice-President, and that each is a Managing Member of Inspired Pursuits does not render their business trip to Chattanooga merely *company* contacts.

---

[4] Comparing alterations with Mr. Grundahl's initial declaration reveals clever attempts to avoid admitting that the Grundahls and Qualtim's general manager had in-person business meetings with Paragon in Tennessee. *Compare* Doc. 22-2 ¶¶ 7, 15, 29, 34, 41 *with* Doc. 50-3 ¶¶ 7, 15, 29, 34, 41.

When, as here, "an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, even acting as a corporate officer, these involvements can contribute to a finding of personal jurisdiction." *Mueller Brass Co. v. Crompton*, 2:20-CV-02496, 2021 WL 3549127, at *3 (W.D. Tenn. May 12, 2021) (citation omitted) (holding that company president's participation in negotiating a contract in forum state "constitutes a personal contact with the state of Tennessee"); *see Crea v. Stone Barn, Inc*., 1:18 CV 549, 2018 WL 11431489, at *6 (N.D. Ohio Aug. 17, 2018) (exercising personal jurisdiction over company president "who traveled to Ohio to solicit Plaintiff's business, which resulted in the Agreement that formed a relationship spanning several years"); *Leighton v. Poltorak*, 1:16-CV-2898, 2017 WL 1399839, at *7 (N.D. Ohio Apr. 19, 2017).

Not only that, but on November 16, 2021, on his own initiative, Qualtim General Manager Mr. Hershey met in-person with John Holland and Paragon employees at Paragon's offices in Chattanooga concerning their continuing business relationship. Ex. 1 ¶ 13. From 2016 to 2024, Mr. Grundahl and Mr. Hershey also communicated dozens of times, sometimes on their own initiative, via phone, email, and videoconferencing with Paragon representatives located in Chattanooga, including John Holland, concerning the business relationship between Qualtim and Affiliates and Paragon. Ex. 1 ¶ 13. Additional in-person meetings in Wisconsin and Mississippi just underscore the importance of this business relationship to the Grundahls and their companies. Ex. 1 ¶¶ 13, 21; Doc. 1-10 at 22; Doc. 50-1 ¶ 18; Doc. 50-3 ¶¶ 20, 34, 46; Doc. 50-4 ¶ 20.

4.   <u>Defendants claim to co-own intellectual property that Paragon authored and owns, possesses, and controls in Tennessee.</u>

Qualtim, DrJ, CBI, and Inspired Pursuits do not merely seek to enforce intellectual-property rights in relation to alleged misuse or infringement; they purport to have *co-authored* the Paragon Truss Software and to *co-own* it and Paragon's other intellectual property. Doc. 1 ¶¶ 43–53; Doc. 1-8 – Doc. 1-17; Doc. 50-1 ¶¶ 12–18; Doc. 50-1 ¶ 17; Doc. 50-4 ¶¶ 18–19. Mr. Grundahl

and Ms. Grundahl also suggest that they individually—and through them, Inspired Pursuits—obtained ownership in Paragon's property through their personal 50/50 "partnership" or "collaboration" or "joint venture" with Dan Holland (whose estate is a member of Inspired Pursuits) insofar as he was a member of Paragon. Doc. 1 ¶¶ 18(e), 47–48; Doc. 1-10 at 9–10, 18, 21; Doc. 1-11 at 4–5; Doc. 1-12 at 1–2; Doc. 1-15 at 2–3; Doc. 50-1 ¶¶ 12–18; Doc. 50-3 ¶¶ 47–49; Doc. 50-4 ¶¶ 18–19; Ex. 7 at 3. These are yet more purposeful contacts with Tennessee. Although "the mere presence of property in a State does not establish a sufficient relationship between the owner of the property and the State to support the exercise of jurisdiction over an unrelated cause of action[, t]he ownership of property in the State is *a* contact between the defendant and the forum …." *Conn v. Zakharov*, 667 F.3d 705, 719 (6th Cir. 2012). And here the claims relate directly to alleged property ownership.

For diversity-jurisdiction purposes, Paragon is a Georgia citizen because its member, John Holland, is domiciled in Georgia. Doc. 1 ¶ 18(a). But for personal-jurisdiction purposes, Paragon owns all its intellectual property in Tennessee. "All property transferred to or acquired by an LLC is *property of the LLC itself*," not its individual members. T.C.A. § 48-215-101(a) (emphasis added); *Barton v. Barton*, 696 S.W.3d 571, 577 (Tenn. Ct. App. 2024); *cf.* T.C.A. § 48-249-502(a) (prior LLC act). Property ownership also includes rights of possession and use. *See State ex rel. Elvis Presley Int'l Mem'l Found. v. Crowell*, 733 S.W.2d 89, 96 (Tenn. Ct. App. 1987). If Defendants co-owned Paragon's intellectual property in Wisconsin, as they claim, they would share ownership of it and related rights with Paragon in Tennessee, where Paragon alone possesses and controls the property. Were Defendants to ask a court to assert power *in rem* over Paragon's intellectual property, it could be done only in this District. *Cf.* 28 U.S.C. § 1655. Paragon's authorship, ownership, possession, and control of the Paragon Truss Software in Tennessee thus supports a *prima facie* case for personal jurisdiction because Defendants claim co-ownership of, and seek to

14

assert control over, that intellectual property—the very basis for Paragon's declaratory-judgment claims. Doc. 1 ¶¶ 54–139; Ex. 1 ¶¶ 2, 9, 17, 24; *see* T.C.A. § 20-2-214(a)(3).

*Pearl Records, Inc. v. Conner*, 3:22-CV-00096, 2023 WL 351203, at *6 n.5 (M.D. Tenn. Jan. 20, 2023), which Defendants rely on, Doc. 50 at 13–14, is inapposite insofar as it addresses the location of a single copyright-embodying photo in Tennessee. 2023 WL 351203, at *6. But *Pearl* otherwise holds that the personal jurisdictional "nexus" was in Texas, where the photographer solely claiming ownership of the photo's intangible copyright was domiciled. *Id*. at *2, 6 n.5, 7. As Defendants' claims here have "targeted intellectual property located in [Tennessee], no other place would be a more appropriate forum to afford an efficient resolution of the conflict." *Gen. Motors L.L.C. v. Autel*. *US Inc*., 14-14864, 2016 WL 1223357, at *6 (E.D. Mich. Mar. 29, 2016).

5. <u>Mr. Grundahl and DrJ are licensed engineers in Tennessee, used Paragon's software to design hundreds of drawings for Tennessee-based construction projects, and agreed to litigate disputes arising from those services in Tennessee.</u>

Mr. Grundahl, Qualtim, and DrJ have additional, relevant contacts with Tennessee. Mr. Grundhal and DrJ are each licensed to practice engineering in Tennessee and have done so. Doc. 1 ¶ 19.c, e. Ex. 9; Ex. 11. Qualtim was formerly licensed to practice engineering in Tennessee. Ex. 10. Moreover, from 2016 to 2024, DrJ used Paragon's .pdf-design-software, which is part of the Paragon Truss Software, to work on and seal over 900 design drawings for construction projects in Tennessee. Ex. 1 ¶ 18. This is another way DrJ and Mr. Grundahl transacted business and caused consequences in Tennessee. *See AMB Media, LLC v. OneMB, LLC*, No. 23-5607, 2024 WL 2052151, at *5 (6th Cir. May 8, 2024) (20 sales per year in Tennessee is purposeful availment); *MAG IAS Holdings*, 854 F.3d at 900; *Stanley*, 719 F. Supp. 3d at 815; T.C.A. § 20-2-214(a)(1).

To use Paragon's online .pdf-editing application, Mr. Grundahl and employees of Qualtim and Affiliates, including Mr. Dexter, maintained customer accounts through

www.paragontruss.com, which were used on behalf of Qualtim and Affiliates, especially DrJ. Ex.

1 ¶ 19. At all relevant times, Paragon's terms of use had an exclusive venue-selection provision:

> These Terms shall be governed by the laws of the State of Tennessee without regard to or application of any conflict of laws provisions. You acknowledge that these Terms have been entered into, and performance under these Terms shall occur, in the City of Chattanooga, Tennessee, and therefore hereby consent to the exclusive jurisdiction of the State Courts in and for Hamilton County, the State of Tennessee, and the United States Federal District Court in and for the Eastern District of Tennessee. Except for claims for injunctive or equitable relief or claims regarding intellectual property rights (which may be brought in any competent court without the posting of a bond), any dispute arising under this Agreement shall be finally settled on an individual basis in accordance with the Comprehensive Arbitration Rules of the Judicial Arbitration and Mediation Service, Inc. (JAMS) by three arbitrators appointed in accordance with such Rules. The arbitration shall take place in Chattanooga, Tennessee, in the English language and the arbitral decision may be enforced in any court.

Ex. 1 ¶ 19; Ex. 21 § 12. To sign up for and use Paragon's software, Mr. Grundahl and other representatives of Qualtim and Affiliates necessarily agreed to these terms, Ex. 1 ¶ 19, including agreeing that the contractual relationship was made and performed in Tennessee. Ex. 21 § 12.

Such provisions are enforceable under Tennessee and federal law,. *See Lalewicz v. WarnerMedia Direct, LLC*, --- F.Supp.3d ---, 4:24-CV-44, 2024 WL 3640409, at *3 (E.D. Tenn. July 24, 2024); *Jenkins v. Marvel*, 683 F. Supp. 2d 626, 634 (E.D. Tenn. 2010); *Lamb v. MegaFlight, Inc.*, 26 S.W.3d 627, 631 (Tenn. Ct. App. 2000). Given that Qualtim, DrJ, and CBI functioned as a single entity and were agents of each other, *supra*, 3, 10–11, the provisions apply to each of them. *Firexo, Inc. v. Firexo Grp. Ltd.*, 99 F.4th 304, 326 (6th Cir. 2024) (looking to state law in diversity action concerning binding non-signatories to a forum-selection provision); *see Williams v. Smyrna Residential, LLC*, 685 S.W.3d 718, 732 (Tenn. 2024) (agency and privity can result in non-signatory being bound to arbitration contract).[5] But even if they don't, the consent to litigate in

---

[5] *Dyersburg Mach. Works, Inc. v. Rentenbach Eng'g Co.*, 650 S.W.2d 378, 381 (Tenn. 1983), raised but did not decide this issue.

Tennessee provides yet another purposeful contact. Defendants' passing mention of a mere choice-of-law provision in Inspired Pursuit's operating agreement is irrelevant. Doc. 50 at 2.

6.    Mr. Grundahl and Ms. Grundahl have individual contacts with Tennessee.

Mr. Grundahl, as owner and President of Qualtim and Affiliates, and Ms. Grundahl, as Vice-President, had purposeful individual contacts with Tennessee by soliciting and maintaining business relationships with Paragon. In 2016, each came to Tennessee—on their own initiative— and met with Paragon representatives at its Chattanooga offices to solicit a business relationship with them and their companies, which in fact ensued. *Supra*, 11–13. Over the next eight years, Mr. Grundahl maintained this relationship through numerous communications directed to Paragon in Tennessee. *Id.* And in 2021, Ms. Grundahl invoiced Paragon $262,847 for "Engineering Support of Paragon Software Development." Ex. 8; Doc. 50-4 ¶ 19. The Grundahls contend that these services, among other things, resulted in their companies co-owning the Paragon Truss Software.

7.    If Defendants obtained co-ownership of Paragon's intellectual property, Paragon would be injured in Tennessee.

"Any injury to the owner of intellectual property rights occurs in the forum in which the owner is located." *Hyperquest, Inc. v. NuGen I.T., Inc*., 627 F. Supp. 2d 884, 893–94 (N.D. Ill. 2008). The "location of the injury is important." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 502 (6th Cir. 2020). Were half of Paragon's intellectual property and trade secrets transferred to Defendants, Paragon would suffer financial harm in Tennessee.

C.    *Paragon's declaratory-judgment claims arise out of and relate directly to Defendants' contacts with Tennessee.*

Paragon's declaratory-judgment claims arise out of and relate to Defendants' contacts with Tennessee. *See* 28 U.S.C. § 2201; *Stanley*, 719 F. Supp. 3d at 815. Paragon claims that: (1) it has solely authored and owns its copyrightable software code, which is protected by the Copyright Act, 17 U.S.C. §§ 101, et seq., Doc. 1 at 13–15; (2) it solely owns and has the exclusive right to

use its trademarks, which are protected by the Lanham Act, 15 U.S.C. §§ 1051, et seq., Doc. 1 at 15–17; (3) it solely owns any patents under the Patent Act, 35 U.S.C. §§ 101, et seq., Doc. 1 at 17–19; and (4) it solely owns its trade secrets, which are protected by the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, et seq., and Tennessee's Uniform Trade Secrets Act, T.C.A. §§ 47-25-1701, et seq., Doc. 1 at 19–26. Each claim arises from and relates to Mr. Grundahl's assertions that the "Qualtim Family of Services," or Inspired Pursuits, or some combination of them, co-owns Paragon's intellectual property and trade secrets. Mr. Grundahl's demand letters "directly relate to [Paragon's] pending request for a declaration" concerning the ownership and authorship of its software code and other intellectual property and trade secrets. *See Scott*, 539 F. Supp. 3d at 842 (declaratory-judgment claims concerning intellectual property); *Mercedes Benz, USA, LLC v. Lewis*, 19-10948, 2019 WL 4302769, at *7–8 (E.D. Mich. Sept. 11, 2019) (same).

Moreover, Paragon's declaratory-judgment claims also arise from and relate to Defendants' entire course of conduct described above. Mr. Grundahl contends that Qualtim and Affiliates' purported authorship and ownership of the Paragon Truss Software *resulted from* their eight-year "substantial collaboration" to develop software code and trade secrets. *See dmarcian*, 60 F.4th at 134–35. He also contends that Inspired Pursuit's purported ownership of Paragon's intellectual property and trade secrets arose from collaboration and partnership among the Grundahls and Dan Holland, which affected the interests of each of their companies, including Paragon.

D.     *It is reasonable for this Court to assert personal jurisdiction over Defendants.*

The lengthy list of "acts [and] consequences caused" by Defendants, described above, has a substantial enough connection with Tennessee to make exercising personal jurisdiction over them reasonable. *Stanley*, 719 F. Supp. 3d at 815. Relevant considerations include "the burden on the defendant, the interests of the forum, and the plaintiff's interest in obtaining relief." *Kent v. Hennelly*, 328 F. Supp. 3d 791, 799 (E.D. Tenn. 2018).

18

First, Defendants contend that exercising personal jurisdiction over them in Tennessee would be unreasonable because Paragon's declaratory-judgment claims "do not depend on any activities in this forum." Doc. 50 at 15. For the reasons stated above, this is factually wrong.

Second, Defendants concede that Paragon has an interest in clarifying the authorship and ownership of is software and other property. Doc. 50 at 15. As Paragon is a Tennessee company doing business in Tennessee, the State of Tennessee "has an interest in resolution of this dispute." *Scott*, 539 F. Supp. 3d at 843; *see dmarcian*, 60 F.4th at 135 (owners and states have strong interest in protecting intellectual-property rights). Insofar as Defendants reside in or might have developed intellectual property in Wisconsin, the State of Wisconsin also has an interest. Doc. 50 at 15–16. But that is irrelevant to determining whether there is personal jurisdiction over them in Tennessee; unlike with a motion to transfer for convenience, which Defendants have not sought, determining whether the exercise of personal jurisdiction satisfies due process does not properly involve comparing contacts with various forums. The only question is whether the Defendants' contacts with Tennessee make the exercise of personal jurisdiction over them reasonable. They do.

Third, Defendants lack any factual basis for asserting that having to litigate in Tennessee would "substantially burden[ ]" them just because they reside out-of-state. Doc. 22 at 15. "[M]ere assertions contained in … briefs" are not evidence. *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 414 (6th Cir. 2002). Defendants never even suggest, much less prove, that they lack the financial resources to litigate in Tennessee. *See Power v. Connectweb Techs., Inc*., 648 F. Supp. 3d 302, 320 (D. Mass. 2023). To the contrary, Mr. Grundahl and DrJ have practiced engineering in Tennessee. And Qualtim's website identifies no less than 39 employees, including numerous professional engineers, Ex. 16, which suggests that Qualtim and Affiliates have ample resources.

In sum, Defendants' motion to dismiss for lack of personal jurisdiction depends mostly on baseless assertions and an incomplete—and misleading—depiction of the facts. Defendants cannot

credibly contend that being sued in Tennessee over their claims to co-own a Tennessee company's intellectual property comes as a surprise. They have done business in Tennessee. Their relevant contacts with Tennessee are longstanding and extensive. And Paragon's declaratory-judgment claims arise from and relate directly to those contacts. This forum is as good as any for resolving this dispute. The Court should deny the motion to dismiss or transfer as to all Defendants.

## II. Clearspan and the Estate of Dan Holland Are Not Necessary Parties, and Adding Them Would Not Destroy Federal Jurisdiction.

Defendants alternatively move to dismiss under Rule 12(b)(7) on the ground that Paragon has failed to join necessary and indispensable parties, whose joinder would defeat diversity jurisdiction. Doc. 22 at 14–18. The Court should deny this motion because those parties—Clearspan and the Estate of Dan Holland—are neither necessary nor indispensable. And even if they were necessary and indispensable, adding them would not deprive the Court of jurisdiction.

### A. Standard for necessary and indispensable parties.

Joinder of parties is governed by Federal Rule of Civil Procedure 19(a)(1). Defendants have the burden of proving that Clearspan and the Estate of Dan Holland are necessary and indispensable parties. *Reilly v. Meffe*, 6 F. Supp. 3d 760, 774 (S.D. Ohio 2014). "In a Motion to Dismiss under Rule 12(b)(7), just as is the case under Rule 12(b)(6), the Court accepts [Paragon]'s allegations as true and draws all reasonable inferences in [its] favor." *See Lassiter v. City of E. Cleveland*, 1:21-CV-1228, 2021 WL 12260884, at *1 (N.D. Ohio Oct. 29, 2021).

First, the Court must determine "whether the person or entity is a necessary party under Rule 19(a)." *Tallent v. Progressive Hawaii Ins. Corp*., 3:23-CV-93-TAV-JEM, 2023 WL 11760887, at *3 (E.D. Tenn. Oct. 31, 2023) (quoting *Glancy v. Taubman Ctrs., Inc*., 373 F.3d 656, 666 (6th Cir. 2004)). Second, if the person or entity is necessary, the Court must decide whether "joinder of that person or entity will deprive the court of subject matter jurisdiction." *Id*. Third, if

joiner is not feasible because it deprives the court of subject-matter jurisdiction, the Court "must analyze the Rule 19(b) factors to determine whether the court should 'in equity and good conscience' dismiss the case because the absentee is indispensable." *Id.*

B.    *Clearspan and the Estate of Dan Holland are not necessary parties.*

For Clearspan and Dan Holland's Estate to be necessary parties, Defendants must show either: (1) in their absence, the court cannot accord complete relief among the existing parties, Fed. R. Civ. P. 19(a)(1)(A); or (2) they claim an interest relating to the subject of the action and disposing of the action in their absence may (i) as a practical matter impair or impede their ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring multiple or otherwise inconsistent obligations because of the interest, Fed. R. Civ. P. 19(a)(1)(B). *See Laethem Equip. Co. v. Deere & Co.*, 485 F. App'x 39, 44 (6th Cir. 2012). Defendants show neither.

First, Defendants fail to show that, absent Clearspan and Dan Holland's Estate, the Court could not accord complete relief among the existing parties. Fed. R. Civ. P. 19(a)(1)(A). "Complete relief is determined as between persons already parties, 'and not as between a party and the absent person whose joinder is sought.'" *Laethem Equip.*, 485 F. App'x at 44 (quoting *School Dist. of Pontiac v. Secretary of U.S. Dep't of Educ.*, 584 F.3d 253, 265 (6th Cir. 2009)). The central question Paragon's declaratory-judgment claims pose is whether one or more of the Defendants co-owns Paragon's intellectual property and trade secrets. Any interest Defendants might have is completely independent of any hypothetical interest of Clearspan or Dan Holland's Estate. Their absence thus would not preclude Defendants proving from their interest.

Second, regardless, neither Clearspan nor Dan Holland's Estate have or claim to have any interest in Paragon's intellectual property or trade secrets. Ex. 20 ¶¶ 4–5; Fed. R. Civ. P. 19(a)(1)(B). Defendants' contrary "belief" is baseless. Doc. 50 at 18. They otherwise rely merely on Mr. Grundahls' own demand letters and Defendants' own arguments. *See, e.g., id.* (merely

citing Complaint's description of Mr. Grundahl's allegations); *id.* (asserting that "Clearspan has an interest in the Developed IP at issue due to its participation in and downstream use pursuant to the planning and strategizing phases of Dan and Kirk's vision"); *id.* at 17 (contending that Dan and Mr. Grundahl had "always operated as partners."). These buzzword-laden but factually unsupported arguments are not evidence. *Med Corp.*, 296 F.3d at 414. Defendants fail to prove how participating, planning, and strategizing (whatever this means) could result in Clearspan co-owning Paragon's property. As for Dan Holland's Estate, Defendants falsely equate the Estate's 50% membership interest in *Inspired Pursuits* with an "interest" in *Paragon's* intellectual property, an entirely separate business entity. Doc. 50 at 18. This assertion is nothing but unsupported rhetoric.

Because neither Clearspan nor Dan Holland's Estate have or claim to have any interest in Paragon's intellectual property or trade secrets, they have no interests to be protected in this lawsuit. Their absence thus could not subject Defendants to future, separate litigation concerning the same subject-matter as this action. Fed R. Civ. P. 19(a)(1)(B). Because Defendants cannot show that Clearspan and Dan Holland's Estate are necessary, the Court need not address the rest of the joinder analysis. *Tallent*, 2023 WL 11760887, at *3.

C.     *Even if Clearspan and Dan Holland's Estate were necessary parties, they could be joined without defeating federal subject-matter jurisdiction.*

Even if Clearspan and Dan Holland's Estate were necessary parties, nothing prevents them from being joined in this lawsuit. Adding Clearspan and the Estate as defendants would not destroy federal diversity jurisdiction. Doc. 1 ¶ 18. Regardless, there are multiple federal questions. Doc. 1 ¶¶ 16–17. For example, Paragon's software code is copyrightable under the Copyright Act, 17 U.S.C. §§ 101, et seq., and it seeks a declaration that is it has solely authored and solely owns it. "*[E]xclusive* federal district court jurisdiction exists in an action for a declaratory judgment to

establish joint authorship of a copyrighted work." *Severe Records, LLC v. Rich*, 658 F.3d 571, 581–82 (6th Cir. 2011). Defendants do not challenge any of this.

Defendants instead say Clearspan and the Estate cannot be joined because there is no basis for asserting *personal* jurisdiction over them in Tennessee. Doc. 50 at 18. But Defendants offer no factual basis for this assertion. And they ignore the fact that, unlike federal subject-matter juris-diction, "personal jurisdiction is a waivable right." *In re Trade Partners, Inc., Inv'rs Litig.*, 627 F. Supp. 2d 772, 778 (W.D. Mich. 2008). Even if Clearspan and the Estate had no contacts with Tennessee, which Defendants have not shown, were they deemed necessary they can and would consent to this Court's exercise of personal jurisdiction over them. Ex. 19 ¶ 5; Ex. 20 ¶ 6.

**III.     There Is No Basis to Dismiss or Transfer This Action.**

*A.     There is no basis for dismissal or transfer to the Western District of Wisconsin.*

Defendants also ask this Court to dismiss or transfer this action under Rule 12(b)(3) and 28 U.S.C. § 1406(a). This request appears to be based on the same arguments for dismissal under Rule 12(b)(1) and (7)—and so fails for the same reasons stated above. Defendants seem to argue that Paragon sued in the wrong venue both because this Court lacks personal jurisdiction over Defendants and because Clearspan and Dan Holland's Estate are necessary and indispensable par-ties whose joinder would defeat federal subject-matter jurisdiction. Doc. 50 at 19–21. As explained above, the Court has personal jurisdiction—and venue—over the Defendants based on their con-tacts with Tennessee that occurred in this district. *See* 28 U.S.C. § 1391(b)(2). And as explained above, Clearspan and Dan Holland's Estate are not necessary parties, nor are they incapable of being joined in this action. There is thus no factual or legal basis to even consider transfer to the Western District of Wisconsin under 28 U.S.C. § 1406(a). Were the Court to disagree, transfer would still be the more appropriate remedy than dismissal.

B. *Were the Court to hold it lacks personal jurisdiction over a single Defendant, it should sever and transfer claims against that Defendant rather than transfer this entire action.*

Alternatively, if the Court were to hold it lacks personal jurisdiction over any *one* but not all of the Defendants, Defendants ask the Court to transfer the *entirety* of this case to the Western District of Wisconsin. Doc. 50 at 19–21. The Court should not. "If venue is proper for some defendants but improper for others, the district court has wide discretion." 14D FED. PRAC. & PROC. *Juris.* § 3827 (4th ed. 2024). Defendants overlook another procedural option that would render wholesale transfer unnecessary: The Court "may retain the case as to those defendants who have been properly sued there and sever and transfer the portion of the case for those defendants for whom venue is improper or dismiss the action as to those defendants." *Id.*; *see* Fed. R. Civ. P. 21 (power to sever); *Lea v. Vilsack*, 3:21-CV-00468, 2023 WL 1141833, at *2 (M.D. Tenn. Jan. 30, 2023); *Coleman v. Lappin*, 6:10-CV-186, 2011 WL 4586922, at *10 (E.D. Ky. Sept. 29, 2011).

Severance and transfer would better serve "the interest of justice" for three reasons. *See* 28 U.S.C § 1406(a). (Defendants cite 28 U.S.C. § 1404(a), Doc. 50 at 19, but they do not request transfer under it.) First, Paragon has had to sue multiple defendants because Mr. Grundahl's claims of ownership in Paragon's property have conflated the interests of the Qualtim, DrJ, CBI, Inspired Pursuits, Ms. Grundahl, and himself. Discovery must sort this out.

Second, as this lawsuit involves parties and witnesses located respectively in Mississippi, Wisconsin, and Tennessee, Chattanooga is the most central location. The Court may take judicial notice that Meridian, Mississippi, is about 740 airline miles from Madison, Wisconsin, while it is only about 270 miles from Chattanooga. Fed. R. Evid. 201(b).

Third, there is already a lawsuit pending in Wisconsin concerning the same subject-matter as this declaratory-judgment lawsuit. Months *after* Paragon filed this action—a chronology Defendants fail to disclose in their brief, Doc. 50 at 1—the Grundahls made Inspired Pursuits,

Qualtim, and DrJ file their own, duplicative lawsuit in Wisconsin, which raises the same matters at issue here. *See Inspired Pursuits, et al., v. Paragon Component Sys., LLC, et al.*, No. 3:24-cv-00745 (W.D. Wisc.); Ex. 18. The new, Wisconsin lawsuit is irrelevant to Defendants' motion to dismiss or transfer; the only appropriate questions here are whether it is appropriate to exercise personal jurisdiction over Defendants and whether certain parties should be joined.

But Defendants' later-filed lawsuit in Wisconsin does reveal two things: (1) Defendants' motion to dismiss or transfer in this case forms part of a strategy of blatant, impermissible forum-shopping; and (2) severing and transferring any Defendant over which the Court might lack personal jurisdiction, rather than dismissing this action wholesale, would be equitable because Defendants have already evidenced a desire to assert split-off claims in Wisconsin.

## CONCLUSION

The Defendants' intentional, systematic contacts with Tennessee through years'-long business relationships with Paragon make the Court's exercise of personal jurisdiction appropriate. The Court should deny the motion to dismiss or transfer. Alternatively, instead of dismissing or transferring, the Court should grant Paragon's separate, pending motion for jurisdictional discovery, Doc. 36, and hold an evidentiary hearing. The Court should hold that Clearspan and the Dan Holland Estate are not necessary parties. In the further alternative, the Court should prefer transfer over dismissal.

This 10th day of December 2024.

Respectfully submitted,

s/ Stephen E. Kabakoff

Stephen Kabakoff, GA Bar No. 143164,
*pro hac vice*
MILLER & MARTIN PLLC
1180 W. Peachtree Street, NW, Suite 2100
Atlanta, Georgia 30309
Telephone: (404) 962-6100
Stephen.Kabakoff@millermartin.com

s/ Robert F. Parsley

James T. Williams, TN BPR 16341
Robert F. Parsley, TN BPR 23819
Erin E. Steelman, TN BPR 38463
MILLER & MARTIN PLLC
832 Georgia Avenue, Suite 1200
Chattanooga, TN 37402-2289
Telephone: (423) 756-6600
James.Williams@millermartin.com
Bob.Parsley@millermartin.com
Erin.Steelman@millermartin.com

*Counsel for Plaintiff Paragon Component
Systems, LLC*

**CERTIFICATE OF SERVICE**

I certify that on  December 10, 2024, the foregoing Response was electronically filed and is being served on all counsel of record via the Court's electronic filing system.

s/ Robert F. Parsley

Stephen E. Kabakoff, GA Bar No. 143164,
*admitted pro hac vice*
MILLER & MARTIN PLLC
1180 W. Peachtree Street, NW, Suite 2100
Atlanta, Georgia 30309
Telephone: (404) 962-6100
Stephen.Kabakoff@millermartin.com

James T. Williams, TN BPR 16341
Robert F. Parsley, TN BPR 23819
Erin E. Steelman, TN BPR 38463
MILLER & MARTIN PLLC
832 Georgia Avenue, Suite 1200
Chattanooga, TN 37402-2289
Telephone: (423) 756-6600
James.Williams@millermartin.com
Bob.Parsley@millermartin.com
Erin.Steelman@millermartin.com

*Counsel for Plaintiff Paragon Component
Systems, LLC*