**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| PARAGON COMPONENT SYSTEMS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:24-cv-00246-CEA-CHS |
| | ) | |
| QUALTIM, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO DETERMINE WHETHER EXHIBITS TO COMPLAINT SHOULD BE UNDER SEAL

Stephen E. Kabakoff, GA Bar No. 143164,
*appearing pro hac vice*
MILLER & MARTIN PLLC
1180 W. Peachtree Street, NW
Suite 2100
Atlanta, Georgia 30309
Telephone: (404) 962-6100
Stephen.Kabakoff@millermartin.com

James T. Williams, TN BPR 16341
Robert F. Parsley, TN BPR 23819
Erin E. Steelman, TN BPR 38463
MILLER & MARTIN PLLC
832 Georgia Avenue, Suite 1200
Chattanooga, TN 37402-2289
Telephone: (423) 756-6600
James.Williams@millermartin.com
Bob.Parsley@millermartin.com
Erin.Steelman@millermartin.com

*Attorneys for Plaintiff Paragon Component Systems, LLC*

1

# TABLE OF CONTENTS

Table of Authorities ................................................................................................. iii

I.      Introduction. .......................................................................................................... 1

II.     Factual and procedural background. ...................................................................... 3

        A.      Paragon solely authored proprietary software for the truss industry, which Qualtim now claims to co-own. ................................................................. 3

        B.      The Grundahls widely circulated a memorandum and sent demand letters to Paragon          and its attorneys, which Paragon filed as exhibits to its Complaint. .. 4

                1.      Ex. A to Complaint: March 22, 2024 memorandum, Doc. 1-8. ......................... 4

                2.      Exhibit B to Complaint: Mr. Kabakoff's letter to Mr. Grundahl dated May 23, 2024, Doc. 1-9. ................................................................................ 5

                3.      Ex. C and Ex. J to Complaint: Mr. Grundahl's emails and letter to Mr. Kabakoff dated May 29, 2024, Doc. 1-10. ...................................................... 6

                4.      Ex. D to Complaint: Mr. Grundahl's letter to Mr. Kabakoff dated June 3, 2024, Doc. 1-11. ................................................................................ 6

                5.      Ex. E to Complaint: Mr. Grundahl's letter to Mr. Kabakoff dated June 4, 2024, Doc. 1-12. ................................................................................ 7

                6.      Ex. F to Complaint: Mr. Grundahl's letter to Mr. Kabakoff dated June 7, 2024, Doc. 1-13. ................................................................................ 7

                7.      Ex. G to Complaint: Mr. Grundahl's second letter to Mr. Kabakoff dated June 7, 2024, Doc. 1-14. ....................................................................... 8

                8.      Ex. H to Complaint: Mr. Grundahl's letter to Mr. Kabakoff dated June 10, 2024, Doc. 1-15. ............................................................................... 8

                9.      Ex. I to Complaint: Mr. Grundahl's letter to Mr. Kabakoff dated June 13, 2024, Doc. 1-16. ............................................................................... 9

        C.      The Court denied Defendants' motion to file certain documents under seal in support          of their motion to dismiss. ................................................. 10

        D.      Defendants sued Paragon's attorneys in Wisconsin, alleging that they committed torts by not filing Exhibits A through J to the Complaint in this action under seal.... 11

III.    This Court should determine whether Exhibits A through J to the Complaint should be under seal. ....................................................................................... 11

i

A.   Defendants have waived the right to contend that Exhibits A through J to the Complaint should be under seal. ................................................................................ 12

B.   Mr. Grundahl voluntarily disclosed the exhibits widely, thereby depriving them of any putative trade-secret status. .................................................................... 14

IV.    Conclusion. ...................................................................................................................... 17

Certificate of Service ......................................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

1:14-CV-01215-RLY-MKK,
2024 WL 1773655 (S.D. Ind. Apr. 10, 2024) ........................................................................ 17

*Am. Water Heater Co. v. Taylor Winfield Corp*.,
No. 2:16-CV-125, 2019 WL 3366984 (E.D. Tenn. July 23, 2019) .......................................... 12

*BDT Prods., Inc. v. Lexmark Int'l, Inc.*,
124 F. App'x 329 (6th Cir. 2005) ............................................................................................ 16

*Benedict v. Hankook Tire Co. Ltd*.,
323 F. Supp. 3d 747 (E.D. Va. 2018) ....................................................................................... 14

*Binney & Smith Inc. v. Rose Art Indus., Inc*.,
No. 94 C 6882, 1995 WL 110127 (N.D. Ill. Mar. 13, 1995) .................................................... 14

*BondPro Corp. v. Siemens Power Generation, Inc*.,
463 F.3d 702 (7th Cir. 2006) .................................................................................................... 16

*Brown & Williamson Tobacco Corp. v. F.T.C.*,
710 F.2d 1165 (6th Cir. 1983) .................................................................................. 11, 14, 15

*Cavender v. U.S. Xpress Enters., Inc*.,
191 F. Supp. 2d 962 (E.D. Tenn. 2002) ................................................................................... 11

*ChampionX, LLC v. Resonance Sys., Inc*.,
726 F. Supp. 3d 786 (E.D. Tenn. 2024) ................................................................................... 16

*Davis v. Colerain Twp., Ohio*,
51 F.4th 164 (6th Cir. 2022) .................................................................................................... 10

*Dirksing v. Safeco Ins. Co. of Ill*.,
544 F. Supp. 3d 767 (E.D. Ky. 2021) ...................................................................................... 11

*Fail-Safe, LLC v. A.O. Smith Corp*.,
674 F.3d 889 (7th Cir. 2012) .................................................................................................... 16

*Freedom Capital Grp. LLC v. Blue Metric Grp., LLC*,
No. 3:24-CV-00369, 2024 WL 3331641 (M.D. Tenn. July 8, 2024) ....................................... 16

*James B. Oswald Co. v. Neate*,
98 F.4th 666 (6th Cir. 2024) .................................................................................................... 16

iii

*Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*,
    611 F. Supp. 2d 572 (E.D. Va. 2009) ...................................................................... 14

*Nat'l Polymer Prods., Inc. v. Borg-Warner Corp.*,
    641 F.2d 418 (6th Cir. 1981) ................................................................................... 13

*Neogen Corp. v. Innovative Reprod. Tech., LLC*,
    No. 419CV00330RGESHL, 2022 WL 1518924 (S.D. Iowa Jan. 14, 2022) ........................ 14

*Rajapakse v. Baker Donelson Bearman Caldwell & Berkowitz, P.C.*,
    No. 13-2328, 2013 WL 3992523 & n.2 (W.D. Tenn. Aug. 5, 2013) ................................. 11, 12

*Religious Tech. Ctr. v. Lerma*,
    908 F. Supp. 1362 (E.D. Va. 1995) ......................................................................... 14

*Ruckelshaus v. Monsanto Co.*,
    467 U.S. 986 (1984) ............................................................................................... 16

*Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*,
    834 F.3d 589 (6th Cir. 2016) ................................................................................... 14

*TGC Corp. v. HTM Sports, B.V.*,
    896 F. Supp. 751 (E.D. Tenn. 1995) ....................................................................... 16

*TJGEM LLC v. Republic of Ghana*,
    26 F. Supp. 3d 1 (D.D.C. 2013) ............................................................................... 14

*Unarco Material Handling, Inc. v. Liberato*,
    317 S.W.3d 227 (Tenn. Ct. App. 2010) .................................................................... 12

**Statutes**

18 U.S.C. § 1839(3) .................................................................................................. 16

Tenn. Code Ann. § 47-25-1702 .................................................................................. 16

Wis. Stat. § 134.90(c) ............................................................................................... 16

**Court Rules**

Fed. R. Civ. P. 11 ...................................................................................................... 11

Fed. R. Civ. P 26(c) .................................................................................................... 1

Fed. R. Civ. P. 37 ...................................................................................................... 11

Fed. R. Evid. 201 ...................................................................................................... 10

LR7 ...................................................................................................................... 1

LR26 .................................................................................................................... 1

LR83 .................................................................................................................. 11

## Other Authorities

*Disclosure of trade secret as abandonment of secrecy*,
   92 A.L.R.3d 138 .......................................................................................... 16

Under Federal Rule of Civil Procedure 26(c), LR7.1, LR26.2(b), and this Court's Order, Doc. 5, Plaintiff Paragon Component Systems, LLC ("Paragon") respectfully moves the Court to decide whether Exhibits A through J to the Complaint filed in this action, Documents 1-8 through 1-17, should be under seal.

## I.    Introduction.

Paragon spent eight years and millions of dollars solely authoring code for software applications for the truss industry. Defendants Kirk Grundahl and Suzanne Grundahl operate engineering companies, some of which provided engineering-related consulting services to Paragon. In early 2024, as Paragon was rolling out its applications more fully, the Grundahls began contending that they or their companies co-own all of Paragon's intellectual property, including its software code. They suggested that they supposedly helped author the code. Ms. Grundahl widely circulated to all Paragon employees and others a memorandum setting forth such contentions. Paragon's attorneys, Miller & Martin PLLC, wrote to Mr. Grundahl, disagreeing. Subsequently, Mr. Grundahl emailed numerous emails letters to Paragon's attorneys, taking shifting positions, and demanding that Paragon hand over its intellectual property to him. Paragon's attorneys responded, again disagreeing on every point. These communications took place from January to June 2024.

About a month after Mr. Grundahl stopped communicating with Paragon's attorneys, Paragon—seeking clarity—filed this declaratory-judgment action, in July 2024. Attached as exhibits to its Complaint are copies of the memorandum and correspondence from Mr. Grundahl. These exhibits are essential to the Complaint because they generated the dispute that is the focus of and basis for this declaratory-judgment action. The exhibits set forth the Grundahls' oft-shifting contentions about why, in their view, their companies co-own Paragon's intellectual property. Although the exhibits are labeled "trade secret" and "confidential," the Grundahls had widely

1

circulated documents to persons, including Paragon's attorneys, who had no duty to keep them confidential. As of the date of this filing, it has been 217 days, or seven months, since Paragon field the exhibits in open court. And to this day, Defendants have never asked this Court to place those exhibits under seal. Defendants did not request this even though they moved (unsuccessfully) to file other documents under seal. *See* Doc. 29; Doc. 45.

Notwithstanding, on January 31, 2025, Defendants filed a federal lawsuit against Paragon's attorneys in Wisconsin, alleging that Paragon's attorneys in this action have misappropriated trade secrets by filing the exhibits to the Complaint in this action in open court. *See Qualtim, Inc. v. Miller & Martin PLLC, et al*., Case No. 25-CV-73, U.S. Dist. Ct. for W. Dist. Wisc.; Compl., Doc. 65-3. Only this Court, however, has the jurisdiction and authority to decide whether documents filed on its docket should, or should not be, under seal. So, Paragon has moved this Court to decide this question.[1]

The Court should hold that the exhibits do not meet the definition of a trade secret (they weren't in the first place) or otherwise deserve to be sealed because Defendants have waived any such classification and protection: After learning of the exhibits' public filing, they never—much less promptly—have asked this Court to place the exhibits under seal.

Otherwise, it is Defendants' burden—not Paragon's or its attorneys'—to show that the exhibits meet the high standards for filing under seal. Judicial records, such as the exhibits to the Complaint, are presumptively open to the public. Only the highest showing of need will justify sealing them.

Paragon believes Defendants cannot meet their heavy burden. At a minimum, by circulating the exhibits widely to persons having no duty to keep them confidential, Defendants

---

[1] As discussed below, Defendants have also filed a separate lawsuit in Wisconsin against Paragon, its owner, its employees, and others, addressing the same issues raised by Paragon's Complaint in this action.

2

cannot show that they have taken reasonable measures to keep the information secret. Having not done so, they cannot contend that the information meets the definition of a trade secret or otherwise deserves protection.

The Court should hold a hearing, including receiving evidence as necessary, and decide whether the exhibits to the Complaint should be under seal. It should hold that they do not meet the high standard for such protection.

## II. Factual and procedural background.

### A. *Paragon solely authored proprietary software for the truss industry, which Qualtim now claims to co-own.*

As alleged in the Complaint, and as stated in the previously filed Declaration of John Holland, Doc. 51-1, Paragon spent eight years and millions of dollars solely authoring software code and proprietary software applications for use in the truss industry. Doc. 1 ¶¶ 1–5, 21–28; Doc. 51-1 ¶¶ 2–10. Paragon received and paid for engineering-related consulting services from Defendants Qualtim, Inc., Center for Building Innovation, LLC, DrJ Engineering, LLC, Kirk Grundahl, and Suzanne Grundahl (together, "Qualtim"). Doc. 1 ¶¶ 10–15, 29–37; Doc. 51-1 ¶¶ 11–16. These services did not involve authoring any software code. Doc. 1 ¶¶ 27, 34, 37, 62, 64–67; Doc. 51-1 ¶¶ 8, 24.

Just as Paragon was preparing to roll out its products more fully, in January 2024, John Holland's father, Dan Holland, unexpectedly died. Doc. 1 ¶ 6, 21–23; Doc. 51-1 ¶ 20. Within days of the funeral, the Grundahls began asserting that they, or Qualtim, or a company called Inspired Pursuits, LLC (of which they were members, along with Dan Holland) co-owned *Paragon's* software code and other intellectual property, on the ground that Qualtim supposedly helped author Paragon's code through their engineering-related consulting services. Doc. 1 ¶¶ 1, 38–53; Doc. 51-1 ¶¶ 21–23.

3

B. *The Grundahls widely circulated a memorandum and sent demand letters to Paragon and its attorneys, which Paragon filed as exhibits to its Complaint.*

1. **Ex. A to Complaint: March 22, 2024 memorandum, Doc. 1-8**.

On March 25, 2024, Suzanne Grundahl emailed a memorandum (dated March 22, 2024) to various persons. Doc. 1-8 (memo); Ex. 1 (email string).[2] Recipients included Ryan Dexter of DrJ Engineering, Keith Hershey of Qualtim, and "Ops" (ops@qualtim.com), John Holland, Paragon employee Matt Van Stelle, Paragon employee Seth Duncan, and "Truss Pal Sales Support" (salessupport@trusspal.com). Ex. 1 at 1.

As shown in Exhibit 1, Ms. Grundahl's email dated March 25, 2024, was sent to, among other recipients, the email address salessupport@trusspal.com. *See* John Holland Decl. (attached) ¶¶ 2–3; Ex. 1 at 1. The email address salessupport@trusspal.com is owned and operated by Paragon and is designed to receive service-related inquiries from customers using Paragon's Truss Pal software applications. Holland Decl. ¶¶ 2–3. Emails sent to this address are routed to persons who help address customer questions and concerns. *Id*. The address salessupport@trusspal.com automatically directs emails and attachments to a collaborative Slack channel that every employee of Paragon and every independently contracting individual who provides customer support for Paragon can access. Thus, when Ms. Grundahl sent her email and attachment on March 25, 2024, all such persons had unfettered access to the email and attachment. *Id*.

By sending the March 22, 2024, memorandum to this Paragon email alias, Ms. Grundahl's email and attached copy of the memorandum were thus readily accessible to every employee of Paragon and any independently contracting individual providing customer support for Paragon. Holland Decl. ¶ 3. Only Paragon can know the scope of such persons at any particular time. *Id*.

---

[2] Submitted provisionally under seal.

4

When Ms. Grundahl sent her March 25, 2024, email with the memorandum, she could not have known the full extent of persons who would receive or have access to that information. *Id.*

On April 1, 2024, Ms. Grundahl forwarded the email string and information to sethd@trusspal.com, an email address for Paragon employee Seth Duncan, and to James Holland and Rob Eason, principals of the Mississippi corporation Clearspan, Inc. Ex. 1 at [x]. This email recounts that Ms. Grundahl had orally discussed the substance of the March 22, 2024, memorandum with these persons, and her email reiterates the memorandum's content. *Id.*

The March 22, 2024, memorandum itself takes an adversarial position, setting out the Grundahls' contention that Qualtim co-owns Paragon's intellectual property. Doc. 1-8. Among other things, the memorandum contends that: (1) Paragon's software contains trade secrets from Qualtim trasmitted through its engineering-related consulting work; and (2) Qualtim thus supposedly has an ownership interest in Paragon's software, software applications, and all other intellectual property. *See id*. The memorandum is labeled "confidential" and "trade secrets." *Id*. But it focuses on stating why the Grundahls think Qualtim co-owns Paragon's intellectual property without specifically disclosing the alleged underlying "trade secrets" themselves, which are said to comprise engineering calculations and advice. *Id.*

2. **Exhibit B to Complaint: Mr. Kabakoff's letter to Mr. Grundahl dated May 23, 2024, Doc. 1-9**.

In response, Stephen Kabakoff of Miller & Martin PLLC, Paragon's counsel, emailed a May 23, 2024, letter to Mr. Grundahl via his assistant, Deloris Lanus. Doc. 1-9. It explains that Paragon and its counsel had studied the March 22, 2024, memorandum and that Paragon disagrees with the statements and positions set forth in the memorandum. The letter focuses on, cites, and quotes from the memorandum. *Id*. It disputes that Qualtim provided trade secrets or confidential information for inclusion in Paragon's software. "Paragon will rigorously defend its ownership rights in and to the Paragon Truss Software." Doc. 1-9 at 6.

5

### 3. Ex. C and Ex. J to Complaint: Mr. Grundahl's emails and letter to Mr. Kabakoff dated May 29, 2024, Doc. 1-10.

On May 29, 2024, Mr. Grundahl himself—rather than his attorney—emailed a reply letter to Mr. Kabakoff and his secretary, Deloris Lanus. Doc. 1-10 (letter); Doc. 1-17 (email string); Kabakoff Decl. (attached) ¶ 2. Copied on the email were Ms. Grundahl, Keith Hershey, and Jill Zimmerman of Qualtim. *Id.* Mr. Grundahl's letter, on Qualtim letterhead, is adversarial and contends at length that Qualtim or Inspired Pursuits, LLC co-owns all of Paragon's intellectual property, including its software code. Doc. 1-10. Mr. Grundahl's cover email threatens litigation: "Please direct Paragon to preserve all video and audio recordings (i.e. google meet, etc.) and all email of all interactions with Qualtim, DrJ, CBI and Inspired Pursuits, LLC (IP-LLC) that they have, as deleting anything at this point despoils direct evidence." Kabakoff Decl. ¶ 2. Although the letter is labeled "confidential" and "trade secrets," it references no duty by Miller & Martin or its attorneys or staff to keep the letter or the March 22, 2024, memorandum confidential. Doc. 1-10. Nor does the letter or email voice any objection to Mr. Kabakoff's, Ms. Lanus's, or Miller & Martin's receipt, review, or use of the memorandum. *Id.* The letter demands a full response within about 24 hours. *Id.* at 20–22.

### 4. Ex. D to Complaint: Mr. Grundahl's letter to Mr. Kabakoff dated June 3, 2024, Doc. 1-11.

On May 29, 2024, Mr. Kabakoff emailed Mr. Grundahl, stating that he shared the new letter with Paragon and asking for more time to respond. *See* Ex. 2 (emails).[3] In response, Mr. Grundahl stated that the "March 22, 2024 memorandum that you mention in your May 23, 2024 letter was focused on violations of engineering law by Paragon, the Truss Pal website and the business and engineering concepts that DrJ Engineering and Truss Pal had to be implementing to be in compliance with professional engineering law." Ex. 2 at 7–8.

---

[3] Submitted provisionally under seal.

6

On June 3, 2024, without awaiting a response to his prior letter, Mr. Grundahl emailed Mr. Kabakoff and Ms. Lanus another letter on Qualtim letterhead, dated June 3, 2024. Doc. 1-11. It reiterates contentions about co-owning Paragon's intellectual property. It too is adversarial, alluding to "[a]ctions to be taken by an Officer of the Court," Doc. 1-11 at 3, and conveys the hope that Paragon will agree that its intellectual property is co-owned by Qualtim and will stop disputing that position, *id*. at 5. Although the letter is labeled "confidential" and "trade secrets," it once again references no duty by Miller & Martin or its attorneys or staff to keep the letter or the March 22, 2024 memorandum confidential. Doc. 1-10. This new letter from Mr. Grundahl demands that Paragon respond within 24 hours. *Id*. at 3.

**5.**     **Ex. E to Complaint: Mr. Grundahl's letter to Mr. Kabakoff dated June 4, 2024, Doc. 1-12**.

On June 3, 2024, Mr. Kabakoff emailed Mr. Grundahl, asking for more than 24 hours in which to respond to Mr. Grundahl's new contentions and seeking some clarifications. *See* Doc. 1-12 at 1. Mr. Grundahl responded by emailing Mr. Kabakoff and Ms. Lanus yet another letter, on Qualtim letterhead, dated June 4, 2024. Doc. 1-12. Shifting ground, the letter proposed "stipulations" about why, in Mr. Grundahl's view, Qualtim or Inspired Pursuits, LLC co-owns Paragon's intellectual property. *Id*. The letter contends that "no further action" need be taken because these "stipulations" supposedly show conclusively that the Qualtim parties or Inspired Pursuits, LLC, or some combination of them, co-owns Paragon's intellectual property. *Id*. at 2. Like previous letters, this one is labeled "confidential" and "trade secrets," yet it also does not reference any duty by Miller & Martin or its attorneys or staff to keep it confidential. Doc. 1-12.

**6.**     **Ex. F to Complaint: Mr. Grundahl's letter to Mr. Kabakoff dated June 7, 2024, Doc. 1-13**.

On June 4, 2024, Mr. Kabakoff emailed Mr. Grundahl, seeking clarification of his prior letter and stating Paragon disagreed with all his "stipulations." *See* Doc. 1-13 at 1. Mr. Grundahl

7

responded on June 7 with another letter on Qualtim letterhead. It reiterates Mr. Grundahl's position about co-owning Paragon's intellectual property. Doc. 1-13. It is labeled "confidential" and "trade secrets" but references no duty by recipients to keep it confidential or secret. *Id*.

7. **Ex. G to Complaint: Mr. Grundahl's second letter to Mr. Kabakoff dated June 7, 2024, Doc. 1-14.**

On June 7, 2024, Mr. Grundahl emailed Mr. Kabakoff and Ms. Lanus a second adversarial letter dated June 7, this time on Inspired Pursuits, LLC letterhead. Doc. 1-14. Mr. Grundahl now contended that Inspired Pursuits, LLC co-owns Paragon's intellectual property. *Id*. His letter demanded that Paragon stop promoting its software applications to the truss industry. *Id.* The letter, like others before it, is labeled "confidential" and "trade secrets" without referencing any duty by recipients to keep it confidential or secret. *Id*.

8. **Ex. H to Complaint: Mr. Grundahl's letter to Mr. Kabakoff dated June 10, 2024, Doc. 1-15**.

On June 10, 2024, before Mr. Kabakoff had time to respond, Mr. Grundahl emailed him and Ms. Lanus a substantially revised version of Mr. Grundahl's letter dated June 7, 2024, on Inspired Pursuits, LLC letterhead. Doc. 1-15. The letter demands a response by the next day, June 11. *Id*. at 5. It is labeled "confidential" and "trade secrets," as before, without referencing any duty by recipients to keep it confidential or secret. Doc. 1-15. In it, Mr. Grundahl now contended that Inspired Pursuits, LLC should be in charge of Paragon's business, and Paragon should "stay in its lane" and provide support. *Id*. at 5. Mr. Grundahl suggests he was being defamed by Paragon. *Id*. And he threatened, were his demands not met, not just to take legal action, but to take *other* unspecified actions designed to undermine Paragon's standing in the truss industry:

> Given all this, if I have to hire legal counsel on behalf of IP-LLC, please know that this will be a very bad day for [Clearspan Components, Inc.], Paragon, Dan's family and your client individually [John Holland] as nothing good can come from this occurrence for your client, who is directly responsible for everything that has taken place since prior to and post your May 23, 2024 letter. In addition, all the facts surrounding every negative action taken by your client, with direct evidence

substantiation, at the time of your choosing, will be transparently known to everyone ever associated with your client, now, and into the future.

Doc. 1-15 at 5.[4]

**9.** **Ex. I to Complaint: Mr. Grundahl's letter to Mr. Kabakoff dated June 13, 2024, Doc. 1-16**.

On June 11, 2024, Mr. Kabakoff responded by email to Mr. Grundahl's latest correspondence, disagreeing with some contentions and seeking further clarity about Mr. Grundahl's ever-shifting positions. Doc. 1-16 at 1. So, on June 13, 2024, Mr. Grundahl emailed Mr. Kabakoff and Ms. Lanus another letter on Inspired Pursuits, LLC letterhead. Doc. 1-16. In it, Mr. Grundahl reiterates his "stipulations" about co-owning Paragon's intellectual property. *Id*. at 2. He demands that Paragon agree with them. *Id*. at 2–5. He characterizes the relationship as "adversarial." *Id*. at 5. And he reiterates his threats. *Id*. at 4–5. The letter is labeled "confidential" and "trade secrets," as was typical for Mr. Grundahl, without referencing any duty by recipients to keep it confidential or secret. Doc. 1-16.

Over a month after Mr. Grundahl had stopped communicating with Mr. Kabakoff, Paragon filed this declaratory-judgment action. Doc. 1; Kabakoff Decl. ¶ 5. The exhibits to Paragon's declaratory-judgment Complaint, described above, Doc. 1-8 – Doc. 1-17, contain Qualtim's and the Grundahls' contentions and demands that form the basis for this dispute. Those communications are thus essential to Paragon's declaratory-judgment counts, and those counts cannot be understood without reference to the communications. *See generally* Doc. 1.

---

[4] As indicated in Paragon's proposed supplemental complaint, Mr. Grundahl has already followed through on these threats. *See* Doc. 53-1. In fall 2024, on behalf of himself and Qualtim, Mr. Grundahl posted articles he wrote on Qualtim's website and sent emails disparaging Paragon and John Holland widely to participants in the United States truss industry. *Id*.

9

C. *The Court denied Defendants' motion to file certain documents under seal in support of their motion to dismiss.*

Defendants moved to dismiss or transfer this action, mainly based on personal-jurisdiction grounds. Doc. 21. In support of that motion, Defendants filed some redacted documents publicly and, later, moved to file unredacted versions of these and other documents under seal. *See* Doc. 29-1 – Doc. 29-15; Doc. 30; Doc. 41. Significantly, the Defendants' motion to seal did not target *any* of the *exhibits to the Complaint,* Doc. 1-8 – Doc. 1-17.

Paragon opposed the Defendants' motion to seal, contending that Defendants failed to meet their heavy burden of proving that the information meets the standards for filing under seal. Doc. 38; *see* Doc. 5 (order on sealing). On November 13, 2024, the Court held an in-person hearing on Defendants' motion to file their exhibits under seal. Doc. 39; Doc. 43. Finding that none of Defendants' proposed exhibits met the high standard for filing under seal, the Court denied the motion. Doc. 45. With the Court's permission, the Defendants refiled their motion to dismiss without relying on any of the redacted or sealed exhibits. Doc. 49; Doc. 50. The motion to dismiss has been fully briefed and remains pending.[5]

---

[5] On October 24, 2024, Defendants filed a duplicative lawsuit in Wisconsin against Paragon, John Holland, numerous Paragon employees, and others, asserting various claims, including claims that depend on the contention that the Grundahls and their companies co-own Paragon's software code (by allegedly helping co-author it)—allegations central to this declaratory-judgment action. *See* Doc. 1, *Inspired Pursuits, LLC, et al., v. Paragon Component Systems, LLC, et al*., U.S Dist. Ct. for W. Dist. Wisc., Case No. 3:24-cv-745. The Court may take judicial notice of those filings. *See* Fed. R. Evid. 201; *Davis v. Colerain Twp., Ohio*, 51 F.4th 164, 176 (6th Cir. 2022). The plaintiffs in that case (the Defendants here) repleaded multiple times to try to show diversity jurisdiction, but ultimately moved to voluntarily dismiss the action, representing to the Wisconsin district court that "[t]he Plaintiffs will file for appropriate relief at the U.S. Eastern District Court of Tennessee in relation to case number 1:24-CV-00246-CEA-CHS." Doc. 15 at 1, U.S Dist. Ct. for W. Dist. Wisc., Case No. 3:24-cv-745. But rather than re-file those claims here, as they represented they would, they filed a complaint against John Holland, Paragon, its employees, etc., in Wisconsin state court, raising issues that are central to Paragon's declaratory-judgment claims. *See* Doc. 59-1. That action has been removed under the Copyright Act to the United States District Court for the Western District of Wisconsin, Case No. 3:25-cv-00075, where it remains pending.

10

D. *Defendants sued Paragon's attorneys in Wisconsin, alleging that they committed torts by not filing Exhibits A through J to the Complaint in this action under seal.*

Even though Exhibits A through J to Paragon's declaratory-judgment complaint, Doc. 1-8 – Doc. 1-17, have been in the public record since July 23, 2024—seven months ago, at the time of this filing—Defendants have never moved this Court to place them under seal.

On January 31, 2025, the Defendants in this lawsuit—Qualtim, DrJ Engineering, Inspired Pursuits, Center for Building Innovation, and the Grundahls—filed a lawsuit in federal district court in Wisconsin against Paragon's attorneys in this action: the Miller & Martin law firm, Stephen Kabakoff, James Williams, and Robert Parsley. *See* Doc. 65-3. In that Wisconsin lawsuit, the Qualtim parties contend that Paragon's attorneys have misappropriated Qualtim's trade secrets, in violation of the federal Defend Trade Secrets Act and the Wisconsin Uniform Trade Secrets Act, by filing the Exhibits A through J to the Complaint in *this* action. *Id*. at 7–10.

## III. This Court should determine whether Exhibits A through J to the Complaint should be under seal.

Only this Court—and no other tribunal in the world—has the authority to decide whether Paragon's attorneys erred by not filing Exhibits A through J to the Complaint under seal in this action. A "court has supervisory power over its own records and files." *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1177 (6th Cir. 1983). Based on its inherent authority and court rules and statutes, this Court has disciplinary authority over the attorneys that practice before it. *See* Fed. R. Civ. P. 11, 37; LR83.2 – LR83.7; *Dirksing v. Safeco Ins. Co. of Ill.*, 544 F. Supp. 3d 767, 770 (E.D. Ky. 2021); *Cavender v. U.S. Xpress Enters., Inc.*, 191 F. Supp. 2d 962, 965 (E.D. Tenn. 2002). And a party to a lawsuit may not properly file a separate, second lawsuit against opposing counsel in the first lawsuit based on their conduct in the first lawsuit. That is prohibited by the doctrine of litigation immunity or litigation privilege. *See, e.g., Rajapakse v. Baker Donelson Bearman Caldwell & Berkowitz, P.C.*, No. 13-2328, 2013 WL 3992523, at *10 & n.2

11

(W.D. Tenn. Aug. 5, 2013) (citing *Unarco Material Handling, Inc. v. Liberato*, 317 S.W.3d 227, 238 (Tenn. Ct. App. 2010)).[6] Were this not how it works, attorneys would be disincentivized from representing their clients zealously in litigation for fear of being sued individually; an opposing party could sue, or threaten to sue, the opposing lawyers for damages in a second lawsuit based on their conduct as attorneys representing an opposing party in the first lawsuit. This is why the litigation immunity or privilege exists.

Defendants may not properly circumvent this Court's authority by seeking a remedy in a Wisconsin federal lawsuit for the public filing of the exhibits to the Complaint in *this* action. Defendants' filing of their Wisconsin lawsuit against Paragon's counsel in this case brings to a head the need for *this* Court to determine whether the exhibits to the Complaint in *this* action should be under seal. For the reasons explained below, they do not deserve to be under seal.

      A.    *Defendants have waived the right to contend that Exhibits A through J to the Complaint should be under seal.*

Even assuming that Exhibits A through J contain nothing but trade secrets, and also assuming that Paragon and its counsel owed Defendants a duty not to disclose them—neither of which is true—Defendants have long since waived any right to contend that Paragon or its counsel have breached such a duty. The burden of proving waiver falls on the party asserting it, here Paragon. *Cf. Am. Water Heater Co. v. Taylor Winfield Corp.*, No. 2:16-CV-125, 2019 WL 3366984, at *5 (E.D. Tenn. July 23, 2019).

---

[6] "This privilege protects an attorney and immunizes him from suit when the following factors are present: (1) the attorney was acting in the capacity of counsel for a client or identifiable prospective client when the conduct occurred, (2) the attorney was acting in good faith for the benefit of and on behalf of the client or prospective client, not for the attorney's self-interest, (3) the conduct was related to the subject matter of active litigation or proposed litigation that was under serious consideration by the attorney, and (4) there was a real nexus between the attorney's conduct and that litigation." *Rajapakse*, 2013 WL 3992523, at *10 (citing *Unarco*, 317 S.W.3d at 238). Filing a complaint epitomizes these factors.

Defendants have waived any right to contend that Exhibits A through J should have been filed under seal: Despite the passage of seven months since the exhibits were filed in open court, Defendants have taken no action to seal the documents.

Judicial proceedings and the filing of documents with a court are quintessentially public events. *See* Doc. 5 at 1–2. This Court's analysis thus "begin[s] with the well-established principle of American jurisprudence that the release of information in open trial is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its further use." *Nat'l Polymer Prods., Inc. v. Borg-Warner Corp*., 641 F.2d 418, 421 (6th Cir. 1981). If Defendants truly believe that Exhibits A through J to the Complaint should have been filed under seal, they could and should have immediately, upon receiving notice of this action, moved this Court to place them under seal, *see* Doc. 5. To this day, they still have not done so.

Not only that, but Defendants themselves, for example, in support of their re-filed motion to dismiss, filed in open court a putatively trade-secret business plan that they had earlier contended, in the context of their prior motion to seal, is a trade secret that should have been filed under seal—and which is also in Exhibit C to the Complaint. *See* Doc. 54-23; *compare id. with* Doc. 1-10 at 11 *and* Doc. 29 (proposed Ex. 12, submitted under seal).

Moreover, months after Paragon filed the exhibits to its Complaint, in October 2024 Mr. Grundahl himself, via emails he distributed widely to the truss industry and internet postings to the whole world on Qualtim's website, not only drew public attention to the Complaint and its exhibits, but also willingly published in his postings and emails the same kind of information that is contained in Exhibits A through J to the Complaint, which he contends in the Wisconsin lawsuit comprise trade secrets. *See* Docs. 53-1 – 53-5. It appears that Defendants have deferred moving to

seal the exhibits in this Court so that they can generate alleged "damages" for the Wisconsin lawsuit against Paragon's attorneys. Such inconsistency is yet further evidence of waiver.

The Court should conclude that any rights to trade-secret confidentiality that Defendants may have had (they really never had any) in Exhibits A through J to the Complaint has long been extinguished due to their knowing and voluntary failure, for over half a year, to take any action to remedy the exhibits' supposedly improper disclosure. *See, e.g.*, *Neogen Corp. v. Innovative Reprod. Tech., LLC*, No. 419CV00330RGESHL, 2022 WL 1518924, at *2 (S.D. Iowa Jan. 14, 2022) (waiver by allowing information filed with ECF to remain public); *Benedict v. Hankook Tire Co. Ltd*., 323 F. Supp. 3d 747, 756–57 (E.D. Va. 2018) (similar); *TJGEM LLC v. Republic of Ghana*, 26 F. Supp. 3d 1, 12 (D.D.C. 2013) (similar); *Level 3 Commc'ns, LLC v. Limelight Networks, Inc*., 611 F. Supp. 2d 572, 583–84 (E.D. Va. 2009) (similar); *Binney & Smith Inc. v. Rose Art Indus., Inc*., No. 94 C 6882, 1995 WL 110127, at *3 (N.D. Ill. Mar. 13, 1995) (similar); *Religious Tech. Ctr. v. Lerma*, 908 F. Supp. 1362, 1368 (E.D. Va. 1995) (similar). It follows that the documents fail to meet the definition of a trade secret because reasonable efforts to protect them have not been made. *See infra*.

  B.  *Mr. Grundahl voluntarily disclosed the exhibits widely, thereby depriving them of any putative trade-secret status.*

The party seeking to place a document under seal—here, presumably, the Defendants— bears a heavy burden. Doc. 5 at 2–3. Courts and the public have strong interest in the openness of judicial records. *Id*. at 1–2. "[O]nly the most compelling reasons can justify non-disclosure of judicial records." *Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co*., 834 F.3d 589, 595 (6th Cir. 2016); *see Brown & Williamson*, 710 F.2d at 1178–79. There are good reasons for this.

First, "public trials play an important role as outlets for community concern, hostility and emotions. When judicial decisions are known to be just and when the legal system is moving to

vindicate societal wrongs, members of the community are less likely to act as self−appointed law enforcers or vigilantes." *Id*. at 2 (quoting *Brown & Williamson*, 710 F.2d at 1178).

Second, "public access provides a check on the courts. Judges know that they will continue to be held responsible by the public for their rulings. Without access to the proceedings, the public cannot analyze and critique the reasoning of the court." *Id*. at 2–3 (quoting *Brown & Williamson*, 710 F.2d at 1178). "[O]ne of the ways we minimize judicial error and misconduct is through public scrutiny and discussion." *Id*. (quoting *Brown & Williamson*, 710 F.2d at 1178).

Third, "open trials promote true and accurate fact finding." *Id*. at 2. "[S]ecrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption." *Id*. (quoting *Brown & Williamson*, 710 F.2d at 1179). The public "is entitled to assess for itself the merits of judicial decisions." *Id*. Thus, "[t]he public has an interest in ascertaining what evidence and records the District Court and this Court have relied upon in reaching our decisions." *Id*. (quoting *Brown & Williamson*, 710 F.2d at 1179).

Exhibits A through J to the Complaint are judicial records because they are central to Paragon's declaratory-judgment claims, regardless of whether they were filed—and they have been filed. Because it is not Paragon's burden to prove that the exhibits deserve to be under seal, *see* Doc. 5 at 4, it need not provide further argument here.

Nonetheless, Paragon makes the following point, which should—even in the absence of waiver—conclusively show that the exhibits to the Complaint do *not* deserve to be sealed. Defendants have contended that the exhibits contain trade secrets. Under any law that could possibly apply here, which for present purposes are the same, Defendants cannot show that Exhibits A through J contain trade secrets. "[T]o qualify as a 'trade secret' under the [Tennessee Uniform Trade Secrets Act], the information must: (1) derive independent economic value from not being generally known to persons who can obtain economic value from its disclosure or use,

15

and (2) must be the subject of *efforts that are reasonable under the circumstances* to maintain its secrecy." *ChampionX, LLC v. Resonance Sys., Inc.*, 726 F. Supp. 3d 786, 804–05 (E.D. Tenn. 2024) (citing Tenn. Code Ann. § 47-25-1702) (emphasis added); *accord* 18 U.S.C. § 1839(3); Wis. Stat. § 134.90(c). "An element of secrecy is of the very essence of a trade secret. Where a trade secret is so disclosed that the requisite element of secrecy is destroyed, the trade secret loses its protected status." Donald M. Zupanec, *Disclosure of trade secret as abandonment of secrecy*, 92 A.L.R.3d 138 § 3[a] (1979 & Supp.). In other words, information that is not *kept* secret does not and cannot meet the *definition* of a trade secret.

Determining whether documents or information qualify as trade secrets is a fact-intensive analysis decided by the preponderance of the evidence. *See James B. Oswald Co. v. Neate*, 98 F.4th 666, 675 (6th Cir. 2024).

It is well-established that the voluntary self-disclosure of a putative trade secret without taking precautions to ensure recipients must maintain its secrecy results in the information no longer meeting the definition of a trade secret. "[O]nce a trade secret is disclosed to 'others who are under no obligation to protect the confidentiality of the information, or [the information is] otherwise publicly disclose[d] ..., [the] property right is extinguished.'" *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 124 F. App'x 329, 333 (6th Cir. 2005) (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984)); *see, e.g., Fail-Safe, LLC v. A.O. Smith Corp.*, 674 F.3d 889, 891–92 (7th Cir. 2012); *Freedom Capital Grp. LLC v. Blue Metric Grp., LLC*, No. 3:24-CV-00369, 2024 WL 3331641, at *9 (M.D. Tenn. July 8, 2024); *TGC Corp. v. HTM Sports, B.V.*, 896 F. Supp. 751, 760–61 (E.D. Tenn. 1995). "A trade secret that becomes public knowledge is no longer a trade secret." *BondPro Corp. v. Siemens Power Generation, Inc.*, 463 F.3d 702, 706 (7th Cir. 2006).

Defendants' alleged trade secrets in Exhibits A through J to the Complaint forever lost their trade-secret status (if they ever had it) when: (1) Ms. Grundahl emailed the March 22, 2024

16

memorandum to John Holland, Rob Eason, James Holland, every employee and customer-service independent contractor of Paragon, and others; (2) Mr. Grundahl sent his adversarial emails and letters, which included substantive discussion of the content of the March 22, 2024 memorandum, to Paragon's attorney, Mr. Kabakoff, and his assistant Ms. Lanus; (3) Defendants filed in open court the Inspired Pursuits "business model," Doc. 54-23; and (4) Mr. Grundahl sent emails and public web postings throughout the truss industry addressing the substance of the exhibits, *supra* at 4–10. Moreover, the Court has already held that some of the same or substantially similar information does not meet the standard for sealing. Doc. 45; *see* Doc. 29 – 29-15.

That some or all of these documents were labeled "confidential" or "trade secret" makes no difference. "Protecting trade secrets is of paramount importance, but information merely being labeled a trade secret does not form a sufficient basis for barring disclosure of the requested information." *United States ex rel. Fischer v. Cmty. Health Network, Inc.*, No. 1:14-CV-01215-RLY-MKK, 2024 WL 1773655, at *8 (S.D. Ind. Apr. 10, 2024). Because the exhibits were circulated widely and sent to Paragon's attorneys, they had no reason to take the confidential or trade-secret label as an indicator that the communications themselves were in fact trade secrets. A reasonable person claiming trade-secret protection would not have published them this way.

## IV.     Conclusion.

The Court should determine whether the exhibits to the Complaint, Doc. 1-8 through Doc. 1-17, should be under seal. The Court should hold they do not deserve to be sealed because Defendants have waived the right to treat them as trade secrets, and so the documents no longer meet the definition of trade secrets (if they ever did). Otherwise, the Court should conclude that Defendants cannot meet their burden of proving that the exhibits fall under the definition of a trade secret or otherwise satisfying the standard for placing judicial documents under seal.

The Court should, if it deems it appropriate, hold an evidentiary hearing.

17

Respectfully submitted this 26th day of February 2024.

s/ James T. Williams

Stephen E. Kabakoff, GA Bar No. 143164,
*appearing pro hac vice*
MILLER & MARTIN PLLC
1180 W. Peachtree Street, NW
Suite 2100
Atlanta, Georgia 30309
Telephone: (404) 962-6100
Stephen.Kabakoff@millermartin.com

s/ Robert F. Parsley

James T. Williams, TN BPR 16341
Robert F. Parsley, TN BPR 23819
Erin E. Steelman, TN BPR 38463
MILLER & MARTIN PLLC
832 Georgia Avenue, Suite 1200
Chattanooga, TN 37402-2289
Telephone: (423) 756-6600
James.Williams@millermartin.com
Bob.Parsley@millermartin.com
Erin.Steelman@millermartin.com

*Attorneys for Plaintiff Paragon Component
Systems, LLC*

18

**CERTIFICATE OF SERVICE**

I certify that on February 26, 2025, a copy of the foregoing Brief is being served on all counsel of record by electronically filing it via the Court's filing system.

*s/ Robert F. Parsley*

Stephen E. Kabakoff, GA Bar No. 143164,
*appearing pro hac vice*
MILLER & MARTIN PLLC
1180 W. Peachtree Street, NW
Suite 2100
Atlanta, Georgia 30309
Telephone: (404) 962-6100
Stephen.Kabakoff@millermartin.com

James T. Williams, TN BPR 16341
Robert F. Parsley, TN BPR 23819
Erin E. Steelman, TN BPR 38463
MILLER & MARTIN PLLC
832 Georgia Avenue, Suite 1200
Chattanooga, TN 37402-2289
Telephone: (423) 756-6600
James.Williams@millermartin.com
Bob.Parsley@millermartin.com
Erin.Steelman@millermartin.com

*Attorneys for Plaintiff Paragon Component Systems, LLC*

19