**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| PARAGON COMPONENT SYSTEMS, LLC, | ) | |
| | ) | |
| *Plaintiff,* | ) | Case No. 1:24-cv-246 |
| | ) | |
| v. | ) | Judge Atchley |
| | ) | |
| QUALTIM, INC., *et al.*, | ) | Magistrate Judge Steger |
| | ) | |
| *Defendants.* | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motion to Dismiss or Transfer [Doc. 49], Plaintiff's Motion to File a Sur-Reply [Doc. 57], and Plaintiff's Motion for a Limited Jurisdictional Discovery Period [Doc. 36]. For the following reasons, the Motion to File a Sur-Reply [Doc. 57] is **GRANTED**, the Motion to Dismiss or Transfer [Doc. 49] is **GRANTED**, and the Motion for a Limited Jurisdictional Discovery Period [Doc. 36] is **DENIED AS MOOT**. This case will be transferred to the United States District Court for the Western District of Wisconsin.

### I. BACKGROUND

This is an intellectual property dispute concerning who owns software used to design trusses for the construction industry. Decades ago, Daniel Holland began his career in the truss industry by working for his father-in-law's construction business. [Doc. 51-1 at ¶ 3]. As time passed, Daniel Holland climbed the corporate ladder and eventually became the President and majority owner of Clearspan Components, Inc., a wall panel and truss builder.[1] [*Id.* at ¶ 4; Doc. 1 at ¶ 2]. While at Clearspan, Daniel Holland became acquainted with Defendants Kirk and Suzanne Grundahl as well

---

[1] Clearspan Components, Inc., is a Mississippi corporation headquartered in Meridian, Mississippi. [Doc. 51-1 at ¶ 4; Doc. 51-20 at ¶ 2].

as their companies, Defendants DrJ Engineering, LLC, Qualtim, Inc., and the Center for Building Innovation, LLC.[2] [Doc. 51-1 at ¶ 11]. Over the years, DrJ, Qualtim, and the Center for Building Innovation provided Clearspan with a variety of engineering-related services, including services relating to truss design software Clearspan purchased in 2009. [*Id.* at ¶ 16; Doc. 54-3 at 2; Doc. 54-4 at 2].

In 2014, John Holland—Daniel Holland's son—began working at Clearspan. [Doc. 51-1 at ¶ 6]. While there, John Holland helped develop software applications for Clearspan's internal use. [*Id.*]. But John did not want to stop there. Rather, he and his father wanted to create an internet-based software for designing and building trusses more effectively and economically. [*Id.* at ¶ 7]. As a result, John and Daniel Holland founded Plaintiff Paragon Component Systems, LLC, in 2016.[3] [*Id.* at ¶ 2; Doc. 1 at ¶ 21]. Around this same time, Paragon acquired Clearspan's software-related intellectual property. [Doc. 51-1 at ¶ 8; Doc. 1 at ¶¶ 21–22]. Later that same year, the Grundahls personally visited Paragon's Chattanooga office to solicit a business relationship. [Doc. 51-1 at ¶ 13]. Their efforts were successful. Paragon formed a business relationship with Defendants Qualtim, DrJ, and the Center for Building Innovation wherein the Defendant companies provided Paragon with more than 3,000 of services relating to the software's development for which they were paid hundreds of thousands of dollars. [Doc. 51-1 at ¶¶ 14–15; Doc. 51-8; Doc. 1 at ¶¶ 31–32, 35]. Then, Daniel Holland died.

After Daniel Holland unexpectedly passed away in January 2024, the Grundahls requested and

---

[2] Kirk and Suzanne Grundahl are citizens of Wisconsin and residents of Jefferson County, Wisconsin. [Doc. 1 at ¶¶ 11–12; Doc. 50-1 at ¶ 2; Doc. 50-4 at ¶ 2]. Defendant Qualtim, Inc., is a Wisconsin corporation with its principal place of business in Madison, Wisconsin. [Doc. 1 at ¶ 10; Doc. 50-3 at ¶ 9]. Defendants Center for Building Innovation, LLC, and DrJ Engineering, LLC, are Wisconsin limited-liability companies with their principal place of business in Madison, Wisconsin. [Doc. 1 at ¶¶ 14–15; Doc. 50-3 at ¶¶ 24–25, 37]. Kirk Grundahl is the sole member of Defendants DrJ and the Center for Building Innovation. [Doc. 1 at ¶¶ 14–15].

[3] Paragon Component Systems, LLC, is a Tennessee limited liability company with its principal place of business in Chattanooga, Tennessee. [Doc. 1 at ¶ 9; Doc. 51-1 at ¶ 2].

2

received a March 2024 video meeting with Paragon employees. [Doc. 51-1 at ¶¶ 20, 22]. During this meeting, Ms. Grundahl and two Qualtim employees suggested that Qualtim and the Grundahls claimed an ownership interest in the intellectual property relating to Paragon's software. [*Id.* at ¶ 22]. They later emailed John Holland a memo dated March 22, 2024, which claimed that Clearspan and DrJ (and maybe the Center for Building Innovation) co-owned Paragon's intellectual property, including the software. [*Id.* at ¶ 22; Doc. 1-8 at 5–8, 14–15; Doc. 1 at ¶¶ 44–45]. Paragon responded to this memo through counsel on May 23, 2024, by asserting that it is the sole owner of all its software-related intellectual property. [Doc. 1-9; Doc. 1 at ¶ 46]. Mr. Grundahl responded to Paragon six days later on behalf of "the Qualtim Family of Services" (which includes Defendants Qualtim, DrJ, and the Center for Building Innovation) and Defendant Inspired Pursuits, LLC.[4] [Doc. 1-10; Doc. 1 at ¶ 47]. In this response, Mr. Grundahl asserted that Inspired Pursuits is the sole owner of the at-issue intellectual property and made a series of demands, including that Paragon turn over all intellectual property to Inspired Pursuits. [Doc. 1-10]. In the roughly two weeks that followed, Paragon and Mr. Grundahl exchanged several communications concerning the at-issue intellectual property. [Docs. 1-11 – 1-17, 71]. During these communications, Paragon would routinely ask Mr. Grundahl to clarify his position and demands which Mr. Grundahl—speaking on behalf of Inspired Pursuits, the Qualtim Family of Services, and/or some combination of them—would answer. [Docs. 1-11 — 1-17, 71]. Eventually, Mr. Grundahl stopped responding to Paragon which led it to file the instant lawsuit seeking a declaration that it is the sole owner of the at-issue intellectual property, and that no Defendant has any right, title, or interest in the intellectual property. [Doc. 1 ¶¶ 135–36; Doc. 51-1 at ¶ 23; Doc. 67-2 at ¶ 5; Doc. 71].

Now, Defendants ask the Court to dismiss this case for lack of personal jurisdiction, improper

---

[4] Inspired Pursuits, LLC, is a Wisconsin limited liability company with its principal place of business in Madison Wisconsin. [Doc. 1 at ¶ 13]. Its members are Kirk Grundahl (a Wisconsin citizen), Suzanne Grundahl (a Wisconsin citizen), and the Estate of Daniel Holland (a Mississippi Citizen). [*Id.* at ¶¶ 13, 18(e)].

3

venue, and failure to join necessary parties. [Doc. 49]. In the alternative, they ask that the Court transfer this matter to the United States District Court for the Western District of Wisconsin. [*Id.*]. Defendants' Motion can be fully resolved on the personal jurisdiction issue alone. Accordingly, the remainder of this Memorandum Opinion and Order focuses on whether the Court has personal jurisdiction over the Defendants.

## II.    STANDARD OF REVIEW

A plaintiff bears the burden of demonstrating personal jurisdiction over each defendant. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). As the United States Court of Appeals for the Sixth Circuit has explained:

> Motions to dismiss under Rule 12(b)(2) involve burden shifting. The plaintiff must first make a prima facie case, which can be done merely through the complaint. The burden then shifts to the defendant, whose motion to dismiss must be properly supported with evidence. Once the defendant has met the burden, it returns to the plaintiff, who may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.

*Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020) (internal citation and punctuation omitted); *see Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (faced with a properly-supported motion for dismissal, a plaintiff may not stand on its pleadings, "but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction").

A district court has discretion in how it chooses to resolve a Rule 12(b)(2) motion. *Malone*, 965 F.3d at 505. If the motion can be ruled on before trial, the court may (1) determine the motion based on affidavits alone; (2) permit discovery in aid of the motion; or (3) conduct an evidentiary hearing on the merits of the motion. *Id.* If the court decides the motion "solely on written submissions and affidavits . . . the burden on the plaintiff is relatively slight, and the plaintiff must make only a prima facie showing . . . in order to defeat dismissal." *Air Prods. and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 552 (6th Cir. 2007). In this context, the court reviews the pleadings and other

4

documentary evidence in the light most favorable to the plaintiff, without considering the defendant's controverting assertions. *Bridgeport Music, Inc. v. Still N The Water Publishing*, 327 F.3d 472, 478 (6th Cir. 2003). If the defendant submits affirmative evidence showing that the court lacks jurisdiction, the plaintiff must respond by showing, through affidavits or otherwise, specific facts that establish jurisdiction. *Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019).

"Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff… alleges collectively fail to state a prima facie case for jurisdiction." *Theunissen*, 935 F.2d at 1458. This rule prevents a defendant from defeating personal jurisdiction by simply filing an affidavit contradicting the jurisdictional allegations of the complaint. A defendant may, however, invoke the court's discretion to order a pretrial evidentiary hearing, just as a plaintiff may move for jurisdictional discovery. *See Malone*, 965 F.3d at 505–06 (district court erred by crediting defendant's controverting affidavit without first allowing any form of discovery).

### III.    ANALYSIS

Before turning to the substance of Defendants' Motion to Dismiss or Transfer [Doc. 49], the Court will address two preliminary matters. First, the Court, exercising its discretion, has decided to resolve Defendants' Motion to Dismiss or Transfer on written submissions alone. Accordingly, there is no need for a jurisdictional discovery period and Paragon's Motion seeking the same [Doc. 36] is **DENIED AS MOOT**. Second, the Court finds that good cause exists for allowing Paragon to file a sur-reply. Therefore, Paragon's Motion to File a Sur-Reply [Doc. 57] is **GRANTED**. That said, neither Paragon nor the Clerk need to take any additional action as the Court has already considered Paragon's proposed sur-reply while evaluating Defendants' Motion. With these matters resolved, the Court now turns to Defendants' Motion to Dismiss or Transfer.

Defendants assert that the Court lacks jurisdiction over each of them and that this case must be dismissed as a result. [Doc. 50 at 8–16]. In the alternative, they assert that the Court should transfer

5

this case in its entirety to the United States District Court for the Western District of Wisconsin. [*Id.* at 19–21]. Paragon, on the other hand, asserts that the Court has specific personal jurisdiction over each defendant. [Doc. 51 at 15–28]. It also asserts that should the Court conclude it lacks personal jurisdiction over some but not all Defendants, only those Defendants should be severed from this action and transferred to an appropriate district. [*Id.* at 32–33]. After careful consideration, the Court finds that it lacks personal jurisdiction over at least Inspired Pursuits and that this entire case should be transferred to the United States District Court for the Western District of Wisconsin.[5]

Because the Court is resolving Defendants' Motion on the papers, Paragon must only make a prima facie showing of personal jurisdiction as to each Defendant. *Air Prods. and Controls, Inc.*, 503 F.3d at 552. In determining whether it has made this showing, the Court considers the pleadings and other documentary evidence in the light most favorable to Paaragon, without considering the Defendants' controverting assertions. *Bridgeport Music, Inc.*, 327 F.3d at 478. Even with this generous standard, however, Paragon has failed to establish that this Court has personal jurisdiction over at least Inspired Pursuits.

Whether a court has personal jurisdiction over a defendant depends on whether "the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." *Id.* at 477 (cleaned up); *Johnson v. Griffin*, 85 F.4th 429, 432 (6th Cir. 2023). "Where the state long-arm statute extends to the limits of the due process clause, the two inquiries are merged and the court need only determine whether

---

[5] To the extent Paragon would argue that it should be permitted jurisdictional discovery to contest this conclusion, the Court disagrees. A plaintiff is not entitled to jurisdictional discovery if it cannot "at a minimum, offer any factual basis for [its] allegations and give the district court a reasonable basis to expect that discovery would reveal evidence that supports the claimed jurisdiction." *C.H. v. United States*, 818 F. App'x 481, 484 (6th Cir. 2020) (cleaned up). Here, Paragon has not alleged anything or offered any argument that suggests additional discovery would reveal evidence concerning the Court's jurisdiction over Inspired Pursuits specifically. To the contrary, Paragon expressly alleges in the Complaint that Inspired Pursuits has had little to no contact with it (and by extension Tennessee). [*See* Doc. 1 at ¶¶ 40–42]. Based on these allegations and the lack of information suggesting that discovery would help establish this Court's jurisdiction, the Court finds that Paragon is not entitled to jurisdictional discovery concerning Inspired Pursuits. *C.H.*, 818 F. App'x at 484

6

exercising personal jurisdiction violates constitutional due process." *Bridgeport Music, Inc.*, 327 F.3d at 477. Here, "[t]he Tennessee long-arm statute, Tenn. Code Ann. § 20-2-214(a)(6), has been interpreted as coterminous with the limits on personal jurisdiction imposed by the due process clause." *Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452, 455 (6th Cir. 1993). Accordingly, whether the Court possesses personal jurisdiction depends wholly on whether exercising such jurisdiction would be consistent with federal due process requirements. *Id.*

"Due process requires the defendant to possess certain minimum contacts with the forum State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Johnson*, 85 F.4th at 432 (internal quotation marks omitted). These contacts can give rise to two types of personal jurisdiction: general and specific. *Id.* General jurisdiction—which the parties appear to agree is not implicated here—arises when "a defendant's contacts with the forum state are of such a 'continuous and systematic' nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Third Nat'l Bank v. Wedge Grp., Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989). Jurisdiction exists in these circumstances because a defendant's contacts with the forum state "are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Specific jurisdiction, on the other hand, exists only when a claim "arises out of or relates to a defendant's contacts in the forum state." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012). In the Sixth Circuit, courts employ a three-part test for determining whether specific jurisdiction exists over a defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant

7

reasonable.

*S. Mach. Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968). If any of these three requirements is not met, then the court lacks specific jurisdiction. *Miller*, 694 F.3d at 680.

Here, the Court lacks specific jurisdiction over Inspired Pursuits because it has not purposefully availed itself of the privilege of either acting in or causing a consequence in Tennessee. *See S. Mach. Co.*, 401 F.2d at 381. This lack of purposeful availment can be found in the Complaint itself. The Complaint does not allege that Inspired Pursuits performs any kind of activity in Tennessee with respect to Paragon or otherwise. [*See generally* Doc. 1]. In fact, it explicitly disavows a Paragon-Inspired Pursuits relationship, alleging that Paragon "has not executed any written assignment or any other agreement assigning any of its right, title, or interest in the Paragon Truss Software to Inspired Pursuits"; "has never engaged the services of Inspired Pursuits for any purpose"; and "has never used any resources or employees of (within the scope of their employment with) Inspired Pursuits in the development of any of the Paragon Truss Software." [*Id.* at ¶¶ 40–42]. Looking beyond the Complaint, the only documents identifying any contacts between Inspired Pursuits and the State of Tennessee are communications concerning Mr. Grundahl's claims that Inspired Pursuits owns the at-issue intellectual property. [Docs. 1-10 – 1-12, 1-14 – 1-17, 71].

Paragon acknowledges Inspired Pursuit's dearth of contacts with Tennessee in its briefing. While Paragon details the myriad of contacts the other Defendants have had with it (and by extension Tennessee) over the past eight years, its discussion of Inspired Pursuit's contacts is limited to the aforementioned communications and its contention that the at-issue intellectual property is located in Tennessee. [Doc. 51 at 16–17, 21–23]. These contacts, however, are insufficient to establish purposeful availment.

Paragon's declaratory judgment claims arise from Defendants' efforts to enforce their claimed ownership interest(s) in the at-issue intellectual property. [*See generally* Doc. 1].

8

Accordingly, the relevant contacts for whether the Court has specific jurisdiction over Inspired Pursuits are those contacts relating to Inspired Pursuit's efforts to assert ownership of the at-issue intellectual property. *See Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) ("The relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant…purposefully directed such enforcement activities at residents of the forum, and the extent to which the declaratory judgment claim arises out of or relates to those activities." (cleaned up)); *J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294, 303 (N.D. Ohio 2021) (same); *Worldwide Interactive Network, Inc. v. Chmura Econ. & Analytics, L.L.C.*, No. 3:09-CV-121, 2010 U.S. Dist. LEXIS 91336, at *25 (E.D. Tenn. Sep. 1, 2010) (same). These efforts consist of the demand letters and accompanying email communications Mr. Grundahl sent to Paragon on behalf of Inspired Pursuits.[6] [Docs. 1-10 – 1-12, 1-14 – 1-17, 71].

Although there is no bright-line rule that such communications can never give rise to specific jurisdiction, *see Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1156 (Fed. Cir. 2021), courts routinely hold that such efforts fail to establish purposeful availment absent evidence of additional enforcement activities. *See Int'l Watchman, Inc. v. 81 January, Inc.*, No. 1:17-cv-497, 2017 U.S. Dist. LEXIS 141299, at *6 (N.D. Ohio Aug. 31, 2017) ("Courts have repeatedly held that cease and desist letters are insufficient to establish purposeful availment.") (collecting cases); *HealthSpot, Inc. v. Computerized Screening, Inc.*, 66 F. Supp. 3d 962, 969 (N.D. Ohio 2014) ("[A]ctions that go beyond merely sending cease and desist letters and offers to license can support personal jurisdiction."); *Trimble Inc.*, 997 F.3d at 1156 (finding purposeful availment where, in addition to

---

[6] Defendants assert that the Court should not consider these communications as part of its personal jurisdiction analysis because they represent settlement negotiations and are therefore not admissible pursuant to Federal Rule of Evidence 408. [Doc. 54 at 14–15]. This argument is meritless. While evidence of settlement negotiations may not be used "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction," such evidence may be admitted "for another purpose." FED. R. EVID. 408. Here, the communications are offered for such a permissible purpose, to establish whether the Court has jurisdiction. Therefore, the Court may consider the demand letters and accompanying emails as part of its jurisdictional analysis. *See id.*

sending demand letters, the defendant (i) "amplified its threats of infringement," (ii) identified the counsel it retained to sue the plaintiffs and the venue in which it planned to file suit, (iii) sent the plaintiffs a draft complaint, and (iv) engaged in licensing negotiations). The reason for requiring these additional efforts is simple: "If the price of sending a cease and desist letter is that the sender thereby subjects itself to jurisdiction in the forum of the alleged rights infringer, the rights holder will be strongly encouraged to file suit in its home forum without attempting first to resolve the dispute informally by means of a letter." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1208 (9th Cir. 2006). This would run contrary to the well-established policy favoring the most efficient resolution of claims. *See Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998).

Here, Mr. Grundahl sent, at most, six demand letters and accompanying emails to Paragon on behalf of Inspired Pursuits, many of which were prompted in part by questions from Paragon's counsel.[7] [Docs. 1-10 – 1-12, 1-14 – 1-17, 71]. The Court finds that these contacts are insufficient to give the Court specific jurisdiction over Inspired Pursuits. As the Court has already noted, demand letters alone generally cannot establish specific jurisdiction. *See Int'l Watchman, Inc.*, 2017 U.S. Dist. LEXIS 141299, at *6 (collecting cases). There must usually be something more, and there is nothing more here. *See id.*; *Trimble Inc.*, 997 F.3d a, 1156. Furthermore, the Court cannot ignore the fact that many of Inspired Pursuit's communications were answering questions raised by Paragon. [*See* Docs. 1-10 – 1-12, 1-14 – 1-17, 71]. If a party risked subjecting itself to a forum's jurisdiction by simply answering a question raised in response to its demand letter, then it would be disincentivized from engaging in substantive discussion concerning its demands. This would hamper the ability of parties to efficiently and informally resolve their disputes without the need for litigation.

_____

[7] Mr. Grundahl's communications did not always clearly delineate which of the Defendant companies he was speaking on behalf of. For purposes of the Court's jurisdictional analysis, the Court assumes that all communications asserting that Inspired Pursuits owns the at-issue intellectual property were made on behalf of Inspired Pursuits.

*See Red Wing Shoe Co.*, 148 F.3d at 1361. Finally, the "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotation marks omitted), but that is all that Inspired Pursuits' contacts with Tennessee are. The only reason Inspired Pursuits sent communications to Paragon in Tennessee is because that is where Paragon is located. If Paragon was based out of another state, then Inspired Pursuits would have had no reason to contact Tennessee at all. Such limited, litigation-related communications sent to Tennessee only because that is where Paragon is located are insufficient to establish purposeful availment. *See Int'l Watchman, Inc.*, 2017 U.S. Dist. LEXIS 141299, at *6 (finding no purposeful availment where the "defendants emailed the letter to [the forum state] only because Plaintiff happened to do business there"); *Red Wing Shoe Co.*, 148 F.3d at 1361; *Yahoo! Inc.*, 433 F.3d at 1208.

Perhaps recognizing this, Paragon also argues that Inspired Pursuits has contacts with Tennessee because that is where the at-issue intellectual property is located. [Doc. 51 at 21–23]. This argument is not persuasive. There is a distinction between ownership of a physical embodiment of a piece of intellectual property and ownership of the intellectual property itself. *Pearl Records, Inc. v. Conner*, No. 3:22-cv-00096, 2023 U.S. Dist. LEXIS 10069, at *14–15 (M.D. Tenn. Jan. 20, 2023); *see also* 17 U.S.C. § 202 ("Ownership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied…"). In this case, Inspired Pursuits is claiming that it owns the intellectual property surrounding Paragon's truss software, not a physical copy of the software. [*See* Docs. 1-10 – 1-12, 1-14 – 1-17, 71]. Because this intangible property "cannot be physically tethered to [Tennessee] any more than it can to any other place[,]" the property's purported location in Tennessee is insufficient to establish specific jurisdiction, whether considered alone or along with Inspired Pursuit's demand letters. *See Pearl Records, Inc.*, 2023 U.S. Dist. LEXIS 10069, at *15. Consequently, the Court finds that it lacks

personal jurisdiction over Inspired Pursuits.

Thus, regardless of whether the Court has personal jurisdiction over the remaining Defendants, it lacks jurisdiction over *all* Defendants. In these circumstances, the Court finds that the interest of justice require it to transfer this entire matter, rather than dismiss it, as permitted by 28 U.S.C. §§ 1404, 1406, and 1631.[8] *See Miller v. Toyota Motor Corp.*, No. 3:07-CV-3549, 2008 U.S. Dist. LEXIS 111817, at *11–12 (N.D. Ohio Sep. 12, 2008) (noting that a transfer may be in the interest of justice "if doing so avoids additional expense to the parties, preserves the timeliness of the action, or promotes judicial economy"). Paragon asks that instead of doing this, the Court sever and transfer only those parties it lacks jurisdiction over while allowing this matter to proceed against the remaining parties here in the Eastern District of Tennessee. [Doc. 51 at 32–33]. While Federal Rule of Civil Procedure 21 does allow the Court to sever parties as requested by Paragon, such severance would be improper here. Courts consider the following factors when determining whether severance is appropriate:

> (1) Whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for separate claims.

*E.C. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-3811, 2024 U.S. Dist. LEXIS 46121, at *7–8 (S.D.

---

[8] Each of these statutes governs the transfer of parties and/or claims under different circumstances. § 1631 permits transfer where a court lacks personal or subject matter jurisdiction over a party or claim. *Roman v. Ashcroft*, 340 F.3d 314, 328 (6th Cir. 2003). § 1406 permits transfer where venue has been laid in the wrong district, irrespective of whether the court where the case was filed has personal jurisdiction over the defendant. *See Pearl Records, Inc.*, 2023 U.S. Dist. LEXIS 10069, at *16. And § 1404 permits transfer "[f]or the convenience of the parties and witnesses" even when venue and personal jurisdiction were proper in the transferor court. Here, the Court has found that it lacks personal jurisdiction over at least Inspired Pursuits. Therefore, § 1631 authorizes the Court to transfer it to a different district court. As for the remaining Defendants, although the Court has not expressly evaluated whether it has personal jurisdiction over each of them, they can nonetheless be transferred pursuant to §§ 1404, 1406, and/or 1631. Any Defendant the Court lacks personal jurisdiction over can be transferred pursuant to § 1631. Any Defendant for whom venue in this Court is improper can be transferred pursuant to § 1406. And if any Defendant is properly before this Court, they can nonetheless be transferred pursuant to § 1404 because, as is discussed below, the interests of judicial economy weigh strongly in favor maintaining Paragon's claims in a single action.

Ohio Mar. 15, 2024) (internal quotation marks omitted). In this case, the factors weigh against severance. Paragon's claims concern who owns the at-issue intellectual property. [*See generally* Doc. 1]. Dividing this question between multiple courts would be inefficient as the same legal and factual issues would almost certainly permeate both cases. Furthermore, resolving these issues would likely entail materially similar, if not identical, proof. Rather than invite this unnecessary duplication of efforts, the Court finds that the better course is to transfer the entire case.

Having determined that this matter should be transferred, the Court must now determine where to transfer it. Inspired Pursuits and the other Defendants request that the Court transfer this matter to the United States District Court for the Western District of Wisconsin as they are all residents of that district.[9] [Doc. 50 at 19–21]. §§ 1404, 1406, and 1631 all provide that a civil action may be transferred to any other district where it might have been brought at the time it was filed. Thus, whether this matter can be transferred to the Western District of Wisconsin depends on whether this matter could have originally been filed there. *See* 28 U.S.C. §§ 1404, 1406, and 1361. Starting with personal jurisdiction, it is a simple inquiry. As each Defendant resides in Wisconsin, the United States District Court for the Western District of Wisconsin may exercise personal jurisdiction over them. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011). This leaves the issue of venue. 28 U.S.C. § 1391(b)(1) provides that a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]" Similarly, 28 U.S.C. § 1400(a) provides that civil actions relating to copyrights "may be instituted in the district in which the defendant or his agent resides or may be found." Together, these statutes establish that venue is proper in the Western District of Wisconsin. Accordingly, the Court

---

[9] The Court takes judicial notice of the fact that the United States District Court for the Western District of Wisconsin encompasses Dane and Jefferson counties which are where the individual Defendants reside and the company Defendants have their principal places of business. [Doc. 1 at ¶¶ 10–15; Doc. 50-1 at ¶ 2; Doc. 50-3 at ¶ 9, 24–25, 37; Doc. 50-4 at ¶ 2].

finds that this action could have originally been brought in the United States District Court for the Western District of Wisconsin and will transfer this matter there.

Because the Court has concluded that it lacks personal jurisdiction over at least Inspired Pursuits and that this matter should therefore be transferred, it does not address Defendants' alternative argument that Paragon has failed to join two necessary and indispensable parties: Clearspan and the Estate of Daniel Holland. [*See* Doc. 50 at 16–19]. Should Defendants continue to believe that Clearspan and the Estate are necessary and indispensable parties in this action, they may raise the issue in Wisconsin. Similarly, the Court does not address Plaintiff's pending Motion to Supplement or Amend [Doc. 52], its Motion to Determine Whether Exhibits to Complaint Should be Under Seal [Doc. 67], or its Motion to Provisionally File Exhibits Under Seal [Doc. 69].

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion to File a Sur-Reply [Doc. 57] is **GRANTED**, Defendants' Motion to Dismiss or Transfer [Doc. 49] is **GRANTED**, and Plaintiff's Motion for a Limited Jurisdictional Discovery Period [Doc. 36] is **DENIED AS MOOT**. The Clerk is **DIRECTED** to transfer this action to the United States District Court for the Western District of Wisconsin, and to **CLOSE** this Court's file.

**SO ORDERED.**

/s/*Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**