IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| PARAGON COMPONENT SYSTEMS, LLC, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )    Case No.: 1:24-cv-00246-CEA-CHS <br> ) |
| QUALTIM, INC., et al., | ) <br> ) |
| Defendants. | ) |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION
TO PLACE EXHIBITS TO COMPLAINT UNDER SEAL**

Plaintiff Paragon Component Systems, LLC ("Paragon") respectfully opposes the motion of all Defendants, including Qualtim, Inc. (together, "Qualtim") to seal Document 1-8 and Documents 1-10 through 1-16. These documents were filed as exhibits to the Complaint on July 23, 2024. Qualtim has waived any confidentiality protection because it has allowed these exhibits to remain in the public record for nearly 10 months before moving to seal them. Although Qualtim says they contain trade secrets, Qualtim provides no factual basis for it, as required by this Court's standing order. Doc. 5. And before the exhibits were filed, Qualtim itself had voluntarily sent them to persons who had no duty to keep them confidential. The Court should deny the motion.

**I. Factual and Procedural Background.**

    *A.    Qualtim voluntarily distributed correspondence to persons who had no duty to keep it confidential, which was filed as exhibits to the Complaint.*

Paragon authored code for software applications for the truss industry. Doc. 51-1 at 2–3, 9. To help Paragon understand and validate engineering calculations, certain Defendants provided consulting services. *Id*. at 4–6. In 2024, however, as Paragon was about to offer its applications more fully to licensees, Defendant Kirk Grundhal contended that his companies have co-ownership rights in the code, including the right to share in licensing profits. *Id*. at 7–9. Paragon disagreed.

1

*Id*. This dispute resulted in the exchange of letters, a memo, and emails between the Grundahls and Paragon's attorneys and others from January to June 2024. *Id*. at 8; Doc. 1 at 11–12.

On July 23, 2024, Paragon filed this declaratory-judgment action to determine and protect its rights. Doc. 1. With its Complaint, Paragon filed authentic copies of the correspondence. Doc. 1-8 – Doc. 1-17; Doc. 67-2 at 1–2. Paragon did so because the content of the correspondence had generated this dispute, sets out the parties' respective positions and demands, and is so essential to the Complaint that it cannot be understood without referring to the correspondence.

Under the circumstances, Paragon could not appropriately have filed the correspondence under seal. Most of it had been labeled by Qualtim as "confidential" or as stating "[C]onfidential intellectual property (IP) and trade secrets (TS) is [sic] protected by Defend Trade Secrets Act 2016." *See, e.g.*, Doc. 1-8 at 1; Doc. 1-10 at 1. But these labels are not controlling. The Grundahls sent the correspondence directly to persons who had no duty to keep it confidential, including Paragon's counsel (and staff) or third-persons such as all Paragon employees or Clearspan executives Rob Eason and James Holland. Doc. 1-8; Doc. 1-10 – Doc. 1-16; Doc. 67-2 at 1–2; Doc. 67-3 at 1–2; **Ex. A**, No. 3:25-cv-00170 (W.D. Wis.), Doc. 87 at 1–2; **Ex. B**, No. 3:25-cv-00170 (W.D. Wis.), Doc. 88 at 1–2.[1]

B.  *Instead of moving to seal the exhibits, Qualtim publicized them.*

The Complaint and its exhibits were publicly filed on July 23, 2024. After Qualtim's counsel appeared in August, Qualtim did object or move this Court to place the exhibits under seal.

About three months later, on October 11, 2024, Qualtim moved to file *other* documents under seal in support of its motion to dismiss or transfer. Doc. 29; Doc. 29-1 – Doc. 29-15 (redacted

---

[1] Following transfer to Wisconsin, this action was assigned case No. 3:25-cv-00170. Docket numbering in Wisconsin is consecutive to the transfer order, Doc. 73 (beginning with 74). Because post-transfer filings here are also numbered consecutively to that order (also beginning with 74), for clarity Paragon includes the case number for documents filed post-transfer in Wisconsin.

copies); Doc. 30. They included meeting notes, agenda, employee timesheets, and invoices, which partially concerned the same matters as the Complaint's exhibits. After an in-person evidentiary hearing on November 13, 2024, the Court denied Qualtim's motion to seal. Doc. 39; Doc. 43; Doc. 45. The Court found "that the contents of the proposed redactions are neither trade secrets on their face, nor is any evidence before the Court that Defendant[s] ha[ve] undertaken reasonable efforts in conducting its business to protect them as trade secrets." Doc. 45 at 2.

The Court permitted Qualtim to refile its motion to dismiss or transfer without the supporting documents. Doc. 45 at 2. On November 26, 2024, Qualtim did so. Doc. 49; Doc. 50. By way of exception, Qualtim publicly filed an unredacted version of an operating agreement for Inspired Pursuits, LLC, Doc. 50-5. Then, with its reply brief, Qualtim publicly filed several of the documents it had formerly tried to seal as containing "trade secrets." *Compare, e.g.,* Doc. 29-9 (Ex. 10, redacted invoice #37820) *with* Doc. 54-3 (Ex. 3, unredacted invoice #37820); *compare* Doc. 29-10 (Ex. 11, redacted invoice #43468) *with* Doc. 54-4 (Ex. 4, unredacted invoice #43468). Qualtim also publicly filed a depiction of the "business model" that it elsewhere has moved to seal as a purported "core" trade secret. *Compare* Doc. 54-23 at 2 *with Inspired Pursuits, LLC, et al., v. Paragon Component Sys. LLC, et al.*, No. 3:25-cv-00075 (W.D. Wis.), Doc. 1-2 at 18; *id.*, Doc. 1-2 at 19 ¶ 1; *id.*, Doc. 1-4 at 6, 10; *id.*, Doc. 2 (under seal) (Ex. M, State Court Doc. 17 at 11).[2]

Meanwhile, in October 2024, Mr. Grundahl drew public attention to Paragon's Complaint and exhibits by posting self-written articles about the litigation on Qualtim's website and emailing the articles to truss-industry participants nationwide. Doc. 53-1 at 1–4; Doc. 53-2 – Doc. 53-4. These articles partially describe the "business model" that Qualtim now says, in Wisconsin

---

[2] Confusingly, Qualtim also publicly filed non-disclosure agreements here but later moved to file the very same documents under seal in Wisconsin. *Compare* Doc. 54-5 *with Inspired Pursuits, LLC, et al., v. Paragon Component Sys. LLC, et al.*, No. 3:25-cv-00075 (W.D. Wis.), Doc. 1-3 at 2–13; *id.*, Doc. 2 (under seal) (Ex. B, et al., State Court Document 18). The Court may take judicial notice of those filings. *Lyons v. Stovall*, 188 F.3d 327, 333 n.3 (6th Cir. 1999).

litigation, is a "core" trade secret. Doc. 53-2; *Inspired Pursuits, LLC, et al., v. Paragon Component Sys. LLC, et al.*, No. 3:25-cv-00075 (W.D. Wis.), Doc. 1-2 at 18–19; *id.*, Doc. 1-4 at 6, 10.

On December 30, 2024, the parties' counsel discussed whether the Complaint's exhibits contain confidential information, Doc. 67-1 ¶ 2, but Qualtim did not then move to seal the exhibits.

### C. Qualtim sued Paragon's counsel in Wisconsin for not filing the exhibits in this Court under seal, and Paragon asked this Court to address their docket status.

By January 2025, the Complaint's exhibits had been in the public record for over six months. During that time, Qualtim neither moved to seal them nor objected to this Court. Yet on January 31, 2025, Qualtim filed a federal lawsuit in Wisconsin against Paragon's counsel in this case—Miller & Martin PLLC, James T. Williams, Robert F. Parsley, and Stephen Kabakoff—alleging that they had "misappropriated" Qualtim's trade secrets by filing the exhibits publicly. Doc. 65-3; *see Qualtim, Inc. v. Miller & Martin PLLC, et al.*, No. 25-cv-00073 (W.D. Wis.). This called yet more public attention to the exhibits, which Qualtim still did not move this Court to seal.

On February 13, 2025, counsel again conferred about whether the Complaint's exhibits contain protectable confidential information. Doc. 67-1 ¶ 3. On February 26, 2025, Paragon (not Qualtim) moved this Court to clarify whether the exhibits should be under seal. Doc. 67; Doc. 68.

### D. After transfer, the Western District of Wisconsin ruled that only this Court can decide whether exhibits in the Eastern District of Tennessee should be under seal.

On March 6, 2025, before Paragon's motion was fully briefed, the Court transferred this case to the Western District of Wisconsin. Doc. 73. Paragon's motion, Doc. 67, went along.

In its response in the Western District of Wisconsin on March 11, 2025, Qualtim asked (for the first time) that the Complaint's exhibits—now publicly available in both the Eastern District of Tennessee and the Western District of Wisconsin—be sealed as "alleged trade secrets." **Ex. C**, No. 3:25-cv-00170 (W.D. Wis.), Doc. 75 at 3–4; **Ex. D**, No. 3:25-cv-00170 (W.D. Wis.), Doc. 76 at 3–4. Paragon opposed the sealing request. **Ex. E**, No. 3:25-cv-00170 (W.D. Wis.), Doc. 84.

On April 8, 2025, the Western District of Wisconsin decided the motion. **Ex. F**, No. 3:25-cv-00170 (W.D. Wis.), Doc. 98. It sealed the exhibits only provisionally and temporarily, pending discovery, based on a prima facie showing, without definitively applying the standards for sealing.[3]

The Western District of Wisconsin made it clear that its order applies *only* to the Complaint's exhibits as they are maintained in the Western District of Wisconsin's docket: "Complaint exhibits A-J, Dkts. 1-8–17, shall be sealed on *this* court's docket. This order does *not* order the *Eastern District of Tennessee* or any Wisconsin state court to handle the exhibits in question in any particular way—the parties will need to seek orders *directly from those courts*." **Ex. F**, No. 3:25-cv-00170 (W.D. Wis.), Doc. 98 at 6 (emphasis added). In other words, only *this* Court (and not the Western District of Wisconsin) can properly decide whether the Complaint's exhibits as maintained in the Eastern District of Tennessee should be placed under seal.

> E. *Ten months after the Complaint's exhibits were filed publicly, Qualtim has asked this Court to put them under seal.*

On May 23, 2025, 10 months after the Complaint's exhibits were filed publicly, and six weeks after the Western District of Wisconsin had entered its order, Qualtim for the first time asked *this* Court to seal the Complaint's exhibits in the Eastern District of Tennessee. Doc. 74. The Court may take judicial notice that the Complaint's exhibits remain publicly available in this Court's docket. *Overton v. Tennessee*, 590 F. Supp. 3d 1087, 1089 n.1 (M.D. Tenn. 2022). Despite this Court's standing order imposing strict requirements for sealing, Doc. 5, Qualtim provides no

---

[3] It held that unredacted copies should sealed in its docket "*at least for now when the case is still at its relatively early stages* and the confidential status of the documents is still the subject of discovery and in dispute." **Ex. F**, No. 3:25-cv-00170 (W.D. Wis.), Doc. 98. at 1 (emphasis added). "[T]here is good cause to seal the exhibits *at this time*…. This *prima facie* showing that the exhibits *may* contain sensitive information is sufficient *at this stage in the case*…. The legitimacy of any exhibit's confidential or trade secret designation *may be fairly debated at some point in the future*" when "a sufficient factual record is developed." *Id*. at 5 (emphasis added). It sealed the exhibits only "*at this juncture. The status may evolve* as the case progresses *depending on the development of the evidentiary record*." *Id.* (emphasis added).

5

factual basis or any compelling reason for sealing. Instead, it asks the Court to seal the exhibits indefinitely until *another* court (in Wisconsin) can find the underlying facts. Doc. 74 at 4.

**II.     Law and Argument.**

The Court should deny the motion to seal the Complaint's exhibits.

    *A.     Only this Court has the power to decide whether judicial records maintained in its own docket should be placed under seal.*

As the Western District of Wisconsin correctly observed, only *this* Court—the United States District Court for the Eastern District of Tennessee, presiding over Case No. 1:24-cv-00246-CEA-CHS—can decide whether to seal judicial records maintained in its *own* court files for this case. **Ex. F**, Case No. 3:25-cv-00170 (W.D. Wis.), Doc. 98 at 6.

This Court can decide this discrete issue even though this case has been transferred to Wisconsin based on lack of personal jurisdiction. Doc. 73. "It is well established that a federal court may consider collateral issues after an action is no longer pending …." *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) (collateral matters are separate from merits). Collateral matters "are, therefore, not subject to the jurisdictional boundaries of the original action." *Diamond Consortium, Inc. v. Hammervold*, 386 F. Supp. 3d 904, 913 (M.D. Tenn. 2019). "The federal courts maintain jurisdiction over certain collateral issues even after the underlying action is dismissed for lack of jurisdiction." *See Spradlin v. Richard*, 572 F. App'x 420, 427 (6th Cir. 2014); *see Qureshi v. United States*, 600 F.3d 523, 525 (5th Cir. 2010) ("That the court loses jurisdiction over the litigation does not, however, deprive the district court of its inherent supervisory powers."). The same applies in the event of transfer.

Every court has inherent supervisory power over its own records and files. *See In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 474 (6th Cir. 1983) (citation omitted); *accord In re Se. Milk Antitrust Litig.*, 666 F. Supp. 2d 908, 915 (E.D. Tenn. 2009); *see* 28 U.S.C. § 132(a) (district courts are separate); 28 U.S.C. § 457 (each district court maintains its own records where

court is held); Fed. R. Civ. P. 79(a) (clerk must maintain records in civil docket). Since 2004, this Court's records have generally been submitted and maintained in the docket electronically. ECF Rules & Procedures (E.D. Tenn. Mar. 24, 2025), § 11.1.

This Court's supervisory power over its judicial records does not end when a case is dismissed or transferred. The "decision whether to unseal court records"—or to seal them—"is a collateral issue," over which this Court maintains continuing jurisdiction. *See Grae v. Corr. Corp. of Am.*, 134 F.4th 927, 931 (6th Cir. 2025) (deciding whether to unseal records two years after case was dismissed); *Diamond Consortium*, 386 F. Supp. 3d at 913; *cf. also, e.g., United States v. Pickard*, 733 F.3d 1297, 1300 (10th Cir. 2013) ("Once a court orders documents before it sealed, the court continues to have authority to enforce its order sealing those documents, as well as authority to loosen or eliminate any restrictions on the sealed documents.").

This Court's power to manage records in its docket is exclusive. Outside the context of direct appeal, no federal court can order another federal court to seal or unseal its *own* judicial records. *See In re Knoxville News-Sentinel*, 723 F.2d at 474. The Western District of Wisconsin's provisional sealing of the Complaint's exhibits in its own docket cannot (and does not) bind this Court to do the same. "'A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.'" *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (citation omitted); *see United States v. Edwards*, 456 F. Supp. 3d 953, 955 (M.D. Tenn. 2020); *Diamond Consortium*, 386 F. Supp. 3d at 912.

The Western District of Wisconsin agrees. In its sealing order, it explains that the Eastern District of Tennessee, and it alone, has the power to decide whether to seal exhibits on file in the Eastern District of Tennessee. **Ex. F**, Case No. 3:25-cv-00170 (W.D. Wis.), Doc. 98 at 6.

7

Moreover, the sealing question presented here differs from the one decided in Wisconsin. The Wisconsin district court chose to seal, temporarily under Seventh Circuit law, exhibits that had been in its public docket for only five days. *See* Doc. 73 (March 6, 2025 transfer order); **Ex. C**, No. 3:25-cv-00170 (W.D. Wis.), Doc. 75 at 3–4 (March 11, 2025 request to seal). But Qualtim asks *this* Court to seal documents that have been available in its public docket for 10 months. And this Court must make its own, independent sealing decision, based on Sixth Circuit precedent.

B. *Qualtim's motion is governed by Sixth Circuit law.*

Qualtim says its motion here is governed by Seventh Circuit law. Doc. 74 at 2. That is wrong. It's true that a transferee court typically applies the federal substantive and procedural law of its own Circuit. *Flynn v. Greg Anthony Constr. Co.*, 95 F. App'x 726, 739 (6th Cir. 2003); *Anderson v. Aon Corp.*, 614 F.3d 361, 365 (7th Cir. 2010); 15 FED. PRAC. & PROC. *Juris*. § 3846 (4th ed. 2025). As the transferee court, the Western District of Wisconsin properly applies Seventh Circuit law to federal issues in case No. 3:25-cv-00170 (W.D. Wis.). But deciding whether judicial records maintained in *this* Court's docket, in the Eastern District of Tennessee, should be sealed— a matter of this Court's inherent supervisory power—is necessarily governed by Sixth Circuit law. On this federal issue, this Court "is bound by Sixth Circuit precedent." *United States v. Chattanooga Hamilton Cnty. Hosp. Auth.*, No. 1:21-CV-84, 2024 WL 4784372, at *2 (E.D. Tenn. Nov. 7, 2024).[4]

C. *Qualtim has forfeited and waived its opportunity to seal the Complaint's exhibits.*

Even assuming the Complaint's exhibits contain information that warrants sealing (they do not), Qualtim has forfeited and waived its opportunity or right to seal them in this Court.

---

[4] Seventh Circuit and Sixth Circuit law are similar. *Compare* Doc. 5 *with Jessup v. Luther*, 277 F.3d 926, 927–28 (7th Cir. 2002); *see* **Ex. E**, No. 3:25-cv-00170 (W.D. Wis.), Doc. 84.

This analysis "begin[s] with the well-established principle of American jurisprudence that the release of information in open trial is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its further use." *Nat'l Polymer Prods., Inc. v. Borg-Warner Corp.*, 641 F.2d 418, 421 (6th Cir. 1981); *accord, e.g., Doe v. Lockwood*, 89 F.3d 833, at *4–5 (6th Cir. 1996) (table); *Kines v. Ford Motor Co.*, No. 119CV01054JDBJAY, 2021 WL 1328475, at *4 (W.D. Tenn. Apr. 9, 2021); *Jones v. Lacey*, 108 F. Supp. 3d 573, 584 (E.D. Mich. 2015); *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 583 (E.D. Va. 2009). It is like waiver of the attorney–client privilege: A party "may waive the attorney-client or work product privilege 'by conduct which implies a waiver of the privilege or a consent to disclosure.'" *Genesco, Inc. v. Visa U.S.A., Inc.*, 302 F.R.D. 168, 194–95 (M.D. Tenn. 2014). Qualtim has lost its opportunity to seal for at least three reasons.

First, Qualtim has waited too long—nearly 10 months—to move this Court to seal the exhibits here. Because this is not a reasonable effort to limit their disclosure, it operates as a waiver of any rights Qualtim had to restrict their public access or further use. *See Nat'l Polymer Prods.*, 641 F.2d at 421. The exhibits were publicly filed on July 23, 2024. Doc. 1. Qualtim's counsel appeared on August 12, 2024. Doc. 11 – Doc. 13. Waiver of service was filed on August 13, Doc. 14. Qualtim thus knew of the exhibits' public status no later than August 12, 2024.

Yet Qualtim waited until May 23, 2025, nearly 10 months, to seek any remedy from this Court. Doc. 74. This is over five months since December 30, 2024, when the parties' counsel discussed the exhibits' purported confidentiality. Doc. 67-1 ¶ 2. And it is six weeks since April 8, 2025, when the Wisconsin district court notified Qualtim that it had to seek a remedy separately in this Court. **Ex. F**, No. 3:25-cv-00170 (W.D. Wis.), Doc. 98.

This delay (which appears intentional, perhaps to augment seeming "damages") is inconsistent with believing that the exhibits contain valuable trade secrets or that Qualtim is really

harmed by their disclosure. One who contends that information has been improperly filed in public must act reasonably promptly to remedy it, else it loses any right to confidentiality. *See, e.g.*, *Neogen Corp. v. Innovative Reprod. Tech., LLC*, No. 419CV00330RGESHL, 2022 WL 1518924, at *2 (S.D. Iowa Jan. 14, 2022) (waiver by waiting 10 months to move to seal electronically filed information); *Craddock v. LeClairRyan*, No. 3:16-CV-11, 2019 WL 2437460, at *6 (E.D. Va. June 11, 2019) (waiver by waiting 36 days to file a motion to seal after arbitration award had been made public)); *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 288 F. Supp. 3d 872, 910 (E.D. Wis. 2017) (waiver when transcript allowed to remain public "for nearly a month" before moving to redact); *cf., e.g.*, *LifeBio, Inc. v. Eva Garland Consulting, LLC*, 672 F. Supp. 3d 512 (S.D. Ohio 2023) (waiver of privilege based on delays); *Talismanic Props., LLC v. Tipp City, Ohio*, 309 F. Supp. 3d 488, 495 (S.D. Ohio 2017) (waiver when "approximately two months" passed before assertion of privilege).

Qualtim's delay is especially damning because, before moving to seal, it allowed this Court to rely on the Complaint's exhibits to decide Qualtim's motion to transfer. Doc. 73 at 3, 8–11. "[A] document counts as a judicial record, for purposes of the presumption of access, when it is 'filed with the objective of obtaining judicial action or relief' or otherwise plays 'a role in the adjudicative process'"—as here. *See Grae*, 134 F.4th at 933; Doc. 5 at 1–2. The public has a right to read such records because it has an interest in knowing what "evidence and records" the district court has relied on in reaching its decisions. *In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 939 (6th Cir. 2019) (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180–81 (6th Cir. 1983)). The public is entitled to "assess for itself" the merits of judicial decisions. *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016). "Without access to the [Complaint's exhibits], the public cannot analyze and critique the reasoning" of this Court in deciding to transfer this case to Wisconsin. Doc. 5 at 2–3 (citation omitted).

Second, as detailed above, Mr. Grundahl and Qualtim intentionally drew public attention to the Complaint's exhibits, such as by posting articles about this lawsuit online and distributing them via emails to participants in the truss industry nationwide. *Supra*, 3–4.

Third, in support of its amended motion to dismiss or transfer, Qualtim itself publicly filed a document depicting the "business model," Doc. 54-23 at 2, that it elsewhere has characterized and sought to seal as its "core" trade secret, *see Inspired Pursuits, LLC, et al., v. Paragon Component Sys. LLC, et al.*, No. 3:25-cv-00075 (W.D. Wis.), Doc. 1-2 at 18; *id*. at 19 ¶ 1; Doc. 1-4 at 6, 10; Doc. 2 (under seal) (Ex. M, State Court Document 17 at 11).

### D. *Qualtim has failed to meet its burden of proving that the Complaint's exhibits are trade secrets or otherwise warrant protection as confidential.*

Even if Qualtim had not waived the opportunity to seal the exhibits, it still has not established compelling reasons for sealing. In fact, Qualtim has made *no* genuine effort to support its motion factually, as is strictly required by this Court's standing order on sealing, Doc. 5.

### 1. <u>Qualtim bears a heavy burden to justify sealing the exhibits as trade secrets, even temporarily, but it has made no genuine effort to meet that burden</u>.

A motion to seal is governed by Rule 5.2: "The court may order that a filing be made under seal without redaction. The court may later unseal the filing or order the person who made the filing to file a redacted version for the public record." Fed. R. Civ. P. 5.2(d); *see Doe #1 ex rel. Lee v. Sevier Cnty., Tenn*. No. 3:17-CV-41, 2017 WL 1048378, at *2 (E.D. Tenn. Mar. 15, 2017). The party seeking to seal a document—here, Qualtim—bears a distinctly heavy burden. Doc. 5 at 2–3. "**[O]nly the most compelling reasons can justify non-disclosure of judicial records.**" *Id*. at 2 (quoting *Shane Grp.*, 825 F.3d at 305). "When faced with a request to seal, the reviewing court must 'balance the litigants' privacy interests against the public's right of access, recognizing our judicial system's strong presumption in favor of openness.'" *Id.* at 3 (quoting *Rudd Equip. Co. v. John Deere Constr. & Forestry Co*., 834 F.3d 589, 594 (6th Cir. 2016)).

One seeking to seal judicial records as trade secrets, even provisionally, must comply with this Court's "demanding" procedures. *Shane Grp.*, 825 F.3d at 308. "Court Records or portions thereof shall not be placed under seal unless and except to the extent that the person seeking the sealing thereof shall have *first* obtained, for good cause shown, an order of the Court specifying those Court Records, categories of Court Records, or portions thereof which shall be placed under seal." LR26.2(b) (emphasis added). Obtaining such an order requires the movant to specifically analyze in detail, document by document, and even line by line, the propriety of secrecy, "providing reasons and legal citations." *See Shane Grp.*, 825 F.3d at 305–06, 308; Doc. 5 at 3–4. Any sealing must be "selective" and "narrowly tailored." Doc. 5 at 2, 4. "At the very least, a party's assertion that information it seeks to seal constitutes legitimate trade secrets," as asserted here, "must be supported by an affidavit." Doc. 5 at 4. "Naked conclusory statements that disclosure will injure" a party cannot suffice. *Id.* (citing *In re Se. Milk Antitrust Litig.*, 666 F. Supp. 2d at 915). To find the facts, sometimes an evidentiary hearing is needed. *Id.*

Qualtim fails to meet these requirements. The sum total of its purported factual basis for sealing is the following unsupported sentence: "The parties were, at least to some extent, bound by a non-disclosure agreement, and the documents are clearly designated confidential and trade secrets." Doc. 74 at 4. That's it. Qualtim otherwise publicly submits, without any explanation, nearly entirely redacted copies of the exhibits. *See* Doc. 74-1 – Doc. 74-9. Qualtim's asserted bases for sealing off all this information are "brief, perfunctory, and patently inadequate." *See Shane Grp.*, 825 F.3d at 306.

Qualtim erroneously suggests that this Court may provisionally seal the exhibits indefinitely based on a mere "prima facie" showing, until a Wisconsin court can find the relevant facts. Doc. 74 at 4; *supra*, 3, 5. (Of course, Qualtim has not made even a prima facie showing here.) This directly contradicts this Court's well-established, mandatory procedures. "[D]ocuments

that are the subject of a motion to seal may be temporarily placed in the court record under seal pending a ruling on the motion." LR26.2(b). But by "temporarily," this Court means for a short time—days or perhaps weeks—until the movant has a reasonable opportunity to make the factual showing required to justify subsequent sealing.

In support of its errant position, Qualtim misleadingly asserts that this Court cannot adequately address the factual basis for sealing the eight exhibits as trade secrets without also deciding the merits of trade-secret claims that Qualtim has asserted in other lawsuits. Doc. 74 at 4; *supra*, 3–4. Qualtim has no trade-secret "claims" in *this* lawsuit. And all that is currently before *this* Court is the narrow, discrete issue of whether the exhibits to the Complaint at issue warrant being removed from this Court's public docket. Doc. 1-8 & Doc. 1-10 – Doc. 1-16. The standards for this are clear and strict. Doc. 5; LR 26.2. Instead of meeting them, Qualtim asks this Court to punt its own, non-delegable fact-finding responsibility to another court (in Qualtim's home forum).

The Court should deny the motion because Qualtim has come nowhere close to making its required factual or legal showing that the exhibits warrant sealing here as trade secrets.

 2. <u>Qualtim cannot show that the exhibits are protectable as trade secrets because Qualtim itself disclosed them publicly</u>.

Even if Qualtim had tried to make a proper factual showing here, it couldn't do it successfully. Before the Complaint was filed, Qualtim itself had publicly disclosed the exhibits.

Under any potentially applicable law, for a document to meet the definition of a "trade secret," the movant must prove that it made reasonable efforts to protect the document from public disclosure. "[G]enuine trade secrets are 'a very narrow category of records.'" 8A FED. PRAC. & PROC. CIV. § 2043 (3d ed. 2025) (citation omitted). A "trade secret" is, by definition, something that its owner has taken reasonable steps to keep "secret." *See* 28 U.S.C. § 1839(3) (defining "trade secret" as information "the owner thereof has taken reasonable measures to keep such information secret" and that "derives independent economic value, actual or potential, from not being generally

13
Case 1:24-cv-00246-CEA-CHS   Document 76   Filed 06/06/25   Page 13 of 19
PageID #: 1307

known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information"); Wis. Stat. Ann. § 134.90(1)(c) (defining "trade secret" as information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and that "is the subject of efforts to maintain its secrecy that are reasonable under the circumstances"); *accord* Miss. Code Ann. § 75-26-3(d); T.C.A. § 47-25-1702(4).

Thus, even if a document has competitive value, it cannot be a trade "secret," and so deserves no protection as such, unless its owner can show that it has taken reasonable steps to keep the document secret. *See DF Inst., LLC v. Dalton Educ., LLC*, No. 19-CV-452-JDP, 2020 WL 4597122, at *3 (W.D. Wis. Aug. 11, 2020) (stating information qualifies as a "trade secret" only if it has competitive value *and* its owner made reasonable efforts to keep it secret); *ProductiveMD, LLC v. 4UMD, LLC*, 821 F. Supp. 2d 955, 962 (M.D. Tenn. 2011) ("[B]y definition, a trade secret requires reasonable efforts to maintain secrecy."). It is Qualtim's burden to show this. *See Allergan, Inc. v. Revance Therapeutics, Inc.*, 711 F. Supp. 3d 873, 898–99 (M.D. Tenn. 2024); *Kuryakyn Holdings, LLC v. Ciro, LLC*, 242 F. Supp. 3d 789, 798 (W.D. Wis. 2017).

As detailed above and in earlier-filed briefs, by June 13, 2024—well before the Complaint was filed—the Grundahls had already sent the exhibits at issue directly to various persons who had no duty to keep the exhibits confidential. *Supra*, 2; Doc. 68 at 15–17; **Ex. E**, No. 3:25-cv-00170 (W.D. Wis.), Doc. 84. This included Paragon's attorneys (and their staff), all employees of Paragon (via its customer-support electronic address), or Clearspan executives Rob Eason and James Holland, neither of whom ever signed a confidentiality agreement with Qualtim. *See* Doc. 1-8; Doc. 1-10 – Doc. 1-16; Doc. 67-2 at 1–2; Doc. 67-3 at 1–2; **Ex. A**, No. 3:25-cv-00170 (W.D. Wis.), Doc. 87 at 1–2; **Ex. B**, No. 3:25-cv-00170 (W.D. Wis.), Doc. 88 at 1–2. Nor did Paragon's

attorneys agree to keep confidential the correspondence that Mr. Grundahl voluntarily sent to them. **Ex. G**, No. 3:25-cv-00170 (W.D. Wis.), Doc. 84-3 at 1.

It follows that, as of June 13, 2024, none of the exhibits could properly be classified as a "trade secret" or otherwise "confidential." Qualtim had not taken reasonable measures to keep them secret and, in fact, had voluntarily distributed them publicly. *See, e.g., Fail-Safe, LLC v. A.O. Smith Corp.*, 674 F.3d 889, 892 (7th Cir. 2012); *ChampionX, LLC v. Resonance Sys., Inc.*, 726 F. Supp. 3d 786, 804–05 (E.D. Tenn. 2024). Because the exhibits cannot meet the definition of a trade secret, they cannot warrant sealing as such.

Nor has Qualtim even tried to prove that the exhibits' information "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 28 U.S.C. § 1839(3); *see* Wis. Stat. Ann. § 134.90(1)(c); Miss. Code Ann. § 75-26-3(d); T.C.A. § 47-25-1702(4). This too is fatal to its motion to seal.

Qualtim suggests, without any legal support, that voluntarily disclosing a document labeled "confidential" or "trade secret" automatically imposes a duty on the recipient to keep it secret, despite the absence of a protective order or confidentiality agreement. Doc. 74 at 4; *see Shane Grp.*, 825 F.3d at 305 (contrasting protective orders under Federal Rule of Civil Procedure 26 with orders sealing documents under Rule 5.2); Doc. 5 at 1 (same). To the contrary, merely labeling something "confidential" does not make it a trade secret. *See Union Oil*, 220 F.3d at 567. "[A] party cannot create a trade secret simply by labeling it so, or even by signing a contract designating it so." *Audio Visual Innovations, Inc. v. White*, No. 1:13-CV-102, 2013 WL 12109434, at *5 (W.D. Mich. Feb. 26, 2013); *accord, e.g., Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d

410, 438 n.24 (S.D.N.Y. 2019); *Camilotes v. Resurrection Healthcare*, No. 10 C 366, 2012 WL 2192168, at *1 n.1 (N.D. Ill. June 14, 2012); 1 INFORMATION LAW § 5:30 (Nov. 2024).[5]

Moreover, even if Qualtim could establish that the Complaint's exhibits are trade secrets or otherwise confidential, it wouldn't matter. As explained above, Qualtim has waived or forfeited any such protection by allowing the exhibits to remain in this Court's public docket for almost 10 months before moving to seal them, while directing public attention to them. *Supra*, 8–11. As already explained, a "trade secret" is, by definition, something that its owner has taken reasonable steps to keep "secret." 28 U.S.C. § 1839(3); *see* Wis. Stat. Ann. § 134.90(1)(c); Miss. Code Ann. § 75-26-3(d); T.C.A. § 47-25-1702(4). For the same reasons that Qualtim has forfeited or waived its ability to seal the exhibits, it has also permanently forfeited or waived any trade secret or confidential status that the exhibits might once have had (if ever).

This is because a "trade secret that becomes public knowledge *is no longer a trade secret*." *BondPro Corp. v. Siemens Power Generation, Inc.*, 463 F.3d 702, 706 (7th Cir. 2006) (emphasis added); *accord MP TotalCare Servs., Inc. v. Mattimoe*, 648 F. Supp. 2d 956, 967 (N.D. Ohio 2009). "Because of the intangible nature of a trade secret, the *extent of the property right therein* is defined by the *extent to which the owner of the secret protects his interest from disclosure to others*." *Ruckelshaus v. Monsanto Co*., 467 U.S. 986, 1002 (1984) (emphasis added). "Information that is public knowledge or that is generally known in an industry *cannot be a trade secret*. If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, *his property right is extinguished*." *Id.* (citations omitted & emphasis added).

---

[5] Qualtim has used similar boilerplate "confidential" labels in the footers of other documents that it publicly disclosed. A recent google search for "Qualtim" and "DTSA" or "confidential or "trade secret," for example, yielded numerous publicly available Qualtim-related documents that are similarly labeled as "Confidential Intellectual Property" and the like. *See* **Ex. F**, No. 3:25-cv-00170 (W.D. Wis.), Doc. 84-3 at 1–3; *compare id. with* Doc. 1-8 – Doc. 1-17.

Here, Qualtim allowed any property right that it might once have had (if any) in the exhibits as trade secrets to be extinguished. It did so not only by voluntarily disclosing the exhibits publicly and by directing public attention to them, but also by allowing them to remain in the public record for almost 10 months while making no effort to seal them.

**III.     Conclusion.**

Even if Qualtim's motion were unopposed, Sixth Circuit precedent and this Court's standing order would still require this Court to "make specific findings on the record that the public's interest in access is outweighed by specific and compelling harm which would result if the information at issue were" not sealed and "explain 'why the seal itself is no broader than necessary.'" Doc. 5 at 4 (quoting *Rudd Equip.*, 834 F.3d at 595 & *Shane Grp.*, 825 F.3d at 306). This same standard applies equally to requests to seal permanently and requests to seal temporarily (or indefinitely, as Qualtim requests). Because Qualtim has failed to make its required showing, and has otherwise forfeited or waived any right to insist on confidentiality protection, the Court should deny the motion.

Due to the motion's deficiencies, the Court may validly deny the motion based on the papers alone. Alternatively, if it is deemed appropriate, the Court should hold an evidentiary hearing.

Respectfully submitted this 6th day of June 2025.

*s/* Stephen E. Kabakoff

Stephen E. Kabakoff, GA Bar No. 143164,
*appearing pro hac vice*
MILLER & MARTIN PLLC
1180 W. Peachtree Street, NW
Suite 2100
Atlanta, Georgia 30309
Telephone: (404) 962-6100
Stephen.Kabakoff@millermartin.com

17

<u>s/ Robert F. Parsley</u>

James T. Williams, TN BPR 16341
Robert F. Parsley, TN BPR 23819
Erin E. Steelman, TN BPR 38463
MILLER & MARTIN PLLC
832 Georgia Avenue, Suite 1200
Chattanooga, TN 37402-2289
Telephone: (423) 756-6600
James.Williams@millermartin.com
Bob.Parsley@millermartin.com
Erin.Steelman@millermartin.com

*Attorneys for Plaintiff Paragon Component Systems, LLC*

# CERTIFICATE OF SERVICE

I certify that on June 6, 2025, a copy of the foregoing Brief is being served on all counsel of record by electronically filing it via the Court's filing system.

                    <u>s/ Robert F. Parsley</u>

                    Stephen E. Kabakoff, GA Bar No. 143164, *appearing pro hac vice*
                    MILLER & MARTIN PLLC
                    1180 W. Peachtree Street, NW
                    Suite 2100
                    Atlanta, Georgia 30309
                    Telephone: (404) 962-6100
                    Stephen.Kabakoff@millermartin.com

                    James T. Williams, TN BPR 16341
                    Robert F. Parsley, TN BPR 23819
                    Erin E. Steelman, TN BPR 38463
                    MILLER & MARTIN PLLC
                    832 Georgia Avenue, Suite 1200
                    Chattanooga, TN 37402-2289
                    Telephone: (423) 756-6600
                    James.Williams@millermartin.com
                    Bob.Parsley@millermartin.com
                    Erin.Steelman@millermartin.com

                    *Attorneys for Plaintiff Paragon Component Systems, LLC*