**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| PARAGON COMPONENT SYSTEMS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:24-cv-00246-CEA-CHS |
| | ) | |
| QUALTIM, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER PLACING DOCUMENTS UNDER SEAL

Under 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(a), Plaintiff Paragon Component Systems, LLC ("Paragon") respectfully objects to the Magistrate Judge's order placing certain documents under seal, Doc. 93 (Aug. 18, 2025). The Court should hold that it was clear error and contrary to law for the Magistrate Judge to seal electronically filed documents that this Court had expressly relied on to order the transfer of this case to Wisconsin, Doc. 73, when the Defendants had voluntarily allowed the documents to remain public for months (up to and including the entry of this Court's transfer order) without making any effort to seal them. Indeed, the Defendants themselves had shared the documents without protection before this lawsuit was filed, themselves publicly filed their alleged "core" trade secret in support of their own transfer motion, and otherwise called the electronically filed documents to the public's attention—all before asking for sealing.

## I.     Factual and Procedural Background.

### A.     *Defendants distributed correspondence to persons who had no duty to keep it confidential, which was filed as factually relevant exhibits to the Complaint.*

Paragon authored code for software applications for the truss industry. Doc. 51-1 at 2–3, 9. To help Paragon understand and validate engineering calculations, certain Defendants provided

consulting services. *Id.* at 4–6. In 2024, however, as Paragon was about to offer its software applications more fully to licensees, Defendant Kirk Grundahl and his Defendant engineering consulting companies contended that those companies have ownership rights in the software code created by Paragon, including the right to share in licensing profits. *Id.* at 7–9. Paragon disagreed. *Id.* This dispute resulted in the exchange of letters, a memo, and emails from January to June 2024 between Mr. Grundahl, his wife Ms. Grundahl (a company officer), Paragon's attorneys, and third persons. *Id.* at 8; Doc. 1 at 11–12.[1]

On July 23, 2024, Paragon filed this declaratory-judgment action to determine and protect its rights in the software. Doc. 1. With its Complaint, Paragon filed authentic copies of the letters and Qualtim's position memo, which set out Qualtim's ownership demands and the reasons for them. Doc. 1-8 – Doc. 1-17; Doc. 67-2 at 1–2. The content of this correspondence generated the underlying dispute, sets out the parties' respective pre-litigation contentions, and is so essential to the Complaint that it could not be understood without referring to the correspondence. Before this lawsuit was filed, Mr. Grundahl and Ms. Grundahl had sent this correspondence directly to persons who had no duty to keep it confidential, whether per common law or a confidentiality agreement, including Paragon's counsel (and staff) and third persons, such as all Paragon employees and third-party Clearspan company executives Rob Eason and James Holland. Doc. 1-8; Doc. 1-10 – Doc. 1-16; Doc. 67-2 at 1–2; Doc. 67-3 at 1–2; Doc. 76-1, No. 3:25-cv-00170 (W.D. Wis.), Doc. 87 at 1–2; Doc. 76-2, No. 3:25-cv-00170 (W.D. Wis.), Doc. 88 at 1–2; Doc. 80-1 at 6. Although he labeled his demand letters "confidential," Mr. Grundahl admits that in May 2024 he

---

[1] For ease of reference, this brief Paragon refers to all Defendants together as "Qualtim."

forwarded communications that became exhibits to the Complaint directly to Mr. Eason, who had no confidentiality agreement or any other duty to keep the secret. Doc. 81-1 (email).[2]

   B.   *Instead of moving to seal the exhibits, Qualtim intentionally publicized them.*

The Complaint and its exhibits were publicly filed on July 23, 2024. After Qualtim's counsel appeared soon thereafter, Qualtim did not object or move the Court to place the exhibits under seal. Nor did Qualtim then voice any concerns about the Complaint's exhibits to Paragon's counsel. This was the case even though, in an August 23, 2024, email to his original attorneys, which Mr. Grundahl voluntarily disclosed in support of the motions to seal, Mr. Grundahl expressly states that he had concerns about the disclosure. Doc. 80-1 at 7; Doc. 81-1 at 13.

About three months later, on October 11, 2024, Qualtim moved to file *other* documents under seal in support of its motion to dismiss or transfer, without seeking to seal the Complaint's exhibits. Doc. 29; Doc. 29-1 – Doc. 29-15 (redacted copies); Doc. 30. These documents included meeting notes, agenda, employee timesheets, and invoices, some of which addressed the very same subject matter as the Complaint's exhibits. After an in-person evidentiary hearing on November 13, 2024, the Magistrate Judge *denied* Qualtim's motion to seal. Doc. 39; Doc. 43; Doc. 45. The Magistrate Judge found "that the contents of the proposed redactions are neither trade secrets on their face, nor is *any evidence* before the Court that Defendant[s] ha[ve] undertaken reasonable efforts in conducting its business to protect them as trade secrets." Doc. 45 at 2 (emphasis added).

Qualtim was permitted to refile its motion to dismiss or transfer without the supporting documents. Doc. 45 at 2. On November 26, 2024, Qualtim did so. Doc. 49; Doc. 50. Yet Qualtim

---

[2] Following this case's transfer from this Court to the Western District of Wisconsin, Doc. 73, this action was assigned case No. 3:25-cv-00170. Docket numbering in Wisconsin is consecutive to the transfer order, Doc. 73 (beginning with 74). Because post-transfer filings here in the Eastern District of Tennessee are also numbered consecutively to that order (also beginning with 74), for clarity Paragon includes the case number for documents filed post-transfer in Wisconsin.

also publicly filed an unredacted version of an operating agreement for Inspired Pursuits, LLC, Doc. 50-5. Then, with its reply brief, Qualtim filed publicly, without redaction, some of the very *same* documents it had formerly tried to seal as containing "trade secrets." *Compare, e.g.*, Doc. 29-9 (Ex. 10, redacted invoice #37820) *with* Doc. 54-3 (Ex. 3, unredacted invoice #37820); *compare* Doc. 29-10 (Ex. 11, redacted invoice #43468) *with* Doc. 54-4 (Ex. 4, unredacted invoice #43468). Qualtim also publicly filed a depiction of the "business model" that it elsewhere has moved to seal as its purported "core" trade secret, which is what the Complaint's exhibits address. *Compare* Doc. 54-23 at 2 *with Inspired Pursuits, LLC, et al., v. Paragon Component Sys. LLC, et al.*, No. 3:25-cv-00075 (W.D. Wis.), Doc. 1-2 at 18; *id.*, Doc. 1-2 at 19 ¶ 1; *id.*, Doc. 1-4 at 6, 10; *id.*, Doc. 2 (under seal) (Ex. M, State Court Doc. 17 at 11). Qualtim has admitted that it *itself* "filed some of the exhibits publicly in support of other filings" by Qualtim, which it sought to go back and seal months later. Doc. 80 at 3; Doc. 81 at 3.

Meanwhile, in October 2024, Mr. Grundahl intentionally drew public attention to Paragon's Complaint and its exhibits by posting self-written articles about the litigation on Qualtim's website (which disparaged Paragon and its owner, John Holland, including by calling him a criminal) and by emailing the content of these articles to dozens or hundreds of truss-industry participants nationwide. *See* Doc. 53-1 at 1–4; Doc. 53-2 – Doc. 53-4. Remarkably, these Grundahl-authored articles themselves describe the very "business model" Qualtim now says is its "core" trade secret that it seeks to protect through sealing. Doc. 53-2; *Inspired Pursuits, LLC, et al., v. Paragon Component Sys. LLC, et al.*, No. 3:25-cv-00075 (W.D. Wis.), Doc. 1-2 at 18–19; id., Doc. 1-4 at 6, 10. Mr. Grundahl also sent these disparaging emails directly to Paragon's prospective clients, which caused it to lose potential business. Doc. 53-1 at 1–4.[3]

---

[3] Paragon has moved to amend its Complaint to assert a tortious interference claim due to Mr. Grundahl's intentional misconduct. Doc. 52; Doc. 53.

On December 30, 2024, the parties' counsel, including Ms. May La Rosa, discussed over the phone whether the Complaint's exhibits contain confidential information and should be sealed, Doc. 67-1 ¶ 2, but Qualtim still did not move to seal the exhibits. During that call, Qualtim's counsel stated its view that the exhibits were confidential and suggested that Qualtim might seek some kind of sanction. Paragon's counsel responded that this is a disputed issue and that Qualtim was welcome to file a motion to seal the documents. Qualtim's statement that "Defendants attempted to reach an agreement with Paragon regarding the unsealed trade secrets" is inaccurate, and Qualtim's counsel did not ask Paragon to move to seal them as Qualtim's brief mistakenly suggests. *See* Doc. 80 at 4. Qualtim's counsel never followed up with Paragon's counsel about their December 30 discussion, nor did Qualtim file a motion to seal. Qualtim's contention that its "concerns fell flat," Doc. 80 at 4; Doc. 81 at 6, and its "delay" in addressing the exhibit's public status was "due to the complexities of court procedure," Doc. 80 at 5; Doc. 82 at 5, are factually unsupported and inaccurate. Nothing impeded Qualtim from moving to seal the exhibits anytime it wanted.[4]

### C. Qualtim sued Paragon's counsel in Wisconsin for not filing the exhibits in this Court under seal, and Paragon asked this Court to address their docket status.

By January 2025, the Complaint's exhibits had been in the public record for over six months. During all that time, despite having every opportunity to do so, Qualtim never moved to seal the documents, never otherwise objected to this Court, and never further inquired with Paragon's counsel whether Paragon would agree not to oppose a motion to seal the Complaint's exhibits.

---

[4] Qualtim's suggestion that it made attempts to retract the public disclosure through discussions with Paragon and their counsel are also inaccurate. *See* Doc. 80 at 6. There was no discussion directly with Paragon, and Qualtim's counsel did not ask Paragon's counsel to seal the documents or otherwise propose an agreement.

5

Then, on January 31, 2025—after having knowingly and intentionally waited over half a year—Qualtim filed a federal lawsuit in Wisconsin against Paragon's counsel in *this* case (Miller & Martin PLLC and its individual attorneys), alleging that they had "misappropriated" Qualtim's trade secrets by filing the Complaint's exhibits publicly in this case, over six months earlier. Doc. 65-3; *see Qualtim, Inc. v. Miller & Martin PLLC, et al.*, No. 25-cv-00073 (W.D. Wis.). Remarkably, Qualtim *still* did not move this Court to seal the exhibits.

On February 13, 2025, counsel again conferred about whether the Complaint's exhibits, which relate directly to the subject-matter of Paragon's declaratory-judgment claims, contain protectable confidential information. Doc. 67-1 ¶ 3. On February 26, 2025, as the Magistrate Judge observed, Doc. 93 at 2, *Paragon* (not Qualtim) moved this Court to declare whether the exhibits should be under seal. Doc. 67; Doc. 68. The exhibits to the Complaint, though labeled as confidential and trade secrets, had been sent directly to persons who had no obligation to keep them confidential and had not been proved to contain trade secrets. And Qualtim had acquiesced for over six months in their inclusion in the public record. It even filed some of the same information itself to support its motion to dismiss or transfer and called public attention to the documents through its separate lawsuit over them—all still without asking *this Court* to seal the documents.

> D.  *After transfer, the Western District of Wisconsin ruled that only this Court can decide whether exhibits in the Eastern District of Tennessee's docket should be under seal.*

On March 6, 2025, before Paragon's motion concerning sealing was fully briefed, the Court transferred this case to the Western District of Wisconsin. Doc. 73. Paragon's pending motion, Doc. 67, went along. In its response in the Western District of Wisconsin on March 11, 2025, Qualtim asked—for the first time—that the Complaint's exhibits, which by then were publicly available in both districts, be sealed as "alleged trade secrets." Doc. 76-3, No. 3:25-cv-00170

(W.D. Wis.), Doc. 75 at 3–4; Ex. D, No. 3:25-cv-00170 (W.D. Wis.), Doc. 76 at 3–4. Paragon opposed the sealing request. Ex. E, No. 3:25-cv-00170 (W.D. Wis.), Doc. 84.

On April 8, 2025, the Western District of Wisconsin decided the motion. Doc. 74-6, No. 3:25- cv00170 (W.D. Wis.), Doc. 98. Though Qualtim had made no showing that the documents were trade secrets, it sealed the Complaint's exhibits, which had been on its ECF docket for a short time, only provisionally and temporarily pending discovery about whether Qualtim really had any trade secrets. The Western District of Wisconsin did so based on a "prima facie" showing, without definitively applying the Seventh Circuit's standards for sealing. It held that unredacted exhibits should be sealed in its docket "at least for now when the case is still at its relatively early stages and the confidential status of the documents is still the subject of discovery and in dispute." Doc. 76-6, No. 3:25-cv-00170 (W.D. Wis.), Doc. 98. at 1. "[T]here is good cause to seal the exhibits at this time…. This prima facie showing that the exhibits may contain sensitive information is sufficient at this stage in the case…. The legitimacy of any exhibit's confidential or trade secret designation may be fairly debated at some point in the future" when "a sufficient factual record is developed." *Id.* at 5. It sealed the exhibits only "at this juncture. The status may evolve as the case progresses depending on the development of the evidentiary record." *Id*.

However, the Western District of Wisconsin made clear that its sealing order applies *only* to the Complaint's exhibits as they are maintained in the *Western District of Wisconsin's docket*: "Complaint exhibits A–J, Dkts. 1-8–17, shall be sealed on *this* court's docket. This order does *not order the Eastern District of Tennessee* or any Wisconsin state court *to handle the exhibits in question in any particular way*—the parties will need to seek orders *directly from those courts*." Doc. 76-6, No. 3:25-cv-00170 (W.D. Wis.), Doc. 98 at 6 (emphasis added).

The Western District of Wisconsin thus held that, although it could decide whether to seal documents contained in its *own* electronic docket, only the Eastern District of Tennessee could properly decide whether the Complaint's exhibits as still maintained in the Eastern District of Tennessee's electronic docket after transfer should be placed under seal. Out of comity and necessity, the Western District of Wisconsin deferred that sealing decision to *this* Court, along with the related question whether Qualtim had waived or forfeited its opportunity to ask for the exhibits to be sealed.

     E.     *Ten months after the Complaint's exhibits were filed publicly, Qualtim first moved this Court to put them and other publicly filed documents under seal.*

On May 23, 2025, 10 months after the Complaint's exhibits had been publicly filed, and six weeks after the Western District of Wisconsin had entered its order, Qualtim for the *first* time asked this Court to seal the Complaint's exhibits in the Eastern District of Tennessee, which remained in this Court's public ECF record. Doc. 74. On June 3, 2025, Qualtim filed a second motion to seal, asking this Court to seal other documents that had been in the public record for months. Doc. 75. Qualtim did so even though Qualtim *it* had already publicly filed some of the very same information, as briefly explained below. And those documents were among those that this Court considered or had the opportunity to consider in ordering the transfer of this case. Doc. 73.

First, eight months earlier, on October 11, 2024, Qualtim voluntarily filed publicly (in support of its motion to dismiss or transfer) some of the very same information it now sought to seal. *See* Doc. 29-9 (partially redacted invoice #37820); Doc. 29-10 (partially redacted invoice #43468); Doc. 75 at 1. In fact, the Magistrate Judge had *already* denied Qualtim's motion to seal the proposed redacted portions of those same documents. Doc. 45. The Magistrate Judge had then found, as to these very same documents, Doc. 29-9 and Doc. 29-10, that the "contents of the proposed redactions are neither trade secrets on their face, nor is any evidence before the Court

that [Qualtim] has undertaken reasonable efforts in conducting its business to protect them as trade secrets." Doc. 45 at 2.[5] In asking to seal the documents, Qualtim essentially asked the Magistrate Judge to partially reverse its prior holding (that the invoices do not warrant sealing).

Second, remarkably, on December 17, 2024, in support of its amended motion to dismiss or transfer, Qualtim voluntarily filed an unredacted depiction and explanation of the very "business model" that it says is its "core" trade secret, to which all other alleged trade secrets relate. Doc. 54-23; *see, e.g.*, *Inspired Pursuits, LLC, et al., v. Paragon Component Sys. LLC, et al.*, No. 3:25-cv-00075 (W.D. Wis.), Doc. 1-2 at 18; *id.*, Doc. 1-2 at 19 ¶ 1; *id.*, Doc. 1-4 at 6, 10; *id.*, Doc. 2 (under seal) (Ex. M, State Court Doc. 17 at 11); *see also* No. 3:25-cv-00170, Doc. 107 (motion to seal); Doc. 107-8 (completely redacted version of Doc. 54-23).

Third, also on December 17, 2024, in support of its amended motion to dismiss or transfer, Qualtim further filed unredacted versions of three additional exhibits. *See* Doc. 54-20 (2023 Slack channel chat between Kirk Grundahl, Dan Holland, and others); (Doc. 54-21 (an email from 2019 among John Holland, Suzanne Grundahl, and others); Doc. 54-22 (2023 emails among the Grundahls, Qualtim employees, Dan Holland, and a third person).

Paragon opposed the motions to seal, which offered no legitimate factual basis for the requested sealing, were entirely unsupported, and applied incorrect law. *See* Docs. 76 & 77. For the first time in reply, Qualtim submitted voluminous factual materials to support its motions. Docs. 80–83. Paragon was granted leave to file a sur-reply to address the belatedly filed information. Docs. 86 & 88. Argument was held on July 18, 2025. Doc. 85. On August 18, 2025, the Magistrate Judge entered an order, Doc. 93, sealing documents that had been in the public

---

[5] The Magistrate Judge had given Qualtim leave to amend its motion to dismiss or transfer to file the invoices publicly in unredacted form, if it wished. Doc. 45 at 2. On December 17, 2024, Qualtim did so, choosing to voluntarily file *unredacted* versions of the two invoices in this Court's public docket. *See* Doc. 54-3 (unredacted invoice #37820); Doc. 54-4 (unredacted invoice #43468); *cf*. Doc. 29-9; Doc. 29-10.

record for months, including exhibits to the Complaint that this Court had expressly relied on to order the transfer of this case to Wisconsin, Doc. 73.

## II.     Argument.

### A.     Standards of review.

The Magistrate Judge's order sealing documents is a non-dispositive pretrial order. Doc. 93. With exceptions not relevant here, a district judge "may designate a magistrate judge to hear and determine any pretrial matter pending before the court." 28 U.S.C. § 636(b)(1)(A). A district judge "may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." *Id*. "A party may serve and file objections to the order within 14 days after being served with a copy." Fed. R. Civ. P. 72(a). "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id*. "This standard requires the District Court to review findings of fact for clear error and to review matters of law de novo." *See Bisig v. Time Warner Cable, Inc*., 940 F.3d 205, 219 (6th Cir. 2019) (citation omitted). An "order is 'contrary to the law' when it 'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Id*. Respectfully, the Court should overrule the Magistrate Judge's order that placed the exhibits to the Complaint and other documents under seal. *See* Doc. 93.

### B.     Even after transfer, this Court has jurisdiction to decide whether to seal documents maintained in its own electronic case file, and this issue is necessarily governed by Sixth Circuit law.

As an initial matter, the Court should hold that the Magistrate Judge ruled contrary to law by relying on Seventh Circuit law to decide whether electronic records maintained in *this district* post-transfer should be sealed. Doc. 93 at 2–3 (finding "Seventh Circuit caselaw controlling"). An "order is 'contrary to the law' when it 'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *See Bisig*, 940 F.3d at 219 (citation omitted). This issue is reviewed de novo.

*Bisig*, 940 F.3d 205, 219. As Paragon previously explained, Sixth Circuit law governs the sealing issue. Doc. 76 at 8. The Court should overrule the Magistrate Judge's ruling and hold that Sixth Circuit law governs Qualtim's motions to seal electronic documents maintained in this district.

Whenever a case is transferred, "[j]urisdiction follows the file." *Miller v. Toyota Motor Corp.*, 554 F.3d 653, 654 (6th Cir. 2009) (citation omitted). This means "that the one court loses jurisdiction and the other court gains it when a case file physically moves between courts." *Jackson v. Sloan*, 800 F.3d 260, 261 (6th Cir. 2015). This is so regardless of the basis for transfer, whether under 28 U.S.C. § 1404 or (as here) under 28 U.S.C. § 1406 or 28 U.S.C. § 1631. This transfer of jurisdiction occurs "as soon as the transferee court … dockets the case." *Jackson*, 800 F.3d at 261.[6]

In this district, the official case record is maintained electronically, not in paper. *See* Electronic Case Filing R. & Procs. (E.D. Tenn.), §§ 8 & 11.1 "[E]lectronic case files do not exist only in a single location." *ABF Freight Sys., Inc. v. McMillian*, No. 17-2324-JWL, 2018 WL 4154014, at *1 n.1 (D. Kan. Aug. 30, 2018). "The physical case file has much diminished significance, if any significance at all, in an era where both the transferor and transferee districts employ the same Electronic Case Filing ('ECF') system and can transmit files electronically." *SPEC Int'l, Inc. v. Pat. Rts. Prot. Grp., LLC*, No. 1:08-CV-662, 2009 WL 104195, at *1 n.2 (W.D. Mich. Jan. 14, 2009). This means that, since the transfer, *both* the transferor court (this Court) and the transferee court (the Western District of Wisconsin) have maintained this district's official case file—as it existed on the date of transfer—electronically in PACER.

---

[6] Some courts have held that transfer is complete, and jurisdiction transferred, only when the *physical* files—stacks of paper in carboard boxes—have been received by the transferee court. *See, e.g., Integrated Health Servs. of Cliff Manor, Inc. v. THCI Co., LLC*, 417 F.3d 953, 957 (8th Cir. 2005) ("[O]ur circuit takes the view that the physical receipt of the file in the transferee court is the event that signals the end of jurisdiction in the transferor court."). The Sixth Circuit's more current rule, that jurisdiction shifts to a transferee court upon its docketing of the transferred case, applies equally to paper and electronic files. *See Jackson*, 800 F.3d at 261.

No rule required or permitted this district to delete its electronic case file upon transfer. *Cf.* 28 U.S.C. § 457 (duty to maintain files); Fed. R. Civ. P. 79(a) (similar). Thus, even after this case was transferred, the Eastern District of Tennessee has continued to properly maintain its own electronic file for this case, as it existed up to and on the date of transfer (Mar. 6, 2025). And this Court has necessarily retained its inherent supervisory power over those files. *See In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 474 (6th Cir. 1983). "'[E]very court has supervisory power over its own records and files ....'" *In re Se. Milk Antitrust Litig.*, 666 F. Supp. 2d 908, 915 (E.D. Tenn. 2009) (quoting *Nixon v. Warner Comms., Inc.*, 435 U.S. 589, 598 (1978)).

Recognizing this, the Western District of Wisconsin narrowly tailored its own sealing order to govern only the electronic files maintained in its *own* docket: "Complaint exhibits A-J, Dkts. 1-8–17, shall be sealed on *this* court's docket. This order does *not* order the *Eastern District of Tennessee* or any Wisconsin state court to handle the exhibits in question in any particular way— the parties will need to seek orders *directly from those courts*." Doc. 76-6, No. 3:25-cv-00170 (W.D. Wis.), Doc. 98 at 6 (emphasis added). The Western District of Wisconsin thus did not purport to order this district court to seal any records maintained here, nor could it have properly done so. *See* 28 U.S.C. § 132(a) (district courts are separate); *United States v. Pickard*, 733 F.3d 1297, 1301 (10th Cir. 2013) ("Defendants must seek redress for their injury—the inability to use this sealed information—through a motion to the court that sealed the documents, asking that court to unseal them."); *Censke v. Calhoun Cnty. Jail*, No. 5:03-CV-171, 2007 WL 2323594, at *1 (W.D. Mich. Aug. 13, 2007) (district court cannot tell an appellate court to seal its records); *cf. Camreta v. Greene*, 563 U.S. 692, 709 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").

It follows that, notwithstanding this case's transfer to Wisconsin, this transferor court necessarily retains jurisdiction to exercise control over its *own* electronic files for this case. This differs fundamentally from exercising control over the case's merits or continuing procedure. It is like when a district court retains jurisdiction over various ancillary matters while an appeal is pending. *See Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 626 (6th Cir. 2013). It is also consistent with the settled principle that every court maintains inherent supervisory power over its own records and files. *In re Knoxville News-Sentinel Co.*, 723 F.2d at 474; *In re Se. Milk Antitrust Litig.*, 666 F. Supp. 2d at 915. Just as this supervisory power does not end when a final judgment is entered, *Grae v. Corr. Corp. of Am.*, 134 F.4th 927, 931 (6th Cir. 2025), it also does not properly end when a case has been transferred to another district. Qualtim's motions to seal, filed in this Court, are thus addressed to this Court's continuing supervisory power over its own records.

The motions to seal are thus necessarily governed by the law of the Sixth Circuit, where this district court sits. When, as here, a case has been transferred from a district court in one circuit to a district court in another circuit under 28 U.S.C. § 1406, the *transferee* court applies the federal law of its own circuit—in Wisconsin, the Seventh Circuit. *See Flynn v. Greg Anthony Constr.* Co., 95 F. App'x 726, 732 n. 5 (6th Cir. 2003); *Fuller v. FCI-Manchester Health Serv.*, No. CV 6:16-54-DCR, 2016 WL 1389768, at *3 (E.D. Ky. Apr. 7, 2016). But contrary to the Magistrate Judge's ruling, Doc. 93 at 2–3, transfer cannot properly have the rebound effect of sending Seventh Circuit law down to this district court to govern its maintenance of its own ECF files. In deeming Seventh Circuit law controlling, the Magistrate Judge's order cites no authority, and its ruling is contrary to binding precedent. The general rule still applies that this "district court is bound by the decisions of the Circuit Court of Appeals in which it sits"—the Sixth Circuit. *See Nettles v. Midland Funding LLC*, 530 F. Supp. 3d 706, 715 (E.D. Mich. 2021). When it comes to maintaining case files in this district, "out of circuit case law is not binding upon this Court." *Cf. id.*

To hold otherwise would require this Court to learn and apply the law of all other federal circuits, as cases are from time to time transferred elsewhere, just to know how to exercise its own inherent authority to manage its own electronic case files. Such a rule would contravene cross-circuit institutional comity, the separateness of district courts, and standard procedures for managing cases within a federal district. It would also be impracticable, burdensome, and unwise.

Accordingly, for the reasons above, the Court should overrule the Magistrate Judge's ruling and hold that Sixth Circuit law governs Qualtim's motions to seal electronic documents that are maintained in this district.

C.     *The Magistrate Judge clearly erred by sealing the Complaint's exhibits and other documents*

By "deferring" to the Western District of Wisconsin's sealing order, the Magistrate Judge's order clearly errs in four ways. First, this Court cannot properly defer to a decision that the Western District of Wisconsin did *not* make—whether Qualtim waived or forfeited its opportunity to ask for them to be sealed. It was out of comity that the Western District of Wisconsin did *not* decide that issue, reserving it for decision by *this* Court. Second, regardless of whether Sixth Circuit or Seventh Circuit law applies, under the circumstances, sealing the Complaint's exhibits and other documents is clear error because it is too late to do so properly; Qualtim waived its ability to seek retroactive sealing through its intentional delay. *See* Fed. R. Civ. P. 72(a); *Bisig*, 940 F.3d at 219. Third, it was clear error to seal the documents at issue when Qualtim failed to comply with this Court's procedures to properly substantiate its motions. Fourth, for the same reasons Qualtim waived its ability to put the documents under seal, it cannot prove that it took reasonable steps to protect their confidentiality. To the extent these issues involve questions of law, they are reviewed de novo. *Bisig*, 940 F.3d at 219.

1. <u>The Magistrate Judge clearly erred by sealing documents in deference to a decision the Western District of Wisconsin did not make</u>.

It was clear error for the Magistrate Judge to defer, out of comity, to the Western District of Wisconsin on the question whether it is too late to seal the Complaint's exhibits and other documents in this Court's own records due to Qualtim's forfeiture or waiver:

> In the interests of comity, judicial economy, and judicial consistency, this Court concludes that deferring to the Wisconsin District Court with respect to the management of the sealing of documents under Seventh Circuit caselaw is the proper course of action. The Wisconsin court has already commenced that process with its order allowing sealing "at this juncture." If this Court were to analyze the documents and decline to seal some of the documents, it would defeat the utility of the Wisconsin District Court's decision to seal those documents.

Doc. 93 at 3. The Western District of Wisconsin, also out of comity, *never* decided this question. Doc. 76-6, No. 3:25-cv-00170 (W.D. Wis.), Doc. 98. Instead, considering the short time the Complaint's exhibits had been in the public file in *its* docket, the Western District of Wisconsin decided only to provisionally and temporarily seal the Complaint's exhibits until the question of whether they perhaps contained trade secrets could be further litigated. *Id*. It deferred to *this Court* the question of whether the months-long inclusion of the Complaint's exhibits in the public record in *this* district (where they had been filed), including this Court's reliance on those documents to decide its transfer order, *e.g.*, Doc. 73 at 3, 8–11, amounts to a forfeiture or waiver of the ability to retroactively seal the Complaint's exhibits. Doc. 76-6, No. 3:25-cv-00170 (W.D. Wis.), Doc. 98 at 6. Even if the Western District of Wisconsin could have properly decided that question, it never did. It did not even analyze this issue substantively.

By deferring to the Western District of Wisconsin on that point, also without offering any substantive analysis of either the Sixth Circuit's or the Seventh Circuit's law governing the sealing of public documents, the Magistrate Judge's order places the documents under seal without providing any studied basis for doing so, as required by this Court's standing order concerning the sealing of court filings. Doc. 5. This is clear error for two reasons.

First, the decision whether to seal a document under Federal Rule of Civil Procedure 5.2(d) is up to a court's discretion. *See Grae*, 134 F.4th at 931–32. As this Court's own standing order on sealing documents makes clear, Doc. 5, judges nonetheless *lack* the discretion to place a previously public document under seal without *independently* analyzing the standards governing sealing and concluding that a "compelling" case for sealing has been made. Based on both the common law and the First Amendment, which afford the public the presumptive right to view all judicial records, *id*. at 2, a "district court's determination on the sealing of its own record is 'not insulated from review merely because the judge has discretion in this domain. The [d]istrict [c]ourt's *discretion is circumscribed* by a long-established legal tradition.'" *In re Knoxville News-Sentinel Co., Inc*., 723 F.2d 470, 473–74 (6th Cir. 1983) (quoting *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1177 (6th Cir. 1983) (emphasis added)). Even an agreed or "an unopposed motion to file under seal is an insufficient basis to justify sealing court records in a civil case; a court has an *independent obligation* to determine whether the interests in favor of sealing outweigh the public's right of access to court records." Doc. 5 at 3 (citing *Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co*., 834 F.3d 589, 593 (6th Cir. 2016) (emphasis added)).

A court thus abuses its discretion by sealing a document publicly available in its case file, which the court has relied on to render a judicial decision—the quintessential definition of a "judicial record," without first concluding there are "compelling reasons" for doing it. Doc. 5 at 2 (quoting *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich*., 825 F.3d 299, 305 (6th Cir. 2016)).[7] The party seeking sealing, here Qualtim, bears a "heavy burden" to show compelling reasons and must support its request in detail. Doc. 5 at 2, 5. The court must tailor any sealing narrowly. *Id.*

---

[7] "[A] document counts as a judicial record, for purposes of the presumption of access, when it is 'filed with the objective of obtaining judicial action or relief' or otherwise plays 'a role in the adjudicative process.'" *Grae*, 134 F.4th at 931 (citation omitted).

The Western District of Wisconsin's sealing order does not conduct any such analysis, even though the same kind of analysis is required under Seventh Circuit law. Doc. 76-6 (citing Seventh Circuit standards); *see* Doc. 76-5 (same); *see also, e.g., City of Greenville, Ill. v. Syngenta Crop Prot., LLC*, 764 F.3d 695, 697 (7th Cir. 2014); *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999); *Grove Fresh Distribs., Inc. v. Everfresh Juice Co*., 24 F.3d 893, 897–99 (7th Cir. 1994) (demanding standard for good cause to seal). Nor does the Magistrate Judge's order, which simply defers to the Western District of Wisconsin's order. Doc. 93. Respectfully, this is clear error, especially insofar as neither court found facts concerning or addressed the question posed here: whether, under the law governing sealing, it was too late to seal the judicial records that this Court had already relied on in deciding to transfer this case.

Sealing without first necessarily deciding whether Qualtim had waived or forfeited its ability (which is amply supported factually) to ask for sealing further amounts to clear error. "A federal court must exercise the jurisdiction given it," which includes addressing issues necessary to decide pending motions. *C.f. Brown v. Yost*, 122 F.4th 597, 602 (6th Cir. 2024) (discussing virtually unflagging obligation to exercise jurisdiction). The question whether Qualtim waived or forfeited its opportunity to seek to seal the documents at issue is inextricable from deciding whether to seal them. *See* Doc. 76 at 8–11. This is because this Court's reliance on the Complaint's exhibits and other documents in deciding to transfer this case has rendered them "judicial records" the public has common-law and constitutional rights to view. The Magistrate Judge could not properly seal these judicial records without determining whether it is too late or otherwise improper to do so.

2.     <u>The Magistrate Judge clearly erred by not concluding that Qualtim waived its opportunity to ask for sealing</u>.

For argument's sake, assume that the exhibits to the Complaint contain properly protected trade secrets and that it was an error in judgment to conclude they need not or should not be filed under seal with the Complaint. (These are legal conclusions that Paragon disputes.) Even were that so, the Court should hold that, under the circumstances, it was clear error to seal them and the other documents at issue. This is because Qualtim, by its own intentional choices and conduct, waived its opportunity to seek to place them under seal, and the public now has the right to view them.

It is a "well-established principle of American jurisprudence that the release of information in open trial is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its further use." *Nat'l Polymer Prods., Inc. v. Borg-Warner Corp.*, 641 F.2d 418, 421 (6th Cir. 1981); *accord, e.g.*, *Doe v. Lockwood*, 89 F.3d 833, at *4–5 (6th Cir. 1996) (table); *Kines v. Ford Motor Co*., No. 119CV01054JDBJAY, 2021 WL 1328475, at *4 (W.D. Tenn. Apr. 9, 2021); *Milwaukee Elec. Tool Corp. v. Snap-On Inc*., 288 F. Supp. 3d 872, 910 (E.D. Wis. 2017); *Jones v. Lacey*, 108 F. Supp. 3d 573, 584 (E.D. Mich. 2015). Just as a party "may waive the attorney-client or work product privilege 'by conduct which implies a waiver of the privilege or a consent to disclosure,'" *Genesco, Inc. v. Visa U.S.A., Inc*., 302 F.R.D. 168, 194–95 (M.D. Tenn. 2014), a party may also forfeit or waive the opportunity to place a publicly available document under seal.

First, as set out above, before this lawsuit was filed, the Grundahls, despite labeling the communications later exhibited to the Complaint "confidential and trade secret," sent their underlying position memo directly to persons who had no duty to keep it confidential. Similarly, Mr. Grundahl's later demand letters were sent directly to Paragon's counsel and subsequently forwarded by Mr. Grundahl to other persons with no duty to keep the information confidential. Most of the correspondence had been labeled by Qualtim as "confidential" or as stating

"[C]onfidential intellectual property (IP) and trade secrets (TS) is [sic] protected by Defend Trade Secrets Act 2016." *See, e.g.*, Doc. 1-8 at 1; Doc. 1-10 at 1. But using such conclusory labels does not make a voluntarily shared document "confidential" or impose any duty on the recipient. And the Grundahls sent the correspondence directly to persons who had no duty to keep it confidential, whether by common law or per a confidentiality agreement, including Paragon's counsel (and staff) and third persons, such as all Paragon employees or Clearspan executives Rob Eason and James Holland. Doc. 1-8; Doc. 1-10 – Doc. 1-16; Doc. 67-2 at 1–2; Doc. 67-3 at 1–2; Doc. 76-1, No. 3:25-cv-00170 (W.D. Wis.), Doc. 87 at 1–2; Doc. 76-2, No. 3:25-cv-00170 (W.D. Wis.), Doc. 88 at 1–2; Doc. 80-1 at 6. Mr. Grundahl even admits that in May 2024 he forwarded communications that became exhibits to the Complaint to Mr. Eason, an officer of Clearspan, who had no duty to keep them confidential. Doc. 81-1.

Importantly, these communications had not been exchanged in discovery, but rather, occurred before this lawsuit was filed. The letters themselves are the *facts* that precipitated this lawsuit, and their content is essential for understanding the Complaint. Merely labeling them confidential or trade secret did not, as Qualtim apparently presumes, impose a duty of confidentiality on anyone and everyone to whom Mr. Grundahl sent communications. The exhibits were factually central to the Complaint, needed to be submitted, and did not meet this district's strict standards for sealing. *See* Doc. 5.

Second, after this lawsuit was filed, Qualtim waited far too long—six to 10 months—to move any court to seal the Complaint's exhibits. The Complaint and its exhibits were filed on July 23, 2024. Doc. 1. The Qualtim defendants were promptly served, and their original counsel appeared on August 12, 2024. Docs. 11–13. Shortly after July 24, 2024, Qualtim thus knew that the exhibits to the Complaint had been filed publicly. *See supra*. If Qualtim believed they should be under seal, it could have, and should have, promptly moved to seal the documents.

But Qualtim and its counsel (soon replaced by current counsel) did none of this. Instead, they kept quiet about any concerns Qualtim may have had, saying nothing about it either to Paragon's counsel or to the court, while the Complaint's exhibits remained in the public record. Even when, in October 2024, Qualtim moved (unsuccessfully) to file other documents (containing some of the very same information) under seal in support of its motion to dismiss, Qualtim did not include the Complaint's exhibits in their request or even mention them at the hearing. Doc. 29; Doc. 30; Doc. 41; Doc. 45. Around the same time, Mr. Grundahl directly called public attention to the Complaint and its still-publicly-available exhibits via his public internet postings and the related emails that he chose to distribute widely to third persons in the truss industry, which disparaged Paragon and its owner and expressly referenced this lawsuit. *See* Doc. 53-1 at 1–4; Doc. 53-2 – Doc. 53-4. And as Qualtim admits, when it served its own interests, Qualtim *itself* publicly filed in ECF the same information included in the Complaint's exhibits, including the "business model" that Qualtim claims is its "core" trade secret. *See supra*.

Later, on December 30, 2024, Qualtim's counsel conferred with Paragon's counsel, finally voicing concerns to Paragon about the public status of the exhibits. *See supra*. Paragon's counsel then suggested that, if Qualtim truly believed the exhibits should be under seal, it should move to seal them, and Paragon would consider whether to oppose the motion. *Id.* But Qualtim's counsel never followed up on that suggestion. Instead, waiting another month, on January 31, 2025, Qualtim filed a separate lawsuit directly against Paragon's *counsel* in this action, contending that by filing the exhibits publicly they had somehow "misappropriated" Qualtim's trade secrets. Not long after that, *Paragon, not Qualtim*, asked this Court to declare whether the Complaint's exhibits should be under seal. *See supra*. Paragon contended they should not be sealed, for all the reasons stated here. Qualtim has never offered a plausible explanation for its delay. Given its long

awareness of the exhibits' public status, Qualtim's failure to take action to seal the exhibits could only be characterized as knowing and intentional.

One who contends that information has been improperly filed in public must act reasonably promptly to remedy it, else it loses any right it may have to confidentiality. *See, e.g.*, *Neogen Corp. v. Innovative Reprod. Tech., LLC*, No. 419CV00330RGESHL, 2022 WL 1518924, at *2 (S.D. Iowa Jan. 14, 2022) (waiver by waiting 10 months to move to seal electronically filed information); *Craddock v. LeClairRyan*, No. 3:16-CV-11, 2019 WL 2437460, at *6 (E.D. Va. June 11, 2019) (waiver by waiting 36 days to file a motion to seal after arbitration award had been made public)); *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 288 F. Supp. 872, 910 (E.D. Wis. 2017) (waiver when transcript allowed to remain public "for nearly a month" before moving to redact); *cf., e.g.*, *LifeBio, Inc. v. Eva Garland Consulting, LLC*, 672 F. Supp. 3d 512 (S.D. Ohio 2023) (waiver of privilege based on delays); *Talismanic Props., LLC v. Tipp City, Ohio*, 309 F. Supp. 3d 488, 495 (S.D. Ohio 2017) (waiver when "approximately two months" passed before assertion of privilege). Contrary to Qualtim's position, it makes no difference who placed the information in the public record. The fact that the documents at issue were exhibits to Paragon's Complaint does not justify Qualtim's improper gamesmanship: filing the same information itself publicly when it suited it; engaging in a negative publicity campaign against Paragon by using and calling public attention to the same information; and filing a separate lawsuit against Paragon's attorneys for filing the Complaint in *this* action—all without making any attempt to seal the exhibits.[8]

Third, and most importantly, Qualtim's choice not to move to seal the exhibits allowed this *Court* to cite and to rely on the Complaint's exhibits for purposes of deciding Qualtim's motion to transfer. Order, Doc. 73 at 3, 8–11. The Complaint's exhibits thus became part and parcel of

---

[8] In a declaration, Mr. Grundahl also improperly insinuates that Paragon's counsel seek an unfair advantage in this district due because several sitting judges have prior connections to Miller & Martin. Doc. 82-1 at 7.

"judicial records" to which the public has the most unassailable rights of access. "[A] document counts as a judicial record, for purposes of the presumption of access, when it is 'filed with the objective of obtaining judicial action or relief' or otherwise plays 'a role in the adjudicative process'"—as here. *See Grae*, 134 F.4th at 933; Doc. 5 at 1–2. The public has a right to read such records because it has a vested interest in knowing what "evidence and records" the district court has relied on in reaching its decisions. *In re Nat'l Prescription Opiate Litig*., 927 F.3d 919, 939 (6th Cir. 2019) (quoting *Brown & Williamson*, 710 F.2d at 1180–81; Doc. 5 at 4. This is because the public is entitled to "assess for itself" the merits of the judicial decision. *Shane Grp.*, 825 F.3d at 305. "Without access to the [Complaint's exhibits], the public cannot analyze and critique the reasoning" of this Court in deciding to transfer this case to Wisconsin. Doc. 5 at 2–3 (citation omitted). This openness is fundamental to our system of government. It was clear error and an abuse of discretion to seal the Complaint's exhibits after Qualtim had relied on the same information to seek transfer and this Court had expressly relied on the exhibits to grant it.[9]

3.     <u>It was clear error to seal the Complaint's exhibits and other documents when Qualtim did not comply with this Court's procedures for sealing documents.</u>

Qualtim failed to comply with this Court's procedures in two ways, each of which independently warrants denying the motions to seal.

First, in their skeletal opening briefs, Qualtim provided no factual basis, nor even any specific arguments, for why the documents should be sealed. Doc. 74; Doc. 75. Qualtim bore the heavy burden of showing compelling reasons for sealing the documents. Doc. 5 at 2. Only in their reply briefs, to which Paragon did not have the right to respond, did Qualtim submit factual materials and argument. *See* Docs. 80–83. Paragon objected to this improper procedure in a

---

[9] As explained above, the exhibits are factually central to the Complaint, and Qualtim itself publicly filed its own alleged "core" trade secret, its "business model," to support its request for dismissal or transfer (relief it obtained).

surreply. Doc. 88 at 2–3. The Court should have stricken the materials filed for the first time in reply and denied the motions on this procedural ground alone.

Second, Qualtim never attempted to explain how the specific content in each of the exhibits warrants sealing, nor has it correlated its arguments with specific portions of the exhibits, relying instead on generalities and disordered and inapposite comments, apparently expecting the Court to put it all together. *See* Docs. 80–83. Obtaining a sealing order requires the movant to specifically analyze in detail, document by document, and even line by line, the propriety of secrecy, "providing reasons and legal citations." *See Shane Grp.*, 825 F.3d at 305–06, 308; Doc. 5 at 3–4. Any resulting sealing must be "selective" and "narrowly tailored." Doc. 5 at 2, 4. Because Qualtim did not even try to make this detailed showing in an organized and comprehensible way, the Magistrate Judge clearly erred by sealing the exhibits. *See In re FCA US LLC Monostable Elec. Gearshift Litig.*, 377 F. Supp. 3d 779, 784–85 (E.D. Mich. 2019) (denying motion to seal when movant "made no effort to analyze or explain with particularly, page by page, or line by line, how the various items of information in the 90-plus-page [documents] … qualify as matters that are protected by any extant statutory or decisional authority that would permit sealing" and "even if some of the information could be regarded as 'trade secrets,' the public interest in disclosure of it weighs heavily against granting the request for sealing ….").

Neither of these grounds for denial require the Court to determine whether Qualtim has proved that the Complaint's exhibits and other documents are trade secrets or are otherwise confidential. They are purely procedural defaults.

4.  The Magistrate Judge clearly erred by not holding that Qualtim had failed to take reasonable measures to protect the information in the Complaint's exhibits.

To the extent Qualtim contends, and might even prove, that the exhibits genuinely contain trade secrets or other confidential information (they don't), it nonetheless failed to meet its burden of showing that it had made reasonable efforts to *protect* them. A "trade secret" is, by definition,

23

something that its owner has taken reasonable steps to keep "secret." *See* 28 U.S.C. § 1839(3); Wis. Stat. Ann. § 134.90(1)(c); T.C.A. § 47-25-1702(4); *DF Inst., LLC v. Dalton Educ., LLC*, No. 19-CV-452-JDP, 2020 WL 4597122, at *3 (W.D. Wis. Aug. 11, 2020) (stating information qualifies as a "trade secret" only if it has competitive value *and* its owner made reasonable efforts to keep it secret); *ProductiveMD, LLC v. 4UMD, LLC*, 821 F. Supp. 2d 955, 962 (M.D. Tenn. 2011). For all the facts and reasons explained above concerning Qualtim's waiver of the ability to seal the exhibits, Qualtim has not shown and cannot show that it made reasonable efforts to protect the information. It was clear error not to deny the motions to seal on this basis.

**III.    Conclusion**

Respectfully, the Court should overrule the Magistrate Judge's order sealing the Complaint's exhibits and other documents.

Respectfully submitted this 2nd day of September 2025.

<div style="margin-left:40%">

*s/* Stephen E. Kabakoff

Stephen E. Kabakoff, GA Bar No. 143164,
*appearing pro hac vice*
MILLER & MARTIN PLLC
1180 W. Peachtree Street, NW
Suite 2100
Atlanta, Georgia 30309
Telephone: (404) 962-6100
Stephen.Kabakoff@millermartin.com

James T. Williams, TN BPR 16341
Erin E. Steelman, TN BPR 38463
MILLER & MARTIN PLLC
832 Georgia Avenue, Suite 1200
Chattanooga, TN 37402-2289
Telephone: (423) 756-6600
James.Williams@millermartin.com
Erin.Steelman@millermartin.com

*Attorneys for Plaintiff Paragon Component Systems, LLC*

</div>

## CERTIFICATE OF SERVICE

I certify that on September 2, 2025, a copy of the foregoing Brief is being served on all counsel of record by electronically filing it via the Court's filing system.

*s/* Stephen E. Kabakoff

Stephen E. Kabakoff, GA Bar No. 143164,
*appearing pro hac vice*
MILLER & MARTIN PLLC
1180 W. Peachtree Street, NW
Suite 2100
Atlanta, Georgia 30309
Telephone: (404) 962-6100
Stephen.Kabakoff@millermartin.com

James T. Williams, TN BPR 16341
Erin E. Steelman, TN BPR 38463
MILLER & MARTIN PLLC
832 Georgia Avenue, Suite 1200
Chattanooga, TN 37402-2289
Telephone: (423) 756-6600
James.Williams@millermartin.com
Erin.Steelman@millermartin.com

*Attorneys for Plaintiff Paragon Component Systems, LLC*