# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

PARAGON COMPONENT SYSTEMS, LLC,

              Plaintiff,

v.

QUALTIM, INC., et al.,

              Defendants.

Civil Action No. 1:24-cv-00246-CEA-CHS

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE'S ORDER SEALING DOCUMENTS

Defendants Qualtim, Inc., et al. ("Defendants"), by and through undersigned counsel, respectfully move the Court to deny Plaintiff's Objections (Doc. 100) to Magistrate Judge Steger's Order (Doc. 93) placing certain documents under seal. Defendants further request that the Court affirm the Magistrate's sealing Order in full and grant appropriate relief under the Defend Trade Secrets Act of 2016 ("DTSA"), including measures to preserve the confidentiality of Defendants' trade secrets. As set forth below, Plaintiff's Objection (Doc. 100) fails to show that the Magistrate Judge's well-reasoned Order is "clearly erroneous or is contrary to law" (Fed. R. Civ. P. 72(a)), and the relief Plaintiff seeks would undermine the DTSA's mandate to protect trade secrets.

## I.    Introduction and Factual Background

On July 23, 2024, Plaintiff Paragon Component Systems, LLC ("Paragon") filed this action along with several exhibits containing Defendants' confidential business information. These exhibits – letters, emails, and memos detailing aspects of Defendants' proprietary business model and trade secrets – were filed publicly as attachments to the Complaint (Docs. 1-8, 1-10 through 1-16, 29-9, 29-10, 54-3, 54-4, 54-20, 54-21, 54-23, and 54-25). Notably, much of this

correspondence was labeled "Confidential" by Mr. Kirk Grundahl and shared only with parties to the dispute, yet Paragon placed it on the public docket without protective measures. Neither Paragon nor the Court took steps at that time to comply with Congress' directive in the Defend Trade Secrets Act that "the court may not authorize or direct the disclosure of any information the owner asserts to be a trade secret unless the court allows the owner the opportunity to file a submission under seal." 18 U.S.C. § 1835(b). The statute further confirms that disclosure of a trade secret in litigation does not waive protection absent the owner's express consent.

Defendants moved on October 1, October 11, and October 25, 2024 to seal confidential documents (Docs. 22, 29, 38, 41). Plaintiff consistently opposed those motions. The Court ultimately denied sealing at that time, noting that the "horse was out of the barn." The resulting delay in sealing was attributable to Plaintiff's opposition, not to any lack of diligence by Defendants, and stands in tension with 18 U.S.C. § 1835's mandate that courts preserve confidentiality of asserted trade secrets.

For over seven months after filing, no party obtained a seal on these exhibits; they remained openly accessible from July 2024 until late February 2025. During that period, information about Defendants' business activities, which had previously been private, became public solely because of Plaintiff's unilateral filing. The request for sealing was not in Defendants' control, and they were forced to focus on defending the case while objecting to disclosure of their confidential materials. The July 23, 2024 filing caused damage that could not be fully undone, underscoring why 18 U.S.C. § 1835 requires courts to prevent such disclosures in the first place.

Mr. Grundahl's declaration detailed why those documents contained confidential strategic data and trade secrets (Doc. 29-1). The Magistrate Judge initially denied sealing under the Sixth Circuit's standard, finding the evidence at that time insufficient to show the materials qualified as

trade secrets or had been tightly protected (Doc. 45). In compliance with that ruling, Defendants re-filed their motion without the contested exhibits and, to avoid delay, even filed certain invoices unredacted despite concern over their sensitive contents. Defendants complied with the Court's procedures while consistently objecting to public disclosure of their proprietary information.

By late 2024, Defendants escalated efforts to safeguard their trade secrets in the appropriate forum. On January 31, 2025, Qualtim and related parties filed a separate lawsuit in the Western District of Wisconsin against Paragon's attorneys, alleging that Paragon's public filing of Exhibits A–J to the Complaint constituted misappropriation of Defendants' trade secrets. This filing reflected Defendants' consistent position that the information at issue was confidential and that its unprotected disclosure was improper. When Paragon later raised the sealing issue before this Court on February 26, 2025 (via a "Motion to Determine Whether Exhibits to Complaint Should be Under Seal," Doc. 67), it acknowledged Defendants had asserted the exhibits were trade secrets in light of the Wisconsin action.

Paragon's February 2025 motion demonstrates that the delay in sealing was attributable to Paragon's litigation choices and the case's jurisdictional posture, not to any neglect by Defendants. Paragon's counsel certified that he conferred with Defendants' counsel about sealing the Complaint's exhibits and filed a Motion to Provisionally Seal certain exhibits (Doc. 69) "out of an abundance of caution" while a final determination was pending. In that motion, Paragon admitted it "believe[d] it is important" to address sealing and therefore sought to have the exhibits sealed, at least temporarily. Paragon also acknowledged that Defendants had raised the matter in a discovery conference and were pursuing relief in Wisconsin, confirming Defendants' consistent efforts to protect their confidential information.

Before the sealing question could be adjudicated, the case was transferred. On March 6, 2025, this Court (Atchley, J.) transferred the action to the Western District of Wisconsin for lack of personal jurisdiction over certain Defendants (Doc. 49). Pursuant to 28 U.S.C. § 1631, the transfer order provided that the case would proceed as if originally filed in Wisconsin. Shortly thereafter, the Wisconsin court (No. 3:25-cv-00170) addressed the sealing issue. On April 8, 2025, it entered an order sealing the Complaint's exhibits "at this juncture," i.e., provisionally, pending a fuller trade-secret analysis. The court noted that although the exhibits had been public in Tennessee for some time, they had been on the Wisconsin docket only briefly, and were therefore sealed temporarily.

In light of the Wisconsin court's actions, Defendants promptly returned to this Court to secure parallel protection for the same documents in the E.D. Tennessee docket. In July 2025, Defendants filed two motions (Docs. 74 and 75) seeking to seal specified Complaint exhibits and related filings. The Magistrate Judge (Hon. Christopher H. Steger) held a hearing on July 18, 2025, at which all parties had the opportunity to present evidence and argument. On August 18, 2025, Judge Steger issued an Order granting the motions to seal (Doc. 93). The Order mirrored the Wisconsin court's decision, invoking comity, judicial economy, and consistency as reasons to defer to the transferee court's handling of these trade-secret materials (Doc. 93, p. 3). The Magistrate explained that unsealing documents already sealed in Wisconsin would "defeat the utility" of that court's decision. Accordingly, the Order directed that the specified exhibits and filings "shall be SEALED" in this Court's record, aligning with the Wisconsin court's protective measures.

Plaintiff has filed Objections (Doc. 100) under Fed. R. Civ. P. 72(a) to Magistrate Judge Steger's sealing Order (Doc. 93). Paragon argues that the Order was "clearly erroneous and

4

contrary to law" on four grounds: (1) that Judge Steger applied Seventh Circuit rather than Sixth Circuit law; (2) that Defendants "waived" any right to seal by allowing the documents to be public for months; (3) that Defendants' motions were procedurally deficient because detailed justifications were submitted on reply; and (4) that Defendants failed to take reasonable steps to protect the information as trade secrets. None of these contentions has merit. The Magistrate Judge's approach was legally sound, procedurally fair, and consistent with the posture of this case and federal policy favoring protection of trade secrets. Plaintiff's Objection simply repeats arguments already considered and rejected by Judge Steger.

Because the Order was not clearly erroneous or contrary to law, it should be upheld and Plaintiff's requested relief denied. Defendants further request that the Court confirm the continued sealed status of these materials, including all exhibits to Paragon's original complaint (Doc. 1), and grant any additional relief deemed appropriate to protect Defendants' trade secrets under 18 U.S.C. § 1835 or Fed. R. Civ. P. 26(c).

## II. Legal Standard

Under 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a), a district judge may modify or set aside a magistrate judge's order on a non-dispositive matter only if it is "clearly erroneous or is contrary to law." This is a deferential standard: the magistrate's findings should be affirmed unless the reviewing court is left with a definite and firm conviction that a mistake has been made. Sealing of documents is a non-dispositive pretrial matter subject to this standard. In applying Rule 72(a), legal conclusions are reviewed de novo, but discretionary determinations, such as whether to seal documents, are reviewed for clear error or abuse of discretion. *See Shore v. Fed. Express Corp.*, 42 F.3d 373, 380 (6th Cir. 1994) ("abuse of discretion exists when the reviewing court is

5

firmly convinced that a mistake has been made"). The question here is whether Judge Steger's decision to seal was outside the bounds of his discretion or contrary to law. It was not.

## III. Argument

### A. The Magistrate Judge Properly Harmonized Proceedings with the Transferee Court Pursuant to 28 U.S.C. § 1631 and Principles of Comity – No Clear Error of Law

Judge Steger's Order to seal the documents was grounded in the procedural posture of this case. After transfer under 28 U.S.C. § 1631, the Western District of Wisconsin became the court "actively presiding" over the merits, and Seventh Circuit law governs as if the case had been originally filed there. Section 1631 expressly provides that upon a transfer for want of jurisdiction, "the action or appeal shall proceed as if it had been filed in… the court to which it is transferred" on the original filing date. *See Moore v. Rohm & Haas Co*., 446 F.3d 643, 647 (6th Cir. 2006) (transferee court's law governs after transfer); *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1176–77 (D.C. Cir. 1987) (same; comity favors consistency). Consistent with this authority, the Magistrate Judge correctly observed that "this case proceeds as though originally filed in the Wisconsin District Court with Seventh Circuit case law controlling sealing" (Doc. 93, p. 3). In short, once the case was transferred, the transferee forum's standards governed how the records should be treated. That conclusion flows directly from § 1631 and promotes the consistency the statute was designed to ensure.

Paragon argues that Judge Steger should have applied Sixth Circuit law to the sealing question because the electronic files are housed in a Tennessee court docket. This argument elevates form over substance and disregards the realities of the transfer. The Magistrate's Order was motivated by considerations of "comity, judicial economy, and judicial consistency." Those are appropriate factors, particularly where two courts might otherwise issue conflicting rulings on

the same set of documents. By the time of Judge Steger's ruling, the Wisconsin court had already begun sealing under Seventh Circuit law and had temporarily sealed the documents "at this juncture." Judge Steger reasonably concluded that conducting a separate Sixth Circuit analysis and potentially unsealing documents already sealed in Wisconsin would "defeat the utility" of that court's decision. His approach mirroring the Wisconsin court's interim ruling and deferring the ultimate merits determination was a sound exercise of discretion that avoided inconsistent outcomes and respected the transferee court's authority.

Nothing in the law forbids a transferor court from deferring to a transferee court's handling of a case post-transfer. Such deference promotes "cross-circuit comity" and the "separateness of district courts" by ensuring that each court does not interfere with the other's management of the case. And as the Supreme Court has recognized, "the right to inspect and copy judicial records is not absolute," particularly where disclosure would interfere with other legal interests. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978).

While direct precedent addressing this precise circumstance is limited, Judge Steger's approach is fully consistent with § 1631 and the principle that transferee law governs after transfer. At a minimum, it was a reasonable interpretation of an unsettled procedural issue. It is not "contrary to binding precedent" as Paragon claims, and Paragon cites no case requiring a transferor court to disregard the transferee court's directives regarding confidentiality. Given the deference owed to a magistrate's determinations under Rule 72(a), this alone is sufficient to reject Paragon's objection.

B.    The Sealing Order Upholds the Defend Trade Secrets Act's Mandate to Protect Confidentiality and Should Not Be Disturbed

The Magistrate Judge's ruling is supported by the Defend Trade Secrets Act's strong mandate to preserve confidentiality in litigation. Congress directed that a court "may not authorize or direct the disclosure of any information the owner asserts to be a trade secret unless the court allows the owner the opportunity to file a submission under seal." 18 U.S.C. § 1835(b). Legislative history confirms this safeguard was intended to prevent undue exposure of trade secrets and to ensure that disclosure in litigation does not constitute waiver absent the owner's express consent. *See Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978) (recognizing trade secrets as a basis to deny public access); *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 225 (6th Cir. 1996) (confidential commercial information justifies sealing). In short, Congress instructed federal courts to err on the side of protecting trade secrets and confidential business information.

Judge Steger's Order faithfully implements this mandate. Defendants have consistently asserted the documents at issue to be trade secrets or confidential commercial information: ranging from correspondence labeled "Confidential" by Mr. Grundahl, to early motions to seal, to the separate DTSA lawsuit filed in Wisconsin concerning their disclosure. Section 1835 required the Court to take "appropriate measures" to protect the confidentiality of that material, which is precisely what the sealing Order does. The Magistrate Judge's decision was required by statute and consistent with federal law. To undo the sealing now and allow public access would directly undermine § 1835's purpose. Paragon's objection seeks a result at odds with the DTSA's protective mandate, which was an outcome Congress plainly intended to prevent.

The circumstances here illustrate why § 1835 exists. Defendants did not voluntarily publicize their trade secrets in a way that would forfeit protection. Rather, the key exhibits were

8

unilaterally publically filed in court by the Plaintiff on July 23, 2024. (i.e. without notice or communication with Defendants) As such, this was clearly without Defendants' express consent. Obviously, it follows that Defendants would object to any unilateral dissemination of information that Defendants prominently designated as confidential. Defendants took the steps available to them, including seeking relief in multiple courts. Under DTSA principles, such unilateral disclosure by an opposing party should not be held against the trade secret owner. The statute was designed to prevent a party from destroying trade-secret status by filing materials publicly and then claiming it is "too late" to protect them. Yet, that is the tactic Paragon advances here. The Court should reject it, consistent with the DTSA and basic fairness. Section 1835(b) expressly contemplates that even if information is submitted in litigation, the owner may preserve secrecy. Defendants have done so, and the Magistrate correctly granted relief. It is Paragon's actions, and that of its knowledgeable legal professionals, which caused the sealing process to occur much later than DTSA mandates. Upholding the sealing Order reinforces that trade secrets will be protected in federal court, as Congress intended, and that a party cannot gain a tactical advantage by prematurely filing another's confidential materials.

C.    Paragon's Own Delay and Conduct Caused the Public Disclosure of the Information – Paragon Cannot Now Claim Prejudice or "Waiver"

Paragon's Objection argues that Defendants "waited too long" to seek sealing and thereby waived their rights. The record shows otherwise. It was Paragon who filed the disputed materials unsealed in July 2024, despite being aware that Defendants considered them confidential; Mr. Grundahl had labeled all of his demand letters "Confidential." Paragon then allowed those exhibits to remain on the public docket for seven months. At no point in 2024 did Paragon suggest sealing its own Complaint exhibits, even as Defendants moved in October 2024 to seal documents.

9

Paragon actively opposed that motion (Doc. 38), and in November 2024 the Magistrate denied sealing at that time, finding an insufficient showing of trade secret (Doc. 45). Following that ruling, Paragon still took no steps to protect any part of the record.

In December 2024, after the Magistrate had denied sealing other materials and as Defendants continued to raise concerns, Defendants' counsel formally pressed Paragon's counsel about the publicly filed exhibits.[1] Even then, Paragon did not act immediately. By its own admission, it was February 2025 before Paragon filed a motion to determine whether Exhibits A through J should be under seal (Doc. 67), along with a Motion to Provisionally Seal (Doc. 69). These motions came seven months after the Complaint was filed. Paragon filed them not primarily to protect Defendants' information, but "out of an abundance of caution" given Defendants' pending trade-secret lawsuit (*See Qualtim, Inc. v. Miller & Martin PLLC, et al*., Case No. 25-CV-73, W. Dist. Wisc.; Doc. 65-3.), and the issue being raised with that Court. In doing so, Paragon implicitly recognized that the exhibits should have been filed under seal in the first instance.

Its current stance that sealing is improper is inconsistent with its February 2025 position that the Court should consider sealing the exhibits. This Court should not permit such inconsistency.

In light of this history, equity forecloses Paragon's waiver argument. If waiver applies at all, it is Paragon that waived objection to sealing by waiting six months and then itself moving, albeit conditionally, to seal the exhibits. Paragon's assertion that Defendants "intentionally

---

[1] Paragon's own motion papers confirm that on December 30, 2024, Paragon attorneys James Williams and Bob Parsley "*conferred with counsel for Defendants, May de La Rosa (sic), concerning the parties' respective positions concerning the public status of the exhibits to the Complaint.*" In other words, on December 30, Ms. La Rosa, on behalf of the Defendants, met with Paragon's lawyers to insist that the previously filed exhibits be treated as confidential and placed under seal.

publicized" the information is unsupported. The record shows Defendants consistently regarded the information as confidential, while Paragon treated it as appropriate for public filing until late in the process. Courts have recognized that a trade secret owner's failure to immediately seek a seal does not automatically destroy confidentiality, particularly where delay results from the opposing party's conduct or other litigation needs. *See Littlejohn v. BIC Corp.*, 851 F.2d 673, 685 (3d Cir. 1988) (trade secrets retain protection even if filed in court); *Shane Group, Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 310 (6th Cir. 2016) (remedy is tailored sealing, not forfeiture); *In re Knoxville News-Sentinel*, 723 F.2d 470, 476 (6th Cir. 1983) (balancing favors protection despite initial access). Even a belated sealing order can preserve secrecy.

Defendants asserted their confidentiality rights in multiple ways during the alleged delay. They did not sit idle; they sought relief in Wisconsin against Paragon's counsel for the disclosure, repeatedly pressed the issue, and raised it with this Court through its actions as soon as was practicable. These actions are inconsistent with any intentional relinquishment or abandonment of a known right, the definition of waiver. To penalize Defendants for not obtaining a seal sooner would reward Plaintiff's lack of diligence and create inappropriate incentives: a party could disclose an opponent's trade secrets, delay any protective order, and then argue that later protection is "too late." The Court should reject that reasoning. Defendants' pursuit of sealing once jurisdictional issues were resolved demonstrates diligence in the face of procedural complications, not waiver.

In sum, Paragon's waiver argument fails. The Magistrate Judge was aware of the timeline and implicitly found that Defendants had not lost their right to seek sealing. By granting sealing, he necessarily concluded that confidentiality remained worth protecting despite the earlier public availability. That conclusion was reasonable. Having created the issue through its own filing

11

practices, Paragon cannot credibly claim prejudice from the solution (sealing), which it itself proposed in February 2025.

D. The Magistrate Judge's Procedural Handling of the Sealing Motions Was Fair and Does Not Justify Disturbing the Order

Paragon argues that Defendants' motions to seal (Docs. 74 & 75) were "skeletal" and lacked detailed evidentiary support. Even assuming that were so, it provides no grounds for reversal. The Magistrate Judge had discretion to manage the briefing and consider supplemental materials, and Paragon suffered no prejudice warranting vacatur of the Order. *See Shane Group*, 825 F.3d at 305–06 (sealing decisions require compelling reasons and narrow tailoring, but procedure is flexible); *In re Knoxville News-Sentinel*, 723 F.2d at 476–77 (district court has discretion to protect confidentiality despite procedural posture).

Defendants' motions were concise because they sought to align with sealing already granted by the Wisconsin court. The motions noted that all the documents at issue "were sealed by the Wisconsin District Court (at least temporarily)" after transfer. Defendants then supplemented their position with reply submissions, including sworn declarations and exhibits (Docs. 80–83) detailing the trade-secret nature of the documents and the harm from disclosure. Paragon exercised its right to respond by filing a Motion for Leave to File Sur-Reply (Doc. 88), specifically objecting to Defendants' additional reply materials and arguments. Judge Steger permitted and considered that sur-reply during the July 18, 2025 hearing, thereby eliminating any possible prejudice.

Paragon's own objection acknowledges that oral argument occurred on July 18, confirming it had a full and fair opportunity to be heard. That acknowledgment undermines any suggestion that the process was rushed, one-sided, or prejudicial. The Magistrate could either disregard new evidence filed on reply or accept it with a sur-reply; he chose the latter course, ensuring both sides

12

were fully heard. Nothing indicates that Judge Steger refused to consider Paragon's sur-reply or that his decision was based on any material surprise or prejudice. At the hearing, both parties were able to present their positions on all submissions.

Even if the Magistrate had considered Defendants' reply evidence without allowing a sur-reply, that would not render his decision "contrary to law." At most, it would constitute a discretionary procedural ruling. Paragon cites no authority that a failure to strictly enforce briefing rules amounts to clear error warranting reversal. The Sixth Circuit has emphasized that sealing decisions must be based on substantive merits, whether compelling reasons justify secrecy, rather than on hyper-technical procedural defaults. *See Shane Group*, 825 F.3d at 305–06. Here, Judge Steger plainly concluded that, apart from the merits, it was prudent to seal the documents to respect the transferee court's process. That conclusion would have been the same regardless of whether certain affidavits were filed with the motion or with the reply. By the time of the hearing, the court had before it all relevant evidence (including Mr. Grundahl's detailed declaration and other exhibits) and arguments from both sides. The record was fully developed on the sealing issue.

Finally, Local Rule 26.2(b) of this Court requires a showing of good cause to seal court records, and the Court's Standing Order on Sealing (Doc. 5) reinforces the Sixth Circuit's demanding standard. Judge Steger, who authored the Standing Order and cited it during proceedings, is well-versed in these requirements. The record indicates he applied them here notwithstanding any briefing quirks. By granting the motions, the Magistrate implicitly found that compelling reasons justified the seal. This Court should defer to that finding. Paragon's procedural objections do not show that the Magistrate failed to apply the proper legal standards. There is no clear error that would warrant disturbing the outcome.

13

E.     The Information at Issue Qualifies for Protection and Defendants Took Reasonable

Steps to Keep it Confidential

Although Judge Steger did not make a final determination of whether each document constitutes a trade secret under Seventh Circuit law, his Order recognized that sealing was warranted "at this time" in light of the Wisconsin court's initial ruling. Paragon contends that Defendants failed to prove the exhibits are trade secrets or that they were adequately protected. But those questions will be conclusively decided in the Wisconsin proceedings, which Judge Steger appropriately left to the court now handling the case. For present purposes, it is sufficient that Defendants made a showing of confidentiality and harm, which the Wisconsin court credited by issuing a provisional seal. That order noted that the exhibits had only been briefly public in Wisconsin and therefore deserved temporary secrecy until a full trade-secret analysis could occur. This reflects the court's recognition that the exhibits may contain protectable trade secrets.

Defendants have provided evidence that the documents in question contain or reflect confidential business strategy information, proprietary data, and details that would aid competitors if disclosed (Doc. 29-1). For example, the Complaint exhibits include demand letters and negotiation communications outlining Defendants' business model and claims of ownership in the software at issue. Mr. Grundahl's unrebutted declaration describes meeting agendas, internal plans, and invoices that reveal Defendants' strategic initiatives, client relationships, and financial arrangements. Courts recognize that such competitively sensitive materials can qualify as trade secrets or confidential commercial information warranting sealing. *See Smith v. Dravo Corp.*, 203 F.2d 369, 374 (7th Cir. 1953) (confidential disclosures in business dealings imply secrecy obligation); *Religious Tech. Ctr. v. Netcom*, 923 F. Supp. 1231, 1251 (N.D. Cal. 1995) (confidentiality legends preserve secrecy). Sixth Circuit precedent likewise confirms that "trade

14

secrets" and "confidential commercial information" may justify sealing if the showing is specific and substantiated. Here, Defendants have made that showing, including by providing limited redactions of personal identifiers and the most sensitive portions of the records. Judge Steger's Order reflects this tailoring: it sealed only identified documents or portions thereof, not entire pleadings or the case as a whole.

Paragon argues that Defendants did not take "reasonable measures" to protect the secrecy of the exhibits. To be sure, the definition of "trade secret" under both federal and state law includes a requirement that the owner take reasonable steps to maintain secrecy. But whether Defendants meet that criterion is a fact-intensive merits question reserved for the transferee court in Wisconsin. Judge Steger expressly declined to adjudicate that issue, noting he was not making a merits determination under Seventh Circuit law. Instead, he sealed the documents to preserve the status quo, recognizing that the question should not be preemptively resolved against Defendants by leaving the material in the public record.

The evidence shows that Defendants attempted to maintain secrecy whenever they controlled the process with respect to the information. Mr. Grundahl and his companies treated their correspondence and internal records as confidential—labeling letters "Confidential," limiting distribution, and seeking redaction when litigation began. Paragon points to one demand email shared with a third party (Rob Eason at Clearspan) who had no NDA, but that message included a confidentiality notice and does not negate protection. Paragon's own brief concedes that Mr. Grundahl believed his communications were confidential; it merely argues he was mistaken to trust Mr. Eason without a formal agreement. That contention is a merits issue for the transferee court. What matters here is that Defendants consistently objected to dissemination of these

15

materials and sought judicial relief, including sealing motions and a DTSA action, rather than acquiescing. Such actions are inconsistent with abandonment of secrecy.

In short, Defendants have shown good cause under Local Rule 26.2(b) to seal the records by demonstrating that the documents contain competitively sensitive information and that Defendants have a legitimate trade-secret interest in limiting their exposure. Paragon's contrary evidence that some employees or third parties saw the information may be weighed by the Wisconsin court in determining ultimate trade-secret status, but it does not undermine the propriety of interim sealing. Sealing the records at this stage imposes no prejudice on Paragon's ability to litigate: both parties retain full access to the documents under the protective seal and protective order. The only effect is to withhold the information from public view, which is precisely the point of a seal in trade-secret cases. Balancing the interests, the potential harm to Defendants from public disclosure (competitive harm, loss of trade-secret protection) far outweighs the public's minimal interest in these particular exhibits. Therefore, maintaining the seal is proper.

F.     The Public's Interest in Access is Outweighed by the Interest in Protecting Trade Secrets in this Case

Both Sixth and Seventh Circuit precedents recognize a strong presumption of public access to court records, but also recognize exceptions for legitimate confidentiality interests such as trade secrets or proprietary information. *Shane Group*, 825 F.3d at 308–10 (compelling reasons justify sealing if narrowly tailored); *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1268–72 (7th Cir. 1995) (trade-secret protection warrants equitable relief to prevent competitive harm). *Shane Group* emphasized that "the most compelling reasons" are required to seal documents central to judicial decision-making. Those reasons exist here. Defendants have a statutory right under the DTSA and a strong equitable claim to protect their trade secrets. The documents at issue, while part of the

record, are not the type that implicate paramount public interests such as matters of public health or government misconduct. This case is a private commercial dispute over intellectual property ownership, where the public's interest is generalized rather than a specific need to access Defendants' confidential business communications.

The public's ability to understand these proceedings is not substantially impeded by the seal. The key issues before this Court were jurisdiction and venue, which were addressed in Judge Atchley's March 6, 2025 transfer opinion (Doc. 73) and Judge Steger's sealing order (Doc. 93). Judge Atchley's Transfer Order is public and sets forth both the nature of the dispute and the Court's reasoning, quoting portions of the communications at a general level. Anyone may review that opinion to understand why the case was transferred. The fact that the underlying exhibits are now sealed does not prevent the public from "assess[ing] for itself the merits of the judicial decision." *Shane Group*, 825 F.3d at 305. Paragon's Objection claims that without the Complaint exhibits the public cannot analyze the Court's reasoning, but that overstates the point: the transfer opinion itself fully explains the decision and even summarizes the contested communications. Sealing the exhibits therefore does not obscure judicial reasoning; the public record still contains the Court's analysis of those materials in the context of jurisdiction. Moreover, the transfer decision is complete, and the case is now proceeding in Wisconsin, where future substantive rulings will be made under Seventh Circuit law. The purpose of public access is to permit scrutiny of judicial decisions. Here, those decisions remain public; only exhibits containing sensitive business information are sealed.

Both Sixth and Seventh Circuit precedent support selective sealing. In *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262 (7th Cir. 1995), the court recognized that "[l]egitimate trade secrets should be protected from disclosure," particularly in litigation, to avoid public injury to the secret holder.

This demonstrates harmony between the circuits: neither requires the court to disregard confidentiality in the name of absolute transparency.

Here, given the DTSA's directive, the narrow tailoring of the seal, and the modest public value of the information compared to the serious harm to Defendants, the balance favors sealing. The Magistrate Judge's Order implicitly found that the interest in protecting Defendants' confidential information outweighed the public interest in access at this stage—a finding supported by the record and clearly not erroneous.

Paragon itself treated these documents as a matter of public interest because it was strategically advantageous. In February 2025, Paragon was content to have the Court consider sealing the exhibits. Only after the Magistrate ruled in Defendants' favor did Paragon reverse course and again argue for public access. This reversal indicates that Paragon's concern is not transparency but rather the tactical use of Defendants' confidential information in a related litigation. The Court should recognize these tactics for what they are. The public interest is adequately protected without exposing every line of these exhibits.

G.    The Magistrate Judge's Order Should Be Affirmed and Further Remedial Measures Considered

For all the reasons above, Plaintiff's Objection does not meet the stringent standard of Rule 72(a). Judge Steger applied the correct law to an unusual procedural posture. His factual assessments and balancing of interests were sound and supported by the evidence. There is no "definite and firm conviction" of error here; the Magistrate's resolution was reasonable and consistent with the interests of justice. Defendants respectfully urge the Court to OVERRULE Paragon's Objection (Doc. 100) and AFFIRM the Magistrate Judge's Order (Doc. 93) in its entirety.

18

To further effectuate the purpose of the DTSA and prevent improper dissemination of Defendants' trade secrets, Defendants request that the Court consider additional relief. See 18 U.S.C. § 1835 (court "shall enter such orders as may be necessary to preserve confidentiality"); Fed. R. Civ. P. 26(c) (authorizing protective orders). Such relief could include:

1. An order expressly affirming that the sealed status of these documents shall continue unless and until lifted by the Western District of Wisconsin, thereby giving clear guidance that comity remains the course;

2. A finding that Paragon's July 2024 public filing of clearly marked confidential documents was improper, to deter similar conduct; and

3. An order under 18 U.S.C. § 1835 or Fed. R. Civ. P. 26(c) directing Plaintiff to refrain from public use or public disclosure of Defendants' confidential information outside of this litigation.

The DTSA empowers courts to "enter such orders as may be necessary to preserve confidentiality," and Congress made clear this includes broad equitable authority to protect trade secrets during litigation. See S. Rep. No. 114-220, at 11 (2016). Defendants respectfully request that the Court grant such relief here.

## IV.    Conclusion

For the foregoing reasons, Defendants Qualtim, Inc., et al., respectfully request that the Court DENY Plaintiff's Objection (Doc. 100) and uphold Magistrate Judge Steger's Order (Doc. 93) sealing the specified documents. Defendants further request that the Court confirm the continued sealed status of these materials, including all exhibits to Paragon's original complaint (Doc. 1), and grant any additional relief deemed just and proper to protect Defendants' trade secrets pursuant to 18 U.S.C. § 1835 or Fed. R. Civ. P. 26(c). Such relief may include directing Plaintiff

19

to refrain from public use or public disclosure of Defendants' confidential information outside this litigation. Granting this relief will reinforce the strong federal policy favoring protection of trade secrets while preserving the transparency of the Court's rulings and the integrity of these proceedings.

Respectfully submitted this 12th day of September, 2025.

LUEDEKA NEELY, P.C.

By: s/Michael J. Bradford
      Michael J. Bradford
      900 S. Gay Street, Suite 1504
      P. O. Box 1871
      Knoxville, TN  37901-1871
      Tel: 865-546-4305
      Email: MBradford@Luedeka.com

      *Attorney for Defendants*

20

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of September, 2025, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's electronic filing system.

/s/Michael J. Bradford
Michael J. Bradford
*Attorney for Defendants*